**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ILARIA BULGARI,

                Plaintiff,

  -against-

VERONICA BULGARI, in her capacity as Trustee of
the Anna Bulgari Family Trust #1 and Trustee of the
Anna Bulgari Family Trust #2,

                Defendant.

**COMPLAINT**

22 Civ. ___

**DEMAND FOR JURY TRIAL**

Plaintiff Ilaria Bulgari, by and through her undersigned counsel, alleges as follows:

**INTRODUCTION**

1.     In February 2020, Plaintiff Ilaria Bulgari learned for the first time, just months after her mother passed away, that she was a beneficiary of two substantial trusts that had been created in 2005 for the benefit of her mother, her two sisters, and herself.  On information and belief, the trusts were created by her father as part of the resolution of his divorce from Ilaria's mother.  Ilaria's mother, Anna Bulgari, initially served as the trusts' sole trustee.  Eventually, Ilaria's older sister, Defendant VERONICA BULGARI, began serving as trustee of both trusts.   VERONICA BULGARI has been the trusts' sole trustee since her mother's passing in 2019.

2.     Since learning about the trusts, Ilaria has worked to assess the assets owned by the trusts over the full period of their existence, and where those assets have gone.  While VERONICA BULGARI has failed to provide much of the facts and records to which Ilaria is entitled, the information Ilaria has received to date demonstrates that VERONICA BULGARI has been negligent in administering the trusts and has breached her fiduciary duties by, among other things:

a.    withholding distributions to coerce Ilaria into surrendering rights and powers under one of the trust agreements;

b.    refusing to provide information to which Ilaria was entitled as a beneficiary;

c.    withholding distributions to coerce Ilaria into accepting the wrongful withholding of information;

d.    failing to investigate irregularities in account statements and tax filings;

e.    failing to take steps to preserve record ownership of trust assets;

f.    failing to keep trust records; and

g.    refusing to perform duties she was required to take as a trustee.

3.    With this action, Ilaria seeks compensation for the harm caused by her sister's mismanagement and breaches of her fiduciary duties.

## THE PARTIES

4.    Plaintiff Ilaria Bulgari is a citizen of Italy and a resident of Switzerland.  Ilaria is a beneficiary of the Anna Bulgari Family Trust #1, formed on June 1, 2005, and a beneficiary of the Anna Bulgari Family Trust #2, formed on October 6, 2005.

5.    Defendant VERONICA BULGARI is a dual citizen of the United States and Italy and a resident of New York, New York.   VERONICA BULGARI is Trustee of the Anna Bulgari Family Trust #1 and a beneficiary of that trust.  VERONICA BULGARI is also Trustee of the Anna Bulgari Family Trust #2 and a beneficiary of that trust.

## JURISDICTION AND VENUE

6.    This Court has diversity jurisdiction over this dispute pursuant to 28 U.S.C. §1332, as there is complete diversity among Plaintiff, a citizen of Italy and resident of Switzerland, and Defendant, a citizen of the United States and Italy and resident of the State of New York, and the amount in controversy exceeds the sum or value of $75,000.00 excluding interests and costs.

7.      Pursuant to 28 U.S.C. § 1391(b)(1), venue is proper in this Court because the Defendant resides in this district.

8.      The Court has general personal jurisdiction over Defendant VERONICA BULGARI, as she is a resident of this State.

## FACTUAL BACKGROUND

9.      On or about June 1, 2005, Nicola Bulgari formed an irrevocable trust, the Anna Bulgari Family Trust #1 (Trust #1), for the benefit of his former wife, Anna Bulgari, and their three daughters, VERONICA BULGARI, Ilaria, and Natalia Bulgari.  Anna was the initial Trustee of Trust #1.

10.     Trust #1 was initially funded with at least a $6 million cash deposit that was made on or about August 1, 2005, into a brokerage account at Morgan Stanley & Co. Incorporated ("Morgan Stanley") held in the name of Trust #1.

11.     On or about October 6, 2005, Nicola formed a second irrevocable trust, the Anna Bulgari Family Trust #2 (Trust #2), which was also for the benefit of his former wife, Anna, and their three daughters — VERONICA BULGARI, Ilaria, and Natalia.

12.     Trust #2 was funded with at least Nicola's interest in Verda Company, N.V., which consisted of all the issued and outstanding shares of such corporation.  On information and belief, at the time Nicola transferred Verda Company, N.V. to Trust #2, assets registered in the name of Verda Company, N.V. included at least real property in Millbrook, New York, known as 43-94 Home Free, which is comprised of four structures consisting of a main house, a pool house, a caretaker's house and garages.

13.     On information and belief, both Trust #1 and Trust #2 were formed as a result of an agreement resolving Nicola's divorce from Anna, which was finalized on or about June 16, 2005, in Rome, Italy.

14.     Verda Company, N.V., was formed on or about October 4, 1984, in the Netherland Antilles, which is now Curaçao.

15.     On or about December 13, 2005, Verda (U.S.) Corporation ("Verda U.S.") was incorporated in Delaware.  At that time, Anna Bulgari was the sole director of Verda U.S.  On information and belief, at some time thereafter the Dutch entity Verda Company, N.V. was domesticated into Verda U.S.

16.     On or about April 21, 2006, Anna, in her capacity as sole director of Verda, U.S., approved the dissolution of Verda Company, N.V. in exchange for 1,000 shares of Verda U.S., which, on information and belief, were all of the issued and outstanding shares of Verda U.S.  The dissolution of Verda Company, N.V., was not finalized in Curaçao until 2009.

17.     In or about 2012, VERONICA BULGARI became a director of Verda U.S.

18.     On May 19, 2015, $15 million was transferred to Trust #1's account at Morgan Stanley from an account at J.P. Morgan International Ltd. Milan.  VERONICA BULGARI has not disclosed to Ilaria the reason for this transfer or the relationship of the J.P. Morgan account, if any, to Trust #1.

19.     On or about May 28, 2015, VERONICA BULGARI was appointed co-trustee of Trust #1.

20.     Anna Bulgari died on October 22, 2019.  Upon her mother's death, VERONICA BULGARI became Successor Trustee of Trust #2.  Following her mother's death, VERONICA BULGARI began acting as the sole Trustee for Trust #1 and has continued to do so ever since.

**A.      VERONICA BULGARI Attempts to Coerce Ilaria into Surrendering Rights and Powers that Ilaria had Received Under the Trust #1 Agreement**

21.      On February 10, 2020, Ilaria learned for the first time that Trust #1 and Trust #2 existed, and that VERONICA BULGARI was trustee of both trusts.  Ilaria further learned at that time that she and her sisters were each entitled to one third of Trust #1 and Trust #2 upon Anna's death.

22.      On February 13, 2020, VERONICA BULGARI's attorney provided Ilaria with the agreements under which both Trust #1 and Trust #2 were created.  The Trust #1 agreement provided that Trust #1 shall terminate upon Anna's death, and that any remaining principal, accrued income and undistributed income would be distributed in such manner as Anna may have appointed in her will, or otherwise *per stirpes* among Anna's then living issue, with the share allocated to each such person to be held in a separate trust to be managed and disposed of as provided in the Trust #1 agreement.

23.      At the time of Anna's death, since she had not provided any provision in her will for how the remaining principal and income of Trust #1 were to be distributed, pursuant to the terms of Trust #1 agreement, three new trusts were to be created, one for each of Anna's daughters, to be governed by the terms of the Trust #1 agreement, and to be funded in equal parts by the principal and income remaining in Trust #1 at the time of Anna's death.  But VERONICA BULGARI did not follow the plain requirements of the Trust #1 agreement.  Instead, as described in greater detail below, VERONICA BULGARI insisted that Ilaria agree to a decanting into a new trust with terms substantively and materially different from the Trust #1 agreement.

24.      On February 14, 2020, Ilaria was first told that her family wanted her to agree to a different mechanism for distributing Trust #1's remaining principal and income.  Rather than separating it into three trusts governed by the terms of Trust #1, Ilaria was told that she must agree

to decant one third of the principal and income of Trust #1 into a new trust, referred to as the "Newco" trust.  Ilaria was told that she had to agree to this new structure for tax reasons, and that she would be provided with decanting documents shortly.

25.     Ilaria then began requesting information to which she was entitled as a beneficiary to understand Trust #1's holdings and how those holdings had been managed during the previous fifteen years of Trust #1's existence.

26.     On March 13, 2020, Ilaria asked VERONICA BULGARI for documents related to Trust #1.  VERONICA BULGARI failed to produce the requested documents, responding that Trust #1 was going to be divided into three new trusts and that she was not sure what documents Ilaria wanted.  But Ilaria continued to press for copies of Trust #1's account statements.

27.     On April 10, 2020, Ilaria received the earlier-promised proposed Newco agreement. The new proposed trust differed substantively and materially from the continuing trust created by Trust #1 for Ilaria's benefit in at least the following ways:

   a.   The Newco trust provided for Ilaria to receive a set monthly amount, whereas the trust to be created under the Trust #1 agreement provided for Ilaria to receive so much or all of the income and principal necessary for her health, education, safety and maintenance;

   b.   The Newco trust provided that all payments to Ilaria would be made to Elystone Capital, the Bulgari family office, which would then "supervise the distribution of those amounts" to Ilaria, whereas the trust to be created under the Trust #1 agreement gave the trustees of the new trust, one of whom was Ilaria, the power to make payments from the trust;

   c.   The Newco trust provided that Ilaria would be a Trustee, but that she would lose her power to act as Trustee if two physicians, psychologists and/or licensed social workers who had examined Ilaria within the previous 60 days opined that Ilaria was unable to handle her significant financial affairs, whereas the trust to be created under the Trust #1 agreement only allowed for the removal of trustees if they resigned or were removed by a court in accordance with New York law; and

   d.   The Newco trust provided that Ilaria could appoint the recipients of two thirds of whatever remained in the trust at the time of her death (one third

6

could go to anyone other than Ilaria's estate and creditors, and one third could go to a qualified charitable organization), with the remaining third to be paid to certain descendants of Ilaria's father, including VERONICA BULGARI's children. The trust to be created under the Trust #1 agreement, in contrast, granted Ilaria the sole power to appoint any or all of the trust's assets to any recipient other than Ilaria's estate and creditors, either during her life or upon her death.

28.    On April 26, 2020, VERONICA BULGARI stated in an email to Ilaria and others that she wanted to preserve the confidentiality of the information about Trust #1, and that she was "not prepared" to ask Morgan Stanley to share Trust #1's statements with Ilaria. VERONICA BULGARI added that she, "as Trustee," did not receive emails from Morgan Stanley, did not "consult them electronically," and that she "immediately shred[ed] all hard copies" of documents, despite the provision in Trust #1 requiring that the "Trustee shall keep a record of all transactions relating to the trust."

29.    Undeterred, Ilaria continued to press VERONICA BULGARI for records relating to Trust #1's investments, to which she was entitled as a beneficiary. On May 16, 2020, VERONICA BULGARI responded in an email that she was "taken aback" by Ilaria's requests for the statements, as she thought it was "made clear that these documents would not be circulated at any time before the trust is divided into three parts." She added that the "reason for this is **confidentiality** and the large amount at hand." VERONICA BULGARI added that if Ilaria needed to "hear the figure again" with respect to the value of the Trust #1's investments, Ilaria could "call" Trust #1's investment advisers. VERONICA BULGARI thus attempted to use a distribution from Trust #1 to coerce Ilaria into agreeing to a distribution into the Newco trust before receiving historical information about Trust #1 to which Ilaria was entitled.

30.    Ilaria was not represented by counsel at the time she received the proposed Newco trust agreement in April 2020. Her family gave her the name of a lawyer to consult, but his initial review of the Newco trust agreement did not identify differences between the Newco trust

7

agreement and the Trust #1 agreement that Ilaria had identified on her own. Unsatisfied with her family's choice of counsel for her, Ilaria retained counsel of her own choosing on May 20, 2020.

31.     Almost immediately, the family increased the pressure on Ilaria to accept the Newco trust agreement. On May 29, 2020, a representative of the family pressed Ilaria's lawyer to complete his review of the draft Newco trust agreement, even though he had been representing Ilaria for little more than one week. Then, on June 3, 2020, consistent with VERONICA BULGARI's May 16, 2020 email, the family representative pressed Ilaria in a phone call to immediately agree to the Newco trust because, until Trust #1 was divided, Ilaria would have no control or visibility over her money. Through the rest of June, via emails and phone calls to Ilaria's lawyer, the family representative continued to press Ilaria to agree to the Newco trust.

32.     On June 18, 2020, Ilaria had a call with Morgan Stanley during which she learned Trust #1's current balance, that Trust #1's investments were largely in equity securities, and that Trust #1 had benefited from substantial growth in its investments. She did not receive details about Trust #1's investments, currently or over the life of Trust #1, or details about deposits to and withdrawals from Trust #1's Morgan Stanley brokerage account over time.

33.     By July 8, 2020, having failed to receive documentary information corroborating what Ilaria had been told about Trust #1, Ilaria's attorney requested Trust #1's account statements from October 2019 to June 30, 2020 from VERONICA BULGARI's lawyer. But VERONICA BULGARI's position remained the same. Specifically, on July 10, 2020, VERONICA BULGARI's lawyer wrote:

> Veronica is wholly sympathetic to Ilaria's request and even more sympathetic, and even eager, to proceed with the division of the trust into three separate, equal, trusts---one for each sibling. When Veronica proceeds with the funding of the three separate trusts, which she is prepared to do, Ilaria's trust will receive one-third of the assets in the Morgan Stanley account. As co-trustee of her own trust, Ilaria will

have unlimited access to the Morgan Stanley account which holds the assets of her trust.

In the meantime, prior to the funding of the three trusts, Veronica has decided that the account statements themselves should not be released to anyone, for reasons of security and privacy, not out of any intent or interest in depriving Ilaria or Natalia of information regarding the nature of the assets in the account or of the value of the account. No one, including Natalia, has been provided with copies of the account statements, and Veronica herself does not maintain copies of the account statements. Veronica has explained this to Ilaria in writing. Ilaria has already been provided with detailed information regarding the specific holdings in the account, the investment performance of those holdings, and value of the account, and this information has been confirmed to Ilaria—approximately one month ago—in her telephone conversation with the account relationship manager at Morgan Stanley.

By pursuing this approach to what should otherwise be a simple process of dividing an account into three equal accounts—with each trust receiving a prorata share of all assets in the account—Ilaria is delaying access to her own separate trust fund, for which she will have all of the rights and privileges of sole beneficiary and of co-trustee. Let's get on with it so that Ilaria will have her own trust fund.

34.     On July 17, 2020, Ilaria again asked VERONICA BULGARI to share Trust #1's Morgan Stanley account statements so that Ilaria could understand Trust #1's assets and how they had been managed. VERONICA BULGARI responded that Ilaria had spoken to Morgan Stanley, that Ilaria did not need anything further, and that while she would consider making the post-October 2019 statements available for Ilaria to inspect, she was not going to give Trust #1's account statements to Ilaria. In short, VERONICA BULGARI again attempted to use a distribution from Trust #1 to coerce Ilaria into agreeing to both the Newco trust and accepting VERONICA BULGARI's wrongful refusal to provide historical information about Trust #1.

35.     On July 17, 2020, VERONICA BULGARI's lawyer wrote to Ilaria's lawyer, agreeing to make certain account statements available for review by Ilaria's attorney subject to a nondisclosure and confidentiality agreement, but not to provide copies of the statements to Ilaria's lawyer or to Ilaria:

Veronica agrees to implement a controlled disclosure of the account information which protects the legitimate interests of all parties. The monthly account statements, in physical form, will be made available for review by you or a member of your firm, at a time and location to be decided. You would be free to review the statements, and take notes, but you would not be permitted to take copies or make photos of the statements. The process would be subject to a nondisclosure and confidentiality agreement.

36.     Ilaria's lawyer rejected the offer, as Ilaria had a legal right to review the statements.

37.     On July 21, 2020, VERONICA BULGARI's lawyer produced summary data for Trust #1's investments from October 22, 2019 through July 20, 2020.

38.     On August 11, 2020, Ilaria's attorney reiterated his demand for the monthly account statements, not just the summary data.   VERONICA BULGARI's lawyer did not produce the statements.

39.     By the end of August 2020, VERONICA BULGARI had still failed to produce the Trust # 1 account statements Ilaria and her counsel had been requesting.  Since numerous questions still remained unanswered after seven months of efforts and inquiries, Ilaria decided not to accept the decanting of her share of Trust #1 into the Newco trust proposed by VERONICA BULGARI, certain family members and other individuals acting on their behalf, in spite of their efforts and pressure.  As a result, on September 1, 2020, VERONICA BULGARI proposed belatedly — ten months after the passing of Anna Bulgari — the separation of Trust #1 into three new trusts that did not alter the terms of the Trust #1 agreement.  Still, Ilaria had to ensure that the appointment of co-trustees proceeded sequentially and appropriately in the manner provided by the Trust #1 agreement.

40.     On September 11, 2020, Ilaria's lawyer asked for the statements yet again.   On September 15, 2020, VERONICA BULGARI's counsel responded that VERONICA was "on holiday in Italy" and would "respond after she returns."

41.     By October 2020, having still not received access to the Morgan Stanley account statements, Ilaria determined that unless she was going to engage in costly and time-consuming litigation that she could not afford at that time, she had no option but to agree to VERONICA BULGARI's wrongful demand that Ilaria accept a distribution from Trust #1 before she received historical information about Trust #1.   Ilaria then agreed to accept a distribution from Trust #1 into a new trust on the condition that VERONICA BULGARI would produce information about Trust #1's history of investments and holdings thereafter.

42.     On October 8, October 12, and October 15, 2020, the trustees were appointed for the three new trusts created under the Trust #1 agreement for the benefit of VERONICA BULGARI, Ilaria, and Natalia, respectively, with each trust to be funded by the principal and income of Trust #1.

43.     On information and belief, on or about October 21, 2020, VERONICA BULGARI merged assets owned by Trust #2 into a limited liability company owned and controlled by Trust #1. Specifically, on or about October 21, 2020, VERONICA BULGARI, in her capacity as Successor Trustee of Trust #2, merged Verda U.S. into a newly-formed limited liability company called 1935 Holding LLC.   That same day, VERONICA BULGARI, in her capacity as Trustee of Trust #1, also transferred to 1935 Holding LLC two adjoining parcels of real property located in Millbrook, New York that were owned by Trust #1.   Trust #1 was the sole member of 1935 Holding LLC and VERONICA BULGARI was the sole director of 1935 Holding LLC.   Ilaria learned these facts from

a memo that VERONICA BULGARI provided to Ilaria on October 26, 2020, which purported to describe the real property owned by 1935 Holding LLC.

44.     On October 21, 2021, VERONICA BULGARI also entered into a Limited Liability Company Agreement governing the operations of 1935 Holding LLC (1935 LLC Operating Agreement).  That agreement provided, among other things, that:

a.      The initial and sole member of 1935 Holding LLC was Trust #1;

b.      The business and affairs of 1935 Holding LLC were to be managed by a Board of Directors;

c.      VERONICA BULGARI would serve as the initial and sole Director comprising the Board of Directors;

d.      Directors could be removed with or without cause by a vote of the members; and

e.      Each person serving as a Director was required to execute an acknowledgment of the 1935 LLC Operating Agreement.

45.     VERONICA BULGARI subsequently offered to distribute 1/3 membership interests in 1935 Holding LLC to each of the successor trusts created for VERONICA BULGARI, Ilaria, and Natalia, and to appoint Ilaria and Natalia as Directors, which would have required Ilaria to acknowledge and agree to the 1935 LLC Operating Agreement.  VERONICA BULGARI thus sought to free herself of the fiduciary obligations she owed to the beneficiaries of Trust #2 — and the individual liability that would flow from breaches of those fiduciary duties — by shifting Trust #2's assets from Trust #2 to a limited liability corporation owned by the three continuing trusts.  Ilaria never responded to VERONICA BULGARI's offer.

46.     As of October 29, 2020, despite the passage of more than one year since Anna's death, VERONICA BULGARI had made no distributions from Trust #1 to the continuing trust for Ilaria's benefit (Ilaria Trust).  On information and belief, as of that date, Trust #1 held at least

$129,468,000 of cash and marketable securities in the Morgan Stanley account as well as 1935 Holding LLC, which in turn held real property located in Millbrook, New York.

47.     On November 2, 2020, Ilaria's attorney informed VERONICA BULGARI's attorney that Ilaria would seek legal relief to compel a distribution from Trust #1 if VERONICA BULGARI did not make a substantial distribution within 48 hours.  Following this request, on November 7 and 8, 2020, VERONICA BULGARI distributed cash and securities totaling $20,000,923.91 to the Ilaria Trust.

48.     On or about December 3, 2020, VERONICA BULGARI, through counsel, produced to Ilaria's counsel Trust #1's account statements from Morgan Stanley from 2005 until September 2020.   That same day, VERONICA BULGARI's counsel sent Ilaria's counsel a proposed Agreement Settling Account for both Trust #1 and Trust #2 that would have, among other things, released VERONICA BULGARI from any liability arising from her role as trustee of either trust.

49.     On December 16, 2020, Ilaria declined to agree to VERONICA BULGARI's proposed Agreement Settling Account and demanded that VERONICA BULGARI distribute the remainder of the funds in Trust #1, save a $4.3 million reserve pending either an agreement to settle the trust or a court order or decree settling the trust.

50.     On December 28, 2020, VERONICA BULGARI transferred an additional $15,290,099.87 in securities from Trust #1 to the Ilaria Trust.

51.     On or about February 1, 2021, VERONICA BULGARI distributed a one-third membership interest in 1935 Holding LLC to each of the three trusts created for the benefit of Ilaria, VERONICA BULGARI, and Natalia.  That same day, VERONICA BULGARI sent Ilaria a letter asking Ilaria to execute a Joinder Agreement pursuant to which Ilaria would agree to be bound by the terms of the agreement that created 1935 Holding LLC — that is, to agree to VERONICA

BULGARI's avoidance and indirect abdication of her fiduciary duties. Again, Ilaria did not respond.

52.     In that same February 1, 2021 letter, VERONICA BULGARI acknowledged that she had only distributed approximately 80% of Trust #1's holdings to the three continuing trusts, but she did not provide a plan for distributing the remaining 20% of Trust #1's holdings.

53.     On March 12, 2021, VERONICA BULGARI, through counsel, again proposed a settlement of Trust #1 on an informal basis, including a full release and indemnification of VERONICA BULGARI with respect to her actions as trustees of both Trust #1 and Trust #2.

54.     That same day, VERONICA BULGARI, through counsel, produced Morgan Stanley account statements from October 2020 through February 2021 to Ilaria. VERONICA BULGARI's lawyer further stated that he was aware of a prior effort by the co-trustee of the Ilaria Trust to secure copies of the statements directly from Morgan Stanley, and he demanded that all future requests for information about Trust #1's Morgan Stanley account be made through him.

**B.     The Morgan Stanley Account Statements**

55.     VERONICA BULGARI ultimately produced the Morgan Stanley account statements but shared no analysis of those statements, analysis of Trust #1's prior investments, or description of how Trust #1's assets had been managed and distributed. Faced with sixteen years of account statements reflecting thousands of transactions, Ilaria, at her own expense, retained lawyers and forensic analysts to review and analyze the statements. That review revealed irregularities in the statements.

56.     On April 27, 2021, counsel for Ilaria disclosed a summary of those irregularities to counsel for VERONICA BULGARI and requested an explanation and investigation, as well as authorization for Morgan Stanley to deliver a complete set of records concerning Trust #1 directly to Ilaria.

57.     On May 7, 2021, VERONICA BULGARI, through counsel, asked for a copy of any report prepared by Ilaria's advisors but, on information and belief, took no further action to investigate the Morgan Stanley account statements or to permit Ilaria to communicate directly with Morgan Stanley.

58.     On November 5, 2021, having heard no further explanation for roughly six months from VERONICA BULGARI with respect to the Morgan Stanley account statements, Ilaria again demanded action.  This time, through another letter from her counsel to counsel for VERONICA BULGARI, Ilaria provided a fifteen-point bulleted list of irregularities in the account statements, along with a spreadsheet identifying the account statements at issue:

> a.     A Morgan Stanley document titled "Trustee Certification and Trust Account Agreement appeared to have been altered from its original form.
>
> b.     During the period 2005 to 2009, there were thirty-two (32) occasions where the monthly opening account balance did not agree with the previous month's closing balance.
>
> c.     Twenty-one (21) statements had prior period adjustments noted on the summary page that were not supported with any description or detail in the body of the statement.
>
> d.     The client account name and branch locations listed on the statements changed at irregular intervals.
>
> e.     Four distinct account numbers were noted in the statements, but it was not clear why the accounts were closed or the account numbers were changed.
>
> f.     Two different statements for October 2020 were provided, but those statements contained varying formats and inconsistent information, including the opening and closing balances, the level of account detail, disclosures, and pagination.
>
> g.     Between January 2005 and October 2005, the structure of the statements varied without explanation in that certain statements included Official and Supplemental components, some only consisted of an Official component, and others only consisted of a Supplemental statement.

h.    Information presented in the Supplemental section of certain statements was not consistent in that certain statements contained a year-to-date summary while others did not.

i.    Statements from May 2019 to December 2020 listed a Morgan Stanley advisor on the account whose employment had ended on April 30, 2019.

j.    In the majority of statements, the page numbering omitted the standard reference to the total number of pages and the formal Disclosures component of the statements were erroneously titled "disclaimers" and did not include page numbers.

k.    The May 2020 account statement year-to-date cash deposit and withdrawal activity did not reconcile with the deposit/withdrawal activity reported on the January 2020 to April 2020 statements.

l.    Year-end tax documents and full year recaps were not included with any of the year-end statements.

m.    The December 2005 account statement contained several inconsistencies, including, but not limited to: (1) inconsistent statement periods within the document; and (2) disclosures that referred to Morgan Stanley Smith Barney, but a joint venture between Morgan Stanley and Smith Barney did not occur until 2009, and the firms did not merge until 2013.

n.    Net securities received (and withdrawn) of $3 million and $7.1 million in September 2008 and October 2008, respectively, had no cost basis reflected on the statements.

o.    Two different May 2013 account statements with two different account numbers were provided containing differences.

59.    On November 5, 2021, Ilaria further requested, again, that VERONICA BULGARI authorize Morgan Stanley to communicate directly with Ilaria.

60.    On November 11, 2021, VERONICA BULGARI, through counsel, repeated her request for a report prepared by Ilaria's advisors and dismissed as "immaterial" certain of the issues Ilaria had identified in the account statements.

61.    On information and belief, VERONICA BULGARI took no action to investigate the Morgan Stanley account statements herself.

62.     On November 18, 2021, having heard nothing further from VERONICA BULGARI, Ilaria, through counsel, sent directly to Morgan Stanley the same list of irregularities that she had previously sent to VERONICA BULGARI.   This yielded action, but by Morgan Stanley, not VERONICA BULGARI.

63.     On November 29, 2021, in a telephone conversation with Ilaria's counsel, a Morgan Stanley in-house lawyer stated that the bank would investigate the irregularities that Ilaria had identified with the account statements, but that due to its confidentiality obligations to its client, Trust #1, the bank could only share the results of its findings with Trust #1's trustee, VERONICA BULGARI.

64.     On January 5, 2022, counsel for VERONICA BULGARI informed Ilaria that the irregularities Ilaria had noted "appear to have arisen with the formatting of the statements which changed with the merger of Morgan Stanley and Smith Barney."   Morgan Stanley had previously pulled the "majority" of the statements "in the pre-conversion format."   Morgan Stanley had since provided VERONICA BULGARI with statements in the "post-conversion format" for the eight-year period from May 2013 through April 2021.   That same day, counsel for VERONICA BULGARI produced a new set of Morgan Stanley account statements, from May 2013 through February 2021, to Ilaria.

65.     Also on January 5, 2022, VERONICA BULGARI's counsel provided Ilaria's counsel with explanations that VERONICA BULGARI had received from Morgan Stanley for three changes in account numbers for Trust #1's account.

66.     On February 1, 2022, VERONICA BULGARI's counsel informed Ilaria that "Morgan Stanley did some further review and has reconfirmed that the issues raised by you stem from the prior incomplete account statements which the operations team produced and the format

of the account statements which changed due to the migration of Morgan Stanley and Co. (MS &

Co.) to Morgan Stanley Smith Barney LLC (MSSB) in 2013." According to counsel, some of the

statements from 2005 through May 2013 that previously had been produced to Ilaria contained only

a supplemental report, but not both the official statement and a supplemental report. As a result,

according to counsel, Morgan Stanley had reproduced the statements from 2005 through May 2013,

which counsel for VERONICA BULGARI then sent to Ilaria's counsel. Ilaria never received the

statements directly from Morgan Stanley and does not know if the statements she received from

VERONICA BULGARI are the same as any statements Morgan Stanley may have produced to

VERONICA BULGARI.

67.     Once again, VERONICA BULGARI did not provide an assessment of the new

account statements or explain whether the statements addressed the irregularities that Ilaria had

previously identified. Nor did VERONICA BULGARI agree to meet with Ilaria or authorize

Morgan Stanley to speak directly to Ilaria.

68.     So it was left, yet again, for Ilaria to try to make sense of sixteen years of account

statements and to determine whether those account statements, along with the brief communications

from VERONICA BULGARI's counsel, resolved the irregularities Ilaria had previously identified.

Once again, Ilaria paid counsel and forensic analysts to review the materials at her own expense.

That review revealed that, while the new account statements addressed some of the irregularities

that had previously been identified, they did not answer all of Ilaria's questions. The review also

raised a whole new set of questions.

69.     On March 21, 2022, Ilaria once again wrote to counsel for VERONICA BULGARI

and identified issues that continued to exist with the account statements, including the following:

a.     The Morgan Stanley document titled "Trustee Certification and Trust Account Agreement" that appeared to have been altered from its original form had not been addressed.

b.     There remained 24 instances where the monthly opening account balance did not agree with the previous month's closing balance.

c.     The existence of multiple versions of the October 2020 account statement had not been resolved.

d.     Information in the Supplemental section of certain statements continued to be inconsistent with the year-to-date summary information.

e.     The new versions of the account statements continued to identify a Morgan Stanley advisor whose employment at Morgan Stanley had ended.

f.     Page numbering issues remained in the new versions of the statements.

g.     The new versions of the statements continued to show no cost basis for net securities received (and withdrawn) of $3 million and $7.1 million in September 2008 and October 2008, respectively.

h.     Additional information was needed from Morgan Stanley to understand whether the May 2013 system migration addressed the issues Ilaria had previously identified with the May 2013 account statements.

70.     On March 21, 2022, Ilaria also identified new issues with the Morgan Stanley statements, including the following:

a.     Tax payments to the United States Treasury on January 5, 2017, and April 17, 2019, are reflected on the old statements but not the new statements.

b.     The May 2013 and June 2013 versions of the old statements reflected withdrawals that were not reflected in the new statements.

c.     There was a deposit from Neuberger Berman in the amount of $66,326.24 on July 2, 2013, that was reflected in the old statements but not the new statements.

d.     There were transactions with Neuberger Berman reflected in different months on the old and new statements.

e.     There were deposits from Neuberger Berman reflected in the new statements that are not reflected in the old statements.

      f.      There was a roundtrip transaction with MS AAA Instl Money Trust in the amount of $3,156,741.52 on March 16, 2015, that was reflected in the new statements but not the old statements.

      g.     There was a roundtrip transaction with on February 3-4, 2020, in the amount of $500,000 that was reflected in the new statements but not the old statements.

      h.     There were deposits from Lehman Escrow that were dated July 18, 2019, in the old statements that were dated July 26, 2019, in the new statements.

71.     On March 21, 2022, Ilaria further requested account statements from March 2021 to the present, which VERONICA BULGARI had previously failed to produce.

72.     On March 24, 2022, VERONICA BULGARI responded to Ilaria's March 21, 2022 letter, claiming falsely that certain issues with the Morgan Stanley statements had been resolved by the Trustee's (*i.e.*, VERONICA BULGARI's) efforts.  She also requested additional information from Ilaria, and stated that the Trustee was making further inquiries to Morgan Stanley on the remaining open issues.  VERONICA BULGARI further stated that as of March 24, 2022, the balance in Trust #1's Morgan Stanley account was $24,189,909.37.

73.     On March 25, 2022, VERONICA BULGARI, through counsel, produced the missing Morgan Stanley account statements from March 2021 through February 2022.

74.     On April 20, 2022, VERONICA BULGARI, through counsel, provided additional information she had purportedly received from Morgan Stanley with respect to the irregularities Ilaria had previously identified with the Morgan Stanley account statements.

75.     Since Ilaria rejected her family's choice of counsel and retained her own lawyer in May 2020, VERONICA BULGARI has refused to meet Ilaria's counsel to discuss Trust #1 or Trust #2.  VERONICA BULGARI likewise has not authorized Ilaria or Ilaria's counsel to speak directly to Morgan Stanley.

76.     VERONICA BULGARI has not described any investigation or review of the irregularities in the Morgan Stanley account documents that she has conducted on her own.  On information and belief, VERONICA BULGARI has conducted no investigation or review of the Morgan Stanley account documents, electing instead to send Morgan Stanley the information that she has received from Ilaria and to then respond back to Ilaria with a curated version of whatever she receives from Morgan Stanley.

**C.     The Tax Returns**

77.     In addition to the Morgan Stanley documents, VERONICA BULGARI also produced certain tax returns for Trust #1.  As with the Morgan Stanley account statements, Ilaria retained lawyers and forensic analysts at her own expense to review those returns.  And like the Morgan Stanley account statements, the review of the tax returns raised a number of questions about the administration of Trust #1.

78.     On April 27, 2021, counsel for Ilaria disclosed the following issues from the review of the tax returns to counsel for VERONICA BULGARI:

a.      In addition to Morgan Stanley, the returns referenced bank or brokerage accounts with Barclays, Neuberger Berman, and Lehman, but no statements for these accounts had been provided.

b.      Numerous investments in limited partnerships, S corporations and other alternative assets are noted in the tax returns though not reflected in the Morgan Stanley statements, thereby indicating the existence of additional trust accounts.

c.      Schedules supporting detailed capital gains and losses under the Morgan Stanley accounts were not included with the tax returns, with the exception of 2005, with respect to which the supporting schedule had been manually typed and did not reference any account numbers.

d.      The Morgan Stanley account numbers reflected on the tax returns did not fully align with the account numbers noted on the statements.

79.     In that same April 27, 2021 letter, counsel for Ilaria sought a full explanation and investigation of the tax return issues.  VERONICA BULGARI did not respond to those issues.

80.     On November 5, 2021, counsel for Ilaria raised the tax return issues again.  Again, VERONICA BULGARI did not respond to those issues in any way.

81.     On November 18, 2021, counsel for Ilaria raised the tax return issues again.  Again, VERONICA BULGARI did not respond to those issues in any way.

82.     On March 21, 2022, Ilaria's counsel raised the tax return issues yet again.  This time, on March 24, 2022, VERONICA BULGARI provided a nominal response, stating, in sum and in part, that Trust #1 had previously held investment accounts at Barclays, Neuberger Berman, and Lehman, but that Trust #1 had not maintained those account records, that attempts to obtain the records from those firms had been unsuccessful, and that she had no records reflecting transactions concerning the Barclays, Neuberger Berman, and Lehman investments other than what was in the Morgan Stanley statements.  VERONICA BULGARI was unable to provide any further details about Trust #1's other investments, despite her obligation under the Trust #1 agreement to preserve records and despite telling Ilaria on multiple occasions that she had attended every meeting her mother had with Trust #1's investment advisers during the years preceding her mother's death.  VERONICA BULGARI also did not describe any efforts she took to investigate how Trust #1's assets were managed by Barclays, Neuberger Berman, or Lehman.  On information and belief, VERONICA BULGARI has conducted no further investigation or review of those investments.

83.     In her March 24, 2022 response, VERONICA BULGARI further provided certain 1099 gain/loss reports that she had received from Trust #1's tax preparation firm for the years 2009 through 2020, but she did not provide all of the schedules Ilaria had requested, explain what analysis she had done of the schedules she had received, or explain what efforts she had taken to locate the

schedules she did not produce.  On information and belief, VERONICA BULGARI did not conduct any investigation with respect to Trust #1's capital gains and loss schedules other than forwarding the incomplete documents she had received from the tax preparation firm.

**D.     The Mismanagement of Trust #2's Holdings**

84.     VERONICA BULGARI has repeatedly represented to Ilaria that the real property known as 43-94 Home Free was transferred from Trust #2 to 1935 Holding LLC.

85.     The title recorded in Dutchess County, New York, for the property located at 43-94 Home Free reflects that the property is in fact registered in the name of Verda Company, N.V., the Netherland Antilles company that was purportedly dissolved.

86.     On information and belief, VERONICA BULGARI has not taken the steps necessary to preserve the record of either Verda U.S.'s or 1935 Holding LLC's ownership interest in 43-94 Home Free with the Clerk of Dutchess County, New York.

<u>COUNT ONE</u>
**Breach of Fiduciary Duties**

87.     Ilaria Bulgari repeats and realleges all previous allegations as if fully set forth herein.

88.     VERONICA BULGARI, as Trustee of Trust #1, owed fiduciary duties of good faith and undivided loyalty to Trust #1 and to Ilaria, as a beneficiary of Trust #1.

89.     VERONICA BULGARI's use of distributions from Trust #1 to coerce Ilaria into accepting the Newco trust breached VERONICA BULGARI's fiduciary duties to Ilaria.

90.     VERONICA BULGARI's use of distributions from Trust #1 to coerce Ilaria into accepting VERONICA BULGARI's refusal to provide information about Trust #1 breached VERONICA BULGARI's fiduciary duties to Ilaria.

91.     VERONICA BULGARI's failure to investigate the irregularities Ilaria identified with the Morgan Stanley account documents breached her fiduciary duties to Trust #1 and Ilaria.

92.     VERONICA BULGARI's failure to investigate the issues Ilaria identified from the tax returns breached her fiduciary duties to Trust #1 and Ilaria.

93.     VERONICA BULGARI'S failure to preserve record title ownership of 43-94 Home Free breached her fiduciary duties to Trust #1, Trust #2, and Ilaria.

94.     VERONICA BULGARI'S failure to keep records relating to Trust #1, as required by that trust and New York law, breached her fiduciary duties to Trust #1 and Ilaria.

95.     VERONICA BULGARI'S refusal to perform duties she was required to take as the Trustee of Trust #1 and Trust #2 breached her fiduciary duties to Ilaria.

96.     VERONICA BULGARI's breaches of her fiduciary duties resulted in substantial monetary damages to Ilaria, in excess of $75,000.

### COUNT TWO
**Negligence**

97.     Ilaria Bulgari repeats and realleges all previous allegations as if fully set forth herein.

98.     VERONICA BULGARI, as Trustee of Trust #1, owed a duty of care to Trust #1 and to Ilaria, as a beneficiary of Trust #1.

99.     VERONICA BULGARI's failure to investigate the irregularities Ilaria identified with the Morgan Stanley account documents breached her duty of care to Trust #1 and Ilaria.

100.    VERONICA BULGARI's failure to investigate the issues Ilaria identified from the tax returns breached her duty of care to Trust #1 and Ilaria.

101.    VERONICA BULGARI'S failure to keep records related to Trust #1, as required by that trust and New York law, breached her duty of care to Trust #1 and Ilaria.

102.    VERONICA BULGARI'S failure to preserve record title ownership of 43-94 Home Free breached her duty of care to Trust #1 and Trust #2 and Ilaria.

103.    VERONICA BULGARI'S refusal to perform duties she was required to take as the Trustee of Trust #1 and Trust #2 breached her duty of care to Ilaria.

104.    VERONICA BULGARI's breaches of her duty of care proximately caused substantial monetary damages to Ilaria Bulgari, in excess of $75,000.

## DEMAND FOR JURY TRIAL

Ilaria Bulgari demands a jury trial on all claims for which trial by jury is available.

## DEMAND FOR RELIEF

WHEREFORE, Ilaria Bulgari demands the Court enter judgment as follows:

A.    For compensatory and punitive damages in an amount to be determined at trial, but in excess of $75,000;

B.    For a declaration that VERONICA BULGARI is not entitled to reimbursement from Trust #1 of expenses she incurred defending this action;

C.    For pre- and post-judgment interest as appropriate;

D.    For all costs and fees incurred in prosecuting this Complaint; and

E.    For such other and further relief as this Court deems just and proper.

Dated:  New York, New York
         June 16, 2022

                          Respectfully Submitted,


                  By:      *S/ David Boies*
                           David Boies
                           BOIES SCHILLER FLEXNER LLP
                           333 Main Street
                           Armonk, NY  10504
                           Telephone: (914) 749-8200
                           E-mail: dboies@bsfllp.com

                           Peter Skinner
                           MORRISON & FOERSTER LLP
                           250 West 55th Street
                           New York, New York  10019
                           Telephone: (212) 468-8000
                           E-mail: pskinner@mofo.com