**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ILARIA BULGARI                                       :
                                                     :
                    Plaintiff,                       :
                                                     :
        v.                                           :
                                                     :  Case No.: 1:22-cv-05072-LGS
VERONICA BULGARI, in her capacity as Trustee of the  :
Anna Bulgari Family Trust #1 and Trustee of the Anna :
Bulgari Family Trust #2,                             :
                                                     :
                    Defendant.                       :
                                                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**KATTEN MUCHIN ROSENMAN LLP**
50 Rockefeller Plaza
New York, New York 10020-1605
Telephone: 212.940.8800
Facsimile:  212.940.8774

**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.3827
Facsimile:  212. 351.5254

*Attorneys for Defendant Veronica Bulgari*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..........................................................................................1

OPERATIVE FACTS ....................................................................................................3

ARGUMENT ...............................................................................................................5

I.  Legal Standard ...............................................................................................6

II.  This Action Should Be Dismissed or Otherwise Stayed In Favor of the Surrogate Court's Action Filed by Plaintiff in March, 2021 ...................................7

    A.  The Court Should Abstain From Exercising Its Jurisdiction Under *Colorado River*............................................................................................7

        1.  This Case and the Surrogate's Court Action Are Parallel ..............8

        2.  The *Colorado River* Factors Overwhelmingly Support Abstention .......................................................................................9

    B.  This Case Should Be Dismissed Under the Doctrine of *Forum Non Conveniens* .............................................................................................12

III.  This Action Should Be Dismissed Under the Probate Exception to Federal Jurisdiction.....................................................................................................13

IV.  This Action Should Be Dismissed For Failure to Adequately Plead Damages.........................................................................................................17

V.  In the Alternative, the Court Should Stay These Proceedings Pending Resolution of the Surrogate Court's Action...........................................................20

CONCLUSION.............................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abe v. New York Univ.*,
No. 14-cv-9323, 2016 WL 1275661 (S.D.N.Y. Mar. 30, 2016)............................................8, 9

*Accent Delight Int'l Ltd. v. Sotheby's*,
394 F. Supp. 3d 399 (S.D.N.Y. 2019)....................................................................................13

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
421 U.S. 240 (1975)................................................................................................................19

*APWU v. Potter*,
343 F.3d 619 (2d Cir. 2003).....................................................................................................7

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*,
522 F.3d 182 (2d Cir. 2008)....................................................................................................19

*Arkwright-Boston Mrf. Mut. Ins. Co. v. City of N.Y.*,
762 F.2d 205 (2d Cir. 1985)....................................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................................6

*Aurecchione v. Schoolman Transp. Sys., Inc.*,
426 F.3d 635 (2d Cir. 2005).....................................................................................................7

*Bautz v. ARS Nat'l Servs., Inc.*,
226 F. Supp. 3d 131 (E.D.N.Y. 2016) ......................................................................................6

*Belfon v. Credit Check Total Consumerinfo.com, Inc.*,
No. 18-00408, 2018 WL 4778906 (E.D.N.Y. Oct. 1, 2018)...................................................18

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................................6

*Carey v. Bayerische Hypo-und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) .........................................................12

*Cheyney State Coll. Faculty v. Hufstedler*,
703 F.2d 732 (3d Cir. 1983)....................................................................................................20

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976)...............................................................................................1, 6, 7, 9, 10

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
    498 F.3d 1059 (9th Cir. 2007) ..............................................21

*Dittmer v. Cty. of Suffolk*,
    146 F.3d 113 (2d Cir. 1998)...................................................8

*Durst v. Siegler*,
    No. 04-698, 2005 WL 3358599 (S.D.N.Y. Dec. 7, 2005) ......................11

*Garcia v. Tamir*,
    No. 99 Civ. 298, 1999 WL 587902 (S.D.N.Y. Aug. 4, 1999) ...............8, 9

*GBA Contracting Corp. v. Fid. & Dep. Co. of Md.*,
    No. 00-cv-1333, 2001 WL 11060 (S.D.N.Y. Jan. 4, 2001) .................8, 9

*Genovese v. Genovese*,
    No. 1:15-CV-00064, 2016 WL 4945318 (W.D. Pa. Sept. 16, 2016)...........16

*Gortat v. Capala Bros.*,
    795 F.3d 292 (2d Cir. 2015)..................................................19

*Highview Properties D.H.F. Inc. v. Town of Monroe*,
    No. 18 Civ. 867, 2022 WL 2079085 (S.D.N.Y. June 9, 2022)................9

*Int'l Bus. Machines Corp. v. Dale*,
    No. 7:11-CV-951 VB, 2011 WL 4012399 (S.D.N.Y. Sept. 9, 2011) .........17

*J.S. ex rel. N.S. v. Attica Cent. Schs.*,
    386 F.3d 107 (2d Cir. 2004).................................................6

*Kansas City S. Ry. Co. v. United States*,
    282 U.S. 760 (1931)........................................................21

*Kennedy v. Trs. of Testamentary Tr. of Will of Kennedy*,
    406 Fed. Appx. 507 (2d Cir. 2010) .........................................10

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
    342 U.S. 180 (1952)........................................................21

*Kopperl v. Bain*,
    No. 3:09-CV-1754 CSH, 2010 WL 3490980 (D. Conn. Aug. 30, 2010) ........17

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) (Cardozo, J.).......................................20, 21

*LaSala v. UBS, AG*,
    510 F. Supp. 2d 213 (S.D.N.Y. 2007)........................................12

*Lefkowitz v. The Bank of New York*,
    676 F. Supp. 2d 275 (S.D.N.Y. 2009)......................................10, 14

*Marshall v. Marshall*,
  547 U.S. 293 (2006)..................................................................................1, 6, 13, 14

*McKie v. Estate of Dickinson*,
  No. 20-CV-2973, 2021 WL 3292516 (E.D.N.Y. Aug. 2, 2021)................................16

*Mercer v. Bank of New York*,
  609 Fed. App'x 677 (2d Cir. 2015)..............................................................14

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
  416 F.3d 146 (2d Cir. 2005)......................................................................13

*Phillips v. Citibank, N.A.*,
  252 F. Supp. 3d 289 (S.D.N.Y. 2017)....................................................8, 9, 10, 11

*Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*,
  490 F.2d 509 (2d Cir. 1973).......................................................................11

*Remington Rand Corp.-Del. v. Bus. Sys. Inc.*,
  830 F.2d 1274 (3d Cir. 1987)......................................................................20

*RH Kids, LLC v. Lehman*,
  2018 WL 295562 (D. Nev. Feb. 4, 2018) ...................................................21

*Sechler-Hoar v. Hoart*,
  No. 17-01968, 2020 WL 292314 (S.D.N.Y. Jan. 21, 2020) ................................14

*Shields v. Murdoch*,
  891 F. Supp. 2d 567 (S.D.N.Y. 2012)............................................................8

*Sotheby's, Inc. v. Stone*,
  388 F. Supp. 3d 265 (S.D.N.Y. 2019).............................................................18

*Telesco v. Telesco Fuel and Masons' Materials, Inc.*,
  765 F.2d 356 (2d Cir. 1985).........................................................................8

*U.S. Bank, N.A. v. Rancho Lake Condo. Unit-Owners Assoc., Inc.*,
  No. 17-01120, 2017 WL 5559953 (D. Nev. Nov. 17, 2017)................................20

*Warren v. John Wiley & Sons, Inc.*,
  952 F. Supp. 2d 610 (S.D.N.Y. 2013).............................................................17

*Woodford v. Cmty Action Agency of Greene County*,
  239 F.3d 517 (2d Cir. 2001).........................................................................9

**State Cases**

*In re Application of Ilaria Bulgari to Compel a Distribution Following the
  Termination of the Article 2 Trust under Anna Bulgari Family Trust #1*,
  Index No. 2021-3336 (N.Y. Surr. Ct. 2021) ..........................................2, 4

*In re Beall's Will,*
    184 Misc. 881 (Surr. Ct. Orange Cty. 1945)...........................................................................10

*In re Hyde,*
    15 N.Y.3d 179, 933 N.E.2d 194 (N.Y. 2010) ........................................................................19

*In re Lorie Dehimer Irrevocable Trust,*
    997 N.Y.S.2d 863 (4th Dep't 2014) .......................................................................................15

*Matter of Pulitzer's Estate,*
    139 Misc. 575 (Surr. Ct. N.Y. County 1931) .........................................................................10

*Pasternack v. Lab'y Corp. of Am. Holdings,*
    27 N.Y.3d 817, 59 N.E.3d 485 (N.Y. 2016)..........................................................................17

*Pokoik v. Pokoik,*
    982 N.Y.S.2d 67, 115 A.D.3d 428 (1st Dep't 2014) .............................................................17

*Wagenstein v. Shwarts,*
    920 N.Y.S.2d 55 (1st Dep't 2011) .........................................................................................10

**Federal Statutes**

Fed. R. Civ. P. 12(b)(1).................................................................................................................6, 21

Fed. R. Civ. P. 12(b)(6).........................................................................................................6, 17, 21

**State Statutes**

N.Y. Surr. Court Procedures Act § 209(6).............................................................................10, 14

SCPA § 102, New York Civil Practice Law.....................................................................................12

SCPA § 201......................................................................................................................................11

SCPA § 2211....................................................................................................................................12

SCPA § 2302....................................................................................................................................19

Section 40 of the Surrogate's Court Act ........................................................................................10

Article 22 of the Surrogate's Court Procedure Act...................................................................2, 4

Defendant Veronica Bulgari by her attorneys, Katten Muchin Rosenman LLP and Gibson, Dunn & Crutcher LLP, respectfully submits this memorandum of law in support of her motion to dismiss the complaint filed by Plaintiff Ilaria Bulgari on June 16, 2022 (the "Complaint") or otherwise stay this case pending resolution of a parallel case in Surrogate's Court.  More specifically, Defendant submits that this Court should: (1) abstain from exercising diversity jurisdiction over this case pursuant to the Supreme Court's holding in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); (2) dismiss the case under the doctrine of *forum non conveniens*; (3) dismiss the case under the probate exception to diversity jurisdiction set forth in *Marshall v. Marshall*, 547 U.S. 293 (2006); (4) dismiss this case for failure to allege damages with the requisite specificity; or (5) otherwise stay this case pending resolution of a parallel case in Surrogate's Court, where traditionally such matters are heard and which has a particular expertise in presiding over matters involving New York trust law.

## PRELIMINARY STATEMENT

This case is a family dispute between sisters regarding two trusts their father created in 2005 principally for the benefit of their mother.  For ten years, their mother was the primary beneficiary and acted as the sole trustee of both trusts with complete authority to make distributions and investment decisions.  In 2015, Defendant was appointed co-trustee of one of the two trusts. When their mother passed away in 2019, Defendant—the eldest of three sisters and the only citizen and resident of the United States—became the sole trustee of both trusts.  Defendant was charged with distributing the assets of the trusts in equal parts to herself, Plaintiff, and their sister.  That distribution (exclusive of an approximate $3 million holdback for taxes, administrative expenses,

and accounting and legal fees) has been completed, making Plaintiff a beneficiary of substantial wealth.  Defendant has received no compensation for her work as a trustee.

Following their mother's death, Plaintiff began raising baseless complaints about Defendant's administration of the trust, overwhelmingly about the decade during which Defendant was not even a trustee.  Defendant attempted to resolve these complaints, however trivial, but even after months of oral and written explanations to Plaintiff, as Plaintiff cycled through attorneys, and after providing Plaintiff a slew of financial records, Plaintiff refused to relent.  She remained fixated on trivial matters such as why Morgan Stanley did not put page numbers on all of their statements or why their branch locations changed.  This culminated in Plaintiff filing a petition to compel an immediate distribution of the remaining liquid assets in New York County Surrogate's Court in March 2021, over a year before this action commenced.  *See* Petition, *In re Application of Ilaria Bulgari to Compel a Distribution Following the Termination of the Article 2 Trust under Anna Bulgari Family Trust #1*, Index No. 2021-3336 (N.Y. Surr. Ct. 2021).  Surrogate's Court issued a citation and accepted jurisdiction over the *res* of the Trusts on December 17, 2021.  While Defendant attempted to amicably resolve the administration of the trusts by producing numerous records in response to Plaintiff's demands, Plaintiff nevertheless maintained her meritless accusations.  As a result, Defendant was forced to undertake a time consuming and costly judicial accounting of the two trusts pursuant to Article 22 of the Surrogate's Court Procedure Act. Plaintiff knew that process was nearing completion when she filed this action and yet did not wait to review the financial analysis before forcing the trusts to undertake more costly litigation.  After a team of third-party accountants spent 12 months examining and analyzing over 15 years of transactions related to the trusts, the judicial accountings, spanning more than 3,500 pages with

exhibits, were completed and submitted to the Surrogate's Court in July 2022, with a copy to Plaintiff.

It is unclear what Plaintiff hopes to achieve through this litigation other than to continue in her personal animus against Defendant. Her actions have only caused the trusts to incur expenses rather than allow a full distribution of the assets. However, Plaintiff has already chosen her forum. It was Plaintiff who initiated proceedings in Surrogate's Court; and that is the forum in which this case should be heard. Plaintiff should not be able to switch courts in the way in which she has cycled through lawyers. For the reasons herein, Plaintiff's case should be dismissed, or, in the alternative, stayed pending resolution of the action in New York County Surrogate's Court.

## OPERATIVE FACTS

On or about June 1, 2005, Nicola Bulgari, the father of Ilaria, Veronica, and Natalia Bulgari, formed an irrevocable trust ("Family Trust-1"), for the benefit of his wife, Anna Bulgari. Compl. ¶¶ 9-10. On or about October 6, 2005, Nicola Bulgari formed a second trust ("Family Trust-2") also for the benefit of Anna Bulgari, which was funded with shares of a company that owned one parcel of real estate. Compl. ¶ 12. Anna Bulgari was the sole trustee of both trusts until May 28, 2015, when Anna appointed Defendant as a co-trustee of Family Trust-1. Compl. ¶ 19. Anna Bulgari passed away on October 22, 2019, whereupon Defendant became the sole trustee of both Family Trust-1 and Family Trust-2 (the "Trusts"). Compl. ¶ 20. On or about October 21, 2020, Family Trust-2 was merged into Family Trust-1 leaving only Family Trust-1 from which distributions could be made. Compl. ¶ 43. Defendant has never received any compensation for acting as Trustee of either trust and all distributions from the Trusts have been in equal shares to the three sisters.

This case solely concerns the administration of these family trusts, which are already the subject of an action that Plaintiff filed in New York County Surrogate's Court. On March 11,

2021, Plaintiff invoked the jurisdiction of the Surrogate's Court in New York County by filing an action requesting that Family Trust-1 be fully distributed to the three daughters save a reserve of $1,000,000 to pay outstanding debts and administrative fees.  *See* Petition, *In re Application of Ilaria Bulgari to Compel a Distribution Following the Termination of the Article 2 Trust under Anna Bulgari Family Trust #1*, Index No. 2021-3336 (N.Y. Surr. Ct. 2021) ("Surrogate's Court Action"), attached as Exhibit 1.  Plaintiff later amended her petition on November 3, 2021.  *See* Surrogate's Court Action, Docket, attached as Exhibit 2.  Plaintiff sought both the distribution of the cash and securities in Family Trust-1, and the former assets of Family Trust-2 that had been merged into Family Trust-1.  *Id.* ¶ 7.  On January 27, 2022, Defendant filed an answer explaining that the bulk of the $120,000,000 assets in Family Trust-1 had already been distributed, but that a $3,000,000 reserve was needed to pay future taxes, accounting and legal fees, and other administrative costs.  Surrogate's Court Action, Answer ¶ 4, attached as Exhibit 3.

In response to the Surrogate's Court Action and Plaintiff's refusal to amicably settle the Trusts, Defendant has had to resort to filing judicial accountings in the Surrogate's Court pursuant to Article 22 of the Surrogate's Court Procedure Act, at great expense to the Trusts.  Third-party accountants worked over the last year to examine and analyze over fifteen years of transactions, culminating in judicial accountings that were completed and filed in Surrogate's Court on July 28, 2022.  *See* Surrogate's Court Action, Verified Petitions for Judicial Settlement of First and Final Account (the "Judicial Accountings"), attached in part as Exhibits 4 and 5.  The Judicial Accountings, spanning more than 3,500 pages in full, render this action moot.  Plaintiff has all the records and financial analysis she has demanded be produced, and can in Surrogate's Court: (i) demand discovery and depositions concerning the Trusts, (ii) make objections; and (iii) demand a trial in the Surrogate's Court Action that she commenced in March 2021.

Plaintiff's Complaint, filed on June 17, 2022, over a year after she began the Surrogate's Court Action, alleges only two causes of action and solely concerns Defendant's administration of the same exact trusts that are the subject of her Surrogate's Court Action.  Count One alleges that Defendant, as Trustee, breached her fiduciary duty by purportedly refusing to provide Plaintiff information about the Trusts; failing to investigate "irregularities" in Morgan Stanley account statements and other tax documents (some of which were over fifteen years old); and failing to maintain records, which no longer existed when Defendant became trustee.  Compl. ¶¶ 87-96. Count Two alleges that Defendant was negligent on the same basis.  The bulk of the Complaint is spent describing Defendant's attempts to respond to Plaintiff's unrelenting requests, including a fixation on pagination in account statements, changes in the Morgan Stanley branch locations, why some statements contained year-to-date information and some did not, and what she believes are irregularities with opening and closing values of securities when Morgan Stanley has already explained why those amounts differ.  Compl. ¶ 58.  The only reference to damages in the entire complaint aside from the required jurisdictional language is the "costs and fees incurred in prosecuting this Complaint," for which Plaintiff provides no statutory authorization.  Compl. at 25.  It is unclear what Plaintiff hopes to achieve by filing this parallel action, except exercising animus against her sister, who has served as trustee without any compensation.

## ARGUMENT

This family dispute, which is more about personal animus than raising real legal causes of action, belongs in New York County Surrogate's Court, which has already assumed jurisdiction over the *res* of the Trusts.  Surrogate's Court has the expertise and experience in resolving such family disputes for fifteen year-old-trusts governed by New York trust law, and is the proper forum for Plaintiff to raise her complaints, seek discovery, and demand a trial if she truly wants to dissipate all of the remaining assets of the Trusts.  Plaintiff's initiation of a parallel lawsuit in this

Court reeks of judicial gamesmanship and primarily serves to increase litigation costs and ultimately diminish the *res* of the Trusts (as she demonstrated by failing to allege damages with any specificity in the Complaint).  For those reasons, as discussed more fully below, this Court should (1) abstain from exercising diversity jurisdiction over this case pursuant to the Supreme Court's holding in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); (2) dismiss the case under the doctrine of *forum non conveniens*; (3) dismiss the case under the probate exception to diversity jurisdiction set forth in *Marshall v. Marshall*, 547 U.S. 293 (2006); (4) dismiss this case for failure to allege damages with the requisite specificity; or (5) otherwise stay this case pending resolution of the Surrogate's Court Action.

## I.    Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged must be sufficient to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Mere "'labels and conclusions'" or "'naked assertion[s]' devoid of 'further factual enhancement'" do not suffice. *Id*. (quoting *Twombly,* 550 U.S. at 555, 557). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

"When a court reviews a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it 'must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs.'" *Bautz v. ARS Nat'l Servs., Inc.*, 226 F. Supp. 3d 131, 136 (E.D.N.Y. 2016) (emphasis added) (quoting *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004)).  "The plaintiff bears the burden of proving"

jurisdiction exists by a "preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). "'[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (citation omitted).

## II. This Action Should Be Dismissed or Otherwise Stayed In Favor of the Surrogate Court's Action Filed by Plaintiff in March 2021

Plaintiff invoked the jurisdiction of the Surrogate's Court more than a year before she filed this Complaint and she should not be allowed to maintain multiple actions with the same parties contemporaneously litigating substantially the same issues in another forum – especially when she initiated her action first in Surrogate's Court, which has a particular expertise in deciding issues of New York State trust law. Allowing this litigation to continue will waste judicial resources through duplicitous briefing and discovery, increase costs to the Trusts and the parties, and risk inconsistent judicial decisions. Thus, dismissal is warranted considering the factors enunciated in *Colorado River*, 424 U.S. at 810; and under the doctrine of *forum non conveniens*.

### A. The Court Should Abstain From Exercising Its Jurisdiction Under *Colorado River*

Pursuant to the Supreme Court's decision in *Colorado River*, 424 U.S. at 800, a federal court may abstain from exercising diversity jurisdiction when there are parallel proceedings "to avoid duplicative litigation" and in "consideration of wise judicial administration." *Id.* at 817. Here, the action in Surrogate's Court filed a year before this action, is a parallel proceeding that will resolve all of the issues contained in the complaint.

#### 1. This Case and the Surrogate's Court Action Are Parallel

Plaintiff's Complaint solely concerns allegations of failing to investigate what Plaintiff deems are financial irregularities in account statements and issues of record retention concerning

Family Trust-1 and Family Trust-2.  The Surrogate's Court Action below involves the exact same parties and will address the same issues, making the cases parallel.  Cases are parallel when "substantially the same parties are contemporaneously litigating substantially the same issue in another forum."  *Dittmer v. Cty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998).  "Perfect symmetry of parties and issues is not required."  *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012).  Rather, "the parallel litigation requirement is satisfied when the main issue in the case is the subject of [an] already pending lawsuit."  *GBA Contracting Corp. v. Fid. & Dep. Co. of Md.*, No. 00-cv-1333, 2001 WL 11060, at *1 (S.D.N.Y. Jan. 4, 2001); *see also Abe v. New York Univ.*, No. 14-cv-9323, 2016 WL 1275661, at *6 (S.D.N.Y. Mar. 30, 2016) (noting that litigation is parallel when "there is a substantial likelihood that the state litigation will dispose of all claims in the federal case").

The specific claims brought by a plaintiff are not determinative as to whether the actions are parallel.  For example, in *Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289 (S.D.N.Y. 2017), even though the action was brought *in personam* against the trustee in the federal case, the District Court abstained from exercising jurisdiction in deference to pending litigation in Surrogate's Court where Citibank had "already voluntarily initiated an accounting . . . ."  *Id.*  at 296.  The District Court looked past the specific forms of relief requested in the federal complaint and held that "the fact that Plaintiffs seek different, and even conflicting, forms of recovery in this action does not defeat parallelism, where the underlying events remain identical."  *Id.* at 296 (citing *Telesco v. Telesco Fuel and Masons' Materials, Inc.*, 765 F.2d 356, 262 (2d Cir. 1985) ("Merely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit.")).  This is because "even if different relief is sought in the two actions, or the claims are not exactly the same, they are parallel as long as the causes of action are

comprised of the same essential issues." *Garcia v. Tamir*, No. 99 Civ. 298, 1999 WL 587902, at

*3 (S.D.N.Y. Aug. 4, 1999); *see also Highview Properties D.H.F. Inc. v. Town of Monroe*, No. 18

Civ. 867, 2022 WL 2079085 (S.D.N.Y. June 9, 2022) (rejecting argument that cases were not

parallel because the federal case sought money damages while the state case concerned Plaintiff's

application to develop residential property).

Just like in *Phillips*, in the present action and in the Surrogate's Court Action, "the

underlying events remain identical." *Phillips*, 252 F. Supp. 3d at 296. The parties are the same,

and although the Complaint is styled as an *in personam* action, "there is a substantial likelihood

that the state litigation will dispose of all claims in the federal case." *Abe*, 2016 WL 1275661, at

*6. Indeed, "[i]f the Surrogate's Court determines that the Trust was dutifully administered, there

will be no basis for a claim." *Id.* at *5. In short, because "the main issue in [this] case is the

subject of an already pending lawsuit," the cases are parallel. *GBA Contracting Corp.*, 2001 WL

11060, at *1.

## 2. The *Colorado River* Factors Overwhelmingly Support Abstention

Once a court determines there are parallel proceedings, it considers six factors in

determining whether to abstain from exercising jurisdiction: "(1) whether the controversy involves

a *res* over which one of the courts has assumed jurisdiction, (2) whether the federal forum is less

inconvenient than the other for the parties, (3) whether staying or dismissing the federal action will

avoid piecemeal litigation, (4) the order in which the actions were filed, and whether proceedings

have advanced more in one forum than in the other, (5) whether federal law provides the rule of

decision, and (6) whether the state procedures are adequate to protect the plaintiff's federal rights."

*Woodford v. Cmty Action Agency of Greene County*, 239 F.3d 517, 522 (2d Cir. 2001). These

factors overwhelmingly counsel in favor of abstention.

As to the first factor, New York County Surrogate's Court has already assumed jurisdiction over the *res* of the Trusts as a direct result of Plaintiff's actions.  When Plaintiff filed her petition in Surrogate's Court over a year ago, she gave that court jurisdiction to "determine any and all matters relating to [the] lifetime trusts."  *See* N.Y. Surr. Court Procedures Act ("SCPA") § 209(6). Indeed, Surrogate's Court is imbued "with broad jurisdiction over *inter vivos* trusts [with] no explicit limitation."  *Wagenstein v. Shwarts*, 920 N.Y.S.2d 55, 58 (1st Dep't 2011); *Matter of Pulitzer's Estate*, 139 Misc. 575, 583 (Surr. Ct. N.Y. County 1931) (noting that "[t]he widest equity powers exist in the Surrogate's Court of this state by the grant of legislative authority contained in section 40 of the Surrogate's Court Act"); *Kennedy v. Trs. of Testamentary Tr. of Will of Kennedy*, 406 Fed. Appx. 507, 510 (2d Cir. 2010) (affirming District Court's ruling abstaining from asserting jurisdiction because plaintiff was ask[ing] the Court "to dispose of property that [was] in the custody of state probate court"); *cf. In re Beall's Will*, 184 Misc. 881 (Surr. Ct. Orange Cty. 1945) ("Running through innumerable cases are statements to the effect that the Surrogate has jurisdiction under Section 40 of the Surrogate's Court Act to determine all questions, legal or equitable, between the estate and any person having any connection with it, where the Surrogate has jurisdiction of the subject matter.").

The second, third, and fourth factors also weigh in favor of abstention.  First, "there is plainly inconvenience in having to litigate actively in both state and federal courts at the same time."  *Lefkowitz v. The Bank of New York*, 676 F. Supp. 2d 275 (S.D.N.Y. 2009).  Such "inconvenience" may have been Plaintiff's goal in filing parallel actions, but the Supreme Court in *Colorado River* made clear that district courts should not countenance such maneuvering. Moreover, there is a danger of piecemeal litigation, and the "the paramount consideration" in the *Colorado River* analysis is whether allowing both actions to continue would increase "the

possibility of 'inconsistent disposition of the[ ] claims.'" *Phillips*, 252 F. Supp. 3d at 296, 299-300; *Arkwright-Boston Mrf. Mut. Ins. Co. v. City of N.Y.*, 762 F.2d 205, 211 (2d Cir. 1985) (noting that "consolidation in the state court could lead to more efficient fact-finding and more reasoned decision-making").

Indeed, the full judicial accountings filed in Surrogate's Court will determine the propriety of the financial records and any complaints of maladministration of the Trusts.  And, there can be no question that this case "relate[s] principally to state law issues (i.e. trusts and estate laws), which the Surrogate's Court is better equipped to adjudicate." *Durst v. Siegler*, No. 04-698, 2005 WL 3358599, at *9 (S.D.N.Y. Dec. 7, 2005); *see also Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509, 516 (2d Cir. 1973) (noting that "states have an especially strong interest and a well-developed competence for dealing with [trusts]") (internal quotations omitted); *Arkwright-Boston*, 762 F.2d at 211 (holding that actions that solely present issues of state law "tips the scale toward" abstention). Here, like in *Phillips, Nizer, Benjamin, Krim & Ballon*, "the claims in the Complaint are inherently intertwined with issues that the Surrogate's Court is simply better-positioned to decide," including "the long and tumultuous history of family conflict underlying many of the allegations." 252 F. Supp. 3d at 300.  For instance, the bulk of Plaintiff's allegations pertain to issues that pre-date Defendant assuming her role as co-trustee, a fact that Plaintiff completely ignores in her ill-fated complaint.  Compl. ¶¶ 58-80.  If this Court maintained jurisdiction over this case, it would inevitably be forced to parse through decades of family and trust history, a role Surrogate's Court was specifically created for.  *See* SCPA § 201 ("The court shall continue to exercise full and complete general jurisdiction in law and in equity to administer justice in all matters relating to estates and the affairs of decedents . . . to try and determine all

questions, legal or equitable, arising between any or all of the parties to any action or proceeding, or between any party and any other person having any claim or interest therein").

Finally, under the sixth and final factor, Plaintiff's rights will be fully protected in Surrogate's Court.  Pursuant to SCPA § 102, New York Civil Practice Law and Rules apply to all matters in Surrogate's Court including the ability to seek discovery, examine witnesses, bring motions, and demand a trial.  Additionally, in an accounting proceeding in particular, SCPA § 2211 specifically provides that "a fiduciary may be examined under oath by any party to the proceeding either before or after filing objections, if any, to the account, as to any matter relating to his or her administration of the estate."  And further that "[t]he party conducting such examination shall be entitled to all rights granted under article thirty-one of the CPLR with respect to document discovery, regardless of whether such examination takes place before or after such party files objections."  *Id.*

For all these reasons, the Court should abstain from exercising jurisdiction over this matter in deference to the Surrogate's Court, which already has jurisdiction over the Trust's *res* due to Plaintiff's own filing, and has particular expertise in dealing with these matters.  There will be no prejudice to Plaintiff since she will have the same ability to examine records, conduct discovery, and challenge any of the financial transactions as she would in this case.

**B.    This Case Should Be Dismissed Under the Doctrine of *Forum Non Conveniens***

For many of the same reasons, the doctrine of *forum non conveniens* counsels in favor of exercising the Court's discretion to dismiss this case because Surrogate's Court is better suited to handle this action.  The doctrine of *forum non conveniens* permits a court to dismiss an action "even if the court is a permissible venue with proper jurisdiction over the claim."  *LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 221 (S.D.N.Y. 2007) (quoting *Carey v. Bayerische Hypo– und*

*Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004)).  "A district court should dismiss a complaint where, on balance, resolution of the matter in an adequate alternative forum would be more convenient for the parties and courts and more just." *Id.* at 221–22.  In deciding whether to dismiss a complaint on *forum non conveniens* grounds, the Court must consider: (i) the degree of deference properly accorded the plaintiff's choice of forum; (ii) whether the alternative forum proposed by the defendant is adequate to adjudicate the parties' dispute; and (iii) the private and public interests implicated in the choice of forum.  *Accent Delight Int'l Ltd. v. Sotheby's*, 394 F. Supp. 3d 399, 408–09 (S.D.N.Y. 2019) (quoting *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005)).

Here, Surrogate's Court is the proper forum to air Plaintiff's complaints.  Plaintiff already invoked that Court's jurisdiction over a year ago by filing a petition regarding the same trusts, and Surrogate's Court is more experienced in adjudicating issues of state trust law.  Indeed, as stated *supra*, all of Plaintiff's rights are fully protected in Surrogate's Court and she will have a full and fair opportunity to litigate the same issues she alleges must continue separately in this case.  Allowing both cases to proceed simultaneously, however, would merely allow Plaintiff to run up attorneys' fees and game the system to litigate the same claims in parallel tracks.

## III.   This Action Should Be Dismissed Under the Probate Exception to Federal Jurisdiction

This Court should also dismiss the Complaint because Plaintiff's allegations fall within the probate exception to federal diversity jurisdiction.  While federal courts have the power to hear and adjudicate claims premised on state law where the parties are entirely diverse, the Supreme Court held in *Marshall v. Marshall*, 547 U.S. 293 (2006) that this power does not extend to claims related to the administration or contestation of trusts and estates where affording relief would

involve the disposition of property within the control of a state's probate court.  Specifically, the court held:

> [W]hen one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*. Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from disposing of property that is in the custody of a state probate court.

*Id.* at 296 (internal quotations omitted).  Moreover, "[t]his general principle applies equally when, as in this case, the res in question is not property of an estate but property of a trust."  *Mercer v. Bank of New York*, 609 Fed. App'x 677, 678 (2d Cir. 2015).  While the Supreme Court in *Marshall* differentiated between *in rem* claims and *in personam* claims, holding that the exception does not necessarily apply to the latter, the Second Circuit has since held that the inquiry does not begin and end by simply determining the type of claim alleged, for a Plaintiff cannot "mask in claims for federal relief her complaints about the maladministration of [an] estate[]," which belong in Surrogate's Court.  *Lefkowitz*, 528 F.3d at 107.  Instead, the federal court must evaluate whether, in addressing the claims, the Court would be required to assert control over a *res* in the custody of the state probate court.  *Id.*; *see also Mercer*, 609 Fed. App'x at 679 ("Although Plaintiffs have styled their claims in this case as '*in personam*' claims against Defendants for breach of fiduciary duty, breach of contract, and breach of the duty of loyalty, we must examine the substance of the relief that Plaintiffs are seeking, and not the labels they have used."); *Sechler-Hoar v. Hoart*, No. 17-01968, 2020 WL 292314, at *4 (S.D.N.Y. Jan. 21, 2020) ("Moreover, [the probate exception] applies also to jurisdiction that is *quasi in rem*: it is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted.").

New York County Surrogate's Court is already exercising control over the *res* of the Trusts at issue in this case.  On March 11, 2021, Plaintiff invoked the jurisdiction of the Surrogate's Court in New York County by filing an action requesting that Family Trust-1 be fully distributed to the

three Bulgari daughters.   That petition brought the *res* of the Trusts under the jurisdiction of Surrogate's Court.   SCPA § 209(6).   This action, and Plaintiff's refusal to consent to an informal settlement, forced Defendant to file full judicial accountings of Family Trust-1 and Family Trust-2 (although assets only remained in the former).   These judicial accountings, spanning over 3,500 pages with exhibits, will determine whether the financial transactions are in order and the Trusts were administered properly.   Clerks in Surrogate's Court are currently reviewing that accounting, and once review is complete a citation will be issued that will provide Plaintiff the opportunity to conduct discovery, make motions, and—if she still deems it necessary—make objections and/or insist on a trial.   During those proceedings, Plaintiff can raise the same breach of fiduciary duty claims and objections to the Morgan Stanley statements that she has brought here. *See, e.g.*, *In re Lorie Dehimer Irrevocable Trust*, 997 N.Y.S.2d 863 (4th Dep't 2014) (recognizing legitimacy of breach of fiduciary duty claims in Surrogate's Court for *inter vivos* trusts).

Although Plaintiff has craftily styled her claims as *in personam,* resolving the claims would implicate the *res* that is already under the jurisdiction of Surrogate's Court.   For example, Plaintiff spends much of her Complaint alleging Defendant failed to investigate pagination and other irregularities in Morgan Stanley statements, which implies, without a reasonable basis, that Morgan Stanley undertook some nefarious actions that dissipated the assets of the Trusts.   Even if there was a basis for such a claim, the cure would be to direct the restoration of funds by Morgan Stanley to the *res* that is already under the jurisdiction of the Surrogate's Court.   Similarly, Plaintiff complains that Defendant failed to "preserve record title ownership" of property and failed to produce records to the Plaintiff - which are both baseless as the 3,500 page accountings demonstrate.   These claims are administrative issues whose cure would be to produce the records or register the record title for the property (*i.e.* dictate administration of the trust *res*).   Similarly,

15

her complaints that Defendant withheld distributions is completely moot given the distributions that have been made to date through the Surrogate's Court Action.  Additionally, in her prayer for relief, Plaintiff asks this Court to issue a declaratory judgment that Defendant "is not entitled to reimbursement from Trust #1 of expenses she incurred defending this action," Compl. at 25, putting the Court in the position of deciding what expenses would be appropriate for the Trusts to pay – an issue squarely before Surrogate's Court.

Indeed, the ultimate issue of whether Defendant could even be found personally liable for her actions would require applying New York trust law to the construction of the trust documents, which provide that "[e]very action taken by the Trustee shall be presumed to be a fair and reasonable exercise of the powers and duties vested in or imposed upon the Trustee," and "[t]he Trustee shall have no personal liability with respect to any obligations or liabilities of the trust or any transactions of the trust."  Surrogate's Court Action, Petition for Family Trust-1, at 32.

Making determinations about whether the Trusts were administered properly, what fees should be paid, and the validity of the Trusts' financial records all implicate the *res* that is under the jurisdiction of Surrogate's Court, and thus the probate exception applies despite the fact that Plaintiff attempted to avoid this by pleading an *in personam* claim.  *See McKie v. Estate of Dickinson*, No. 20-CV-2973, 2021 WL 3292516, at *9 (E.D.N.Y. Aug. 2, 2021) (dismissing fiduciary duty claims where they sought "to undermine official actions taken by the Surrogate's Court . . . [and were] based on plaintiff's theory that defendants, in substance, mishandled estate assets by not distributing the assets to plaintiff"); *see also Genovese v. Genovese*, No. 1:15-CV-00064, 2016 WL 4945318, at *4 (W.D. Pa. Sept. 16, 2016) (dismissing case where the Court "cannot adjudicate the[] claims without interfering with the state court's jurisdiction over the trust"

and noting that the "line of distinction" between in rem claims and in personam claims "is not always clear") (internal citations and quotations omitted).

## IV.    This Action Should Be Dismissed For Failure to Adequately Plead Damages

This case should be dismissed for another reason:  it fails to set forth facts sufficient to allege damages, which is a pre-requisite to the claims at issue and this Court's jurisdiction.  It is well-settled that "bare bones assertions [of damages] fail to satisfy the basic pleading requirements of Rule 12(b)(6)."  *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 623 (S.D.N.Y. 2013). Indeed, courts in this circuit have routinely dismissed cases where the Complaint fails to identify the damages sought with specificity.  *See, e.g.*, *Int'l Bus. Machines Corp. v. Dale*, No. 7:11-CV-951 VB, 2011 WL 4012399, at *2 (S.D.N.Y. Sept. 9, 2011) ("[A]n allegation that defendant 'suffered damages' without particular facts as to how she was damaged does not satisfy *Twombly* and *Iqbal*."); *Kopperl v. Bain*, No. 3:09-CV-1754 CSH, 2010 WL 3490980, at *4 (D. Conn. Aug. 30, 2010) ("At the pleading stage, governed by Rule 12(b)(6), a plaintiff's demand for money damages must satisfy the *Twombly* and *Iqbal* requirement of factual, non-conclusory allegations stating a plausible claim that defendant's conduct caused specific economic harm in a quantifiable amount.").

Plaintiff's failure to quantify and allege damages beyond mere recitations of the threshold amount necessary for federal diversity jurisdiction warrants immediate dismissal of the Complaint. The Complaint alleges only two causes of action:  breach of fiduciary duty and negligence, both of which require plaintiffs to plead and prove the existence of damages under New York law.  *See Pokoik v. Pokoik*, 982 N.Y.S.2d 67, 70, 115 A.D.3d 428 (1st Dep't 2014) ("To establish a breach of fiduciary duty, the movant must prove the existence of a fiduciary relationship, misconduct by the other party, and damages directly caused by that party's misconduct."); *Pasternack v. Lab'y*

*Corp. of Am. Holdings*, 27 N.Y.3d 817, 825, 59 N.E.3d 485, 490 (N.Y. 2016) ("In order to prevail on a negligence claim, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.") (internal quotations omitted).  However, the complaint fails to quantify or assert the injury suffered and the damages arising therefrom beyond merely stating that they are "in excess of $75,000."  Compl. ¶¶ 96 & 104.  This is plainly inadequate.  *See Sotheby's, Inc. v. Stone*, 388 F. Supp. 3d 265, 276 (S.D.N.Y. 2019) (dismissing counterclaims where they "do not allege damages with any specificity" and "merely allud[ing] to [counter-claimant's] damages in a conclusory fashion"); *Belfon v. Credit Check Total Consumerinfo.com, Inc.*, No. 18-00408, 2018 WL 4778906, at *7 (E.D.N.Y. Oct. 1, 2018) (dismissing claims where plaintiff "does not contend what his damages are or which damages result from the purported contractual breach").

Even if Plaintiff were given leave to amend the Complaint, it is clear from her initial disclosures that she would not be able to plead damages adequate to invoke this Court's diversity jurisdiction.  In Plaintiff's initial disclosures, she admits that her "damages are . . . not yet fully computed, and must be determined by a jury."  Plaintiff's Initial Disclosures, attached as Exhibit 6.  She goes on to vaguely assert that the compensatory damages are "comprised of expenses incurred by Plaintiff, expenses incurred by [the Trusts], damages arising from the depreciation, damages arising from Plaintiff's lost use of funds, and attorney's costs and fees for pursuing this litigation."  *Id.*  However, she does not identify what expenses incurred by the Trusts she is referring to – indeed Defendant never received compensation for her work as Trustee.  Moreover, Plaintiff does not explain her reference to damages due to "lost use of funds," nor what assets were purportedly depreciated – likely because she cannot do so since Family Trust-1 grew four-fold over their lifetime and Plaintiff has received a huge windfall benefited exponentially as a result.

The only depreciation that is occurring has been caused by Plaintiff by forcing the Trusts to incur legal fees to respond to baseless claims and in litigating the same issues in multiple forums.

Finally, according to the initial disclosures, Plaintiff is apparently seeking to recover attorney's fees and the costs of the accountants her lawyers hired to prepare this litigation. There is no basis under federal law to award such fees. While Plaintiff (or Defendant) may be able to petition the Surrogate's Court for fees in certain circumstances because Surrogate's Court is a court of equity,[1] attorney's fees and expert costs are not compensable in a federal action. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975) ("In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser."); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 186 (2d Cir. 2008) ("Courts in the United States have historically applied the 'American Rule,' under which each party is to bear its own costs of litigation, unmitigated by any fee-shifting exceptions."); *Gortat v. Capala Bros.*, 795 F.3d 292, 296 (2d Cir. 2015) ("The Supreme Court has made clear on multiple occasions that, absent explicit statutory authorization, a district court may not award reimbursement for expert fees beyond the allowances authorized by 28 U.S.C. § 1920 . . . ."). Moreover, it would be ironic if the only concrete damages

---

[1] Pursuant to SCPA § 2302, a beneficiary is only entitled to fees and costs "[u]pon a motion" in Surrogate's Court where the Court must evaluate: "1) whether the objecting beneficiary acted solely in his or her own interest or in the common interest of the estate; 2) the possible benefits to individual beneficiaries from the outcome of the underlying proceeding; 3) the extent of an individual beneficiary's participation in the proceeding; 4) the good or bad faith of the objecting beneficiary; 5) whether there was justifiable doubt regarding the fiduciary's conduct; 6) the portions of interest in the estate held by the non-objecting beneficiaries relative to the objecting beneficiaries; and 7) the future interests that could be affected by reallocation of fees to individual beneficiaries instead of to the corpus of the estate generally." *In re Hyde*, 15 N.Y.3d 179, 186, 933 N.E.2d 194, 199 (N.Y. 2010). Surrogate's Court then decides in its sole discretion whether such award is equitable.

Plaintiff is seeking are for her own efforts in forcing the Trusts to litigate the same issue in multiple forums.

It is noteworthy that, because Defendant has no personal liability for her administration of the Trusts, any "damages" would be borne by the Trusts itself.  *See* Plaintiff Complaint Exhibit A at 10(D) ("The Trustee shall have no personal liability with respect to any obligations or liabilities of the trust or any transactions of the trust, and recourse against the trust or Trustee by any individual or entity for any matter shall be limited solely to the assets of the Trust and no recourse shall be had against the Trustee personally.").  Maintaining parallel federal litigation is simply forcing the Trusts to incur additional legal costs and professional fees, which ultimately harms no one else but the beneficiaries of the Trusts, including Plaintiff herself.

## V.   In the Alternative, the Court Should Stay These Proceedings Pending Resolution of the Surrogate Court's Action

If the Court is not inclined to dismiss this action, the case should nevertheless be stayed pending the full accounting and review occurring in Surrogate's Court, which has the requisite expertise to wade through fifteen-years of financial records and adjudicate family disputes regarding issues of state trust law.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (Cardozo, J.); *see also Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732 (3d Cir. 1983) (upholding stay because of ongoing administrative process and citing *Landis*); *U.S. Bank, N.A. v. Rancho Lake Condo. Unit-Owners Assoc., Inc.*, No. 17-01120, 2017 WL 5559953, at *1 (D. Nev. Nov. 17, 2017) (noting that under *Landis*, "[a] district court has the inherent power to stay cases to control its docket and promote the efficient use of judicial resources").

In determining whether a stay is appropriate, a court must consider what would be "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Remington Rand Corp.-Del. v. Bus. Sys. Inc.*, 830 F.2d 1274, 1276 (3d Cir. 1987) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)); *see also Landis*, 299 U.S. at 255 (holding that when considering a stay, a court should "weigh competing interests and maintain an even balance") (citing *Kansas City S. Ry. Co. v. United States*, 282 U.S. 760, 763 (1931)); *RH Kids, LLC v. Lehman*, 2018 WL 295562 (D. Nev. Feb. 4, 2018) (citing *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (setting forth the following factors for a court to balance when assessing whether a stay is appropriate: "(1) damage from the stay; (2) hardship or inequity that befalls one party more than the other; and (3) the orderly course of justice")).  Here, staying the case in favor of the Surrogate's Court Action would save judicial resources and would not cause any damage to Plaintiff who will still have the full array of options and rights that she would have if this Court were to hear the case.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that the Court dismiss the Complaint with prejudice under Fed. R. Civ. P. 12(b)(1) & (6) or, in the alternative, stay the proceedings pending resolution of the parallel proceedings ongoing in New York County Surrogate's Court.

Dated:   September 1, 2022
    New York, New York

**KATTEN MUCHIN ROSENMAN LLP**

By:  */s/ Michael M. Rosensaft*
   Michael M. Rosensaft
   Jake A. Nussbaum

   50 Rockefeller Plaza
   New York, NY 10020-1605
   T: (212) 940-8800
   F: (212) 940-8776
   michael.rosensaft@katten.com
   jake.nussbaum@katten.com

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Mitchell A. Karlan*
   Mitchell A. Karlan

   200 Park Avenue
   New York, NY 10166-0193
   T: (212) 351-3827
   F:  (212) 351-5254
   mkarlan@gibsondunn.com

   *Attorneys for Defendant Veronica*
   *Bulgari*