**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ILARIA BULGARI,

              Plaintiff,

     -against-

VERONICA BULGARI, in her capacity as Trustee
of the Anna Bulgari Family Trust #1 and Trustee of
the Anna Bulgari Family Trust #2,

             Defendant.

22 Civ. 5072 (LGS)(RWL)

---

# PLAINTIFF'S MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

David Boies
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Email: dboies@bsfllp.com

Peter Skinner
MORRISON & FOERSTER
250 West 55th Street
New York, New York 10019
Telephone: (212) 336-4142
Email: pskinner@mofo.com

*Attorneys for Plaintiff Ilaria Bulgari*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ....................................................................................................... 3

    A.    Factual History.................................................................................. 3

    B.    Procedural History ........................................................................... 7

ARGUMENT ........................................................................................................... 10

I.    THE COURT SHOULD RETAIN JURISDICTION PURSUANT TO
*COLORADO RIVER* ....................................................................................... 10

    A.    There is No Parallel Proceeding In Surrogate's Court...................... 11

    B.    The *Woodford* Factors Weigh Against Abstention............................ 13

II.    DEFENDANT'S *FORUM NON CONVENIENS* ARGUMENT FAILS........................ 17

III.    THE PROBATE EXCEPTION IS NOT APPLICABLE TO THIS ACTION ............... 19

IV.    PLAINTIFF SETS FORTH DAMAGES WITH THE REQUISITE
PARTICULARITY........................................................................................ 21

V.    DEFENDANT'S MOTION IN THE ALTERNATIVE FOR A STAY SHOULD
BE DENIED................................................................................................. 24

CONCLUSION........................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Beach v. Rome Tr. Co.*,
  269 F.2d 367 (2d Cir. 1959)..........................................................................15, 16, 18

*Chase Manhattan Bank, N.A. v. Am. Nat'l Bank & Tr. Co. of Chi.*,
  93 F.3d 1064 (2d Cir. 1996).....................................................................................22

*CKR L. LLP v. Anderson Invs. Int'l, LLC*,
  544 F. Supp. 3d 474 (S.D.N.Y. 2021)................................................................22, 23

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976)........................................................................................ *passim*

*In re Estate of Blumenkrantz*,
  22 Misc.3d 1133(A), 881 N.Y.S.2d 362 (Sur. 2009).............................................16

*Gardner v. Weisman*,
  2007 WL 30068 (S.D.N.Y. Jan. 3, 2007) ...............................................................12

*Genovese v. Genovese*,
  2016 WL 4945318 (W.D. Pa. Sept. 16, 2016)........................................................20

*Gerschel v. Bank of Am., N.A.*,
  2022 WL 504229 (S.D.N.Y. Feb. 18, 2022)...........................................................16

*Glob. Gaming Philippines, LLC v. Razon*,
  2022 WL 836716 (S.D.N.Y. Mar. 21, 2022) ..........................................................18

*Int'l Bus. Machines Corp. v. Dale*,
  2011 WL 4012399 (S.D.N.Y. Sept. 9, 2011)..........................................................24

*Iragorri v. United Techs. Corp.*,
  274 F.3d 65 (2d Cir. 2001)................................................................................17, 18

*Kennedy v. Trs. of Testamentary Tr. of Will of Kennedy*,
  406 Fed.Appx. 507 (2d Cir. 2010)..........................................................................14

*Kshel Realty Corp. v. City of New York*,
  2003 WL 21146650 (S.D.N.Y. May 16, 2003) ......................................................11

*Matter of Kupofsky's Will*,
  202 Misc. 756, 108 N.Y.S.2d 571 (Sur. 1951) .......................................................20

ii

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)..........................................................................................25

*Lefkowitz v. Bank of New York*,
  528 F.3d 102 (2d Cir. 2007)........................................................................19, 21

*McKie v. Estate of Dickinson*,
  2021 WL 3292516 (E.D.N.Y. Aug. 2, 2021)..........................................................20

*Morrison v. Nat'l Australia Bank Ltd.*,
  547 F.3d 167 (2d Cir. 2008)..............................................................................8

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983).............................................................................................13

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
  673 F.3d 84 (2d Cir. 2012)...................................................................1, 10, 14, 16

*Norex Petrol. Ltd. v. Access Indus., Inc.*,
  416 F.3d 146 (2d Cir. 2005)..............................................................................17

*Phillips v. Citibank*,
  252 F. Supp. 3d 289 (S.D.N.Y. 2017)................................................................12

*Phillips, Nizer, Benjamin, Krim and Ballon v. Rosenstiel*,
  490 F.2d 509 (2d Cir. 1973)...................................................................12, 14, 15

*In re Scanlon's Est.*,
  2 Misc.2d 65, 150 N.Y.S.2d 511 (Sur. 1956) ......................................................9

*Shields v. Murdoch*,
  891 F. Supp. 2d 567 (S.D.N.Y. 2012)................................................................11

*In re Shore*,
  19 Misc. 3d 663, 854 N.Y.S.2d 293 (Sur. 2008) ................................................24

*Sotheby's, Inc. v. Stone*,
  388 F. Supp. 3d 265 (S.D.N.Y. 2019)................................................................24

*Tanzanian Royalty Expl. Corp. v. Crede CG III, Ltd.*,
  2019 WL 1368570 (S.D.N.Y. Mar. 26, 2019) ....................................................14

*Wiwa v. Royal Dutch Petrol. Co.*,
  226 F.3d 88 (2d Cir. 2000)................................................................................17

*Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*,
  239 F.3d 517 (2d Cir. 2001)..............................................................................13

iii

*Yien-Koo King v. Wang*,
    2018 WL 1478044 (S.D.N.Y. Mar. 26, 2018) ........................................................................11

**Statutes**

EPTL § 11-1.7 ..............................................................................................................................24

RICO ............................................................................................................................................12

SCPA § 2014(4) ............................................................................................................................1

SCPA § 2102(4) ..........................................................................................................................11

Surr. Ct. Act, § 48 .........................................................................................................................9

Surr. Ct. Act, § 52 ....................................................................................................................9, 20

Plaintiff Ilaria Bulgari respectfully submits this memorandum of law in opposition to Defendant Veronica Bulgari's motion to dismiss or, alternatively, for a stay. (Dkt. 24).

## PRELIMINARY STATEMENT

Defendant's abstention motion is meritless because there is no parallel proceeding pending in Surrogate's Court, much less a prior pending proceeding sufficiently duplicative of this case to warrant dismissal or a stay. Defendant would have this Court decline jurisdiction because Defendant wants to litigate Plaintiff's claims in an accounting proceeding in Surrogate's Court that has not yet begun. But Defendant's preference to litigate in another forum at some undetermined point in the future is not grounds for this Court to abstain from its "virtually unflagging obligation" to exercise its jurisdiction. *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.,* 673 F.3d 84, 100 (2d Cir. 2012).

Recognizing as much, Defendant grasps onto the only proceeding concerning either of the two trusts at issue here that has ever been "pending" in Surrogate's Court—a petition Plaintiff filed to compel a distribution of funds that Defendant had been holding ransom to coerce Plaintiff into giving her a release. But that petition has nothing to do with the misconduct at issue in this case. There, Plaintiff sought to compel a distribution under N.Y. SCPA § 2014(4). Here, Plaintiff seeks damages from Defendant personally for breaches of fiduciary duties and negligence. In short, none of Plaintiff's claims in this Court concern the Surrogate's Court petition (which Plaintiff is not prosecuting in any event because Defendant distributed the bulk of the funds at issue after admitting that they had been wrongfully withheld) or any other proceeding in Surrogate's Court.

Defendant's arguments to the contrary are based on assertions that are not accurate. Despite Defendant's previous representations to this Court (Dkt. 9 at 1), there was no accounting pending when this case was filed, there is no accounting pending now, and it may take months for an

accounting to ever get going, if at all. Nor does this case concern the fourteen-year period when the trusts were under Plaintiff's mother's oversight, as Defendant repeatedly claims. (*See, e.g.*, Dkt. 15 at 1; (Dkt. 24 ("Br.") at 11)). Instead, this case concerns Defendant's two-plus years of misconduct—withholding distributions to coerce Plaintiff into surrendering rights and powers she enjoyed under one of the trust agreements; refusing to provide information to which Plaintiff was entitled; failing to investigate irregularities apparent from brokerage account statements and tax filings; failing to take steps to preserve record ownership of trust assets; failing to keep trust records; and refusing to perform duties she was required to take as a trustee—since taking over as the sole trustee of both trusts following her mother's death in October 2019. Put simply, this case is not "parallel" to Plaintiff's petition for a distribution—a prerequisite for *Colorado River* abstention.

For the same reasons, Plaintiff's choice of forum should not be undermined under the doctrine of *forum non conveniens*. Given that both this Court and the Surrogate's Court are physically in New York City, allowing this action to continue before this Court is not inconvenient. Nor is the Surrogate's Court significantly preferable to this Court. To the contrary, it will be slower and is no more competent than this Court to address fiduciary duty and negligence claims.

Defendant's remaining arguments are also misplaced. The probate exception does not apply to claims, such as the fiduciary duty and tort claims presented here, where a plaintiff seeks damages from a defendant personally rather than assets or distributions from a trust. Further, Plaintiff sets forth damages with the requisite particularity, pleading ample facts from which it is clear that Plaintiff was economically damaged in a quantifiable amount.

The Court should deny Defendant's motion to dismiss.

## BACKGROUND

### A.    Factual History

Nicola Bulgari was married to Anna Bulgari in 1963. They had three children: Defendant Veronica Bulgari, Plaintiff Ilaria Bulgari, and Natalia Bulgari. Decades later, the marriage fell apart, culminating in Nicola and Anna's divorce in June 2005. (Dkt. 1 ("Compl.") ¶ 13).

As part of the divorce, Nicola Bulgari agreed to give Anna Bulgari money and property, at least part of which he transferred into two irrevocable trusts. (*Id.* ¶¶ 1-13). The first, the Anna Bulgari Family Trust #1 ("Trust #1"), was initially funded with at least a $6 million cash deposit made on or about August 1, 2005 into a brokerage account at Morgan Stanley & Co. Incorporated ("Morgan Stanley"). (*Id.* ¶ 10). The second, the Anna Bulgari Family Trust #2 ("Trust #2" and, collectively with Trust #1, the "Trusts"), received ownership of Verda Company, N.V., a company formed years earlier in what was then the Netherland Antilles (now Curaçao) that owned at least an estate located in Millbrook, New York. (*Id.* ¶ 12).

Both Trusts were created for the benefit of Anna Bulgari and her three daughters. (*Id.* ¶¶ 9, 11). Anna Bulgari was the initial trustee of both Trusts. (*Id.*). In 2015, Defendant became co-trustee of Trust #1. (*Id.* ¶ 19). On October 22, 2019, Anna Bulgari passed away, and Defendant became the sole trustee of both Trusts. (*Id.* ¶ 20).

At the time her mother passed away, Plaintiff had no idea either trust existed. She learned about them for the first time months later, on February 10, 2020. At that point, Plaintiff was told that she and her sisters were each entitled to one third of Trust #1 and Trust #2. What she was not told was that each Trust should have been automatically divided on the date of her mother's death into three new trusts, one for each of Plaintiff and her two sisters. (*Id.* ¶¶ 22-23).

Defendant had not done that. (*Id.* ¶ 23). Ignoring the plain requirements of the agreements creating the Trusts, Defendant had failed to fund new trusts for Plaintiff, depriving Plaintiff of the

benefit of at least $40 million and one third control of the estate in Millbrook. (*Id.* ¶¶ 23, 46). Instead, Defendant left the money and property in the original Trusts while she sought to compel Plaintiff to agree that Plaintiff's share would be put not in the continuing trust required by the agreement creating Trust #1, but in a new trust called the "Newco" trust. (*Id.* ¶¶ 23-24).

The proposed Newco trust differed substantively and materially from the continuing trust that should have been created for Plaintiff's benefit immediately upon her mother's death. For example, the Newco trust put Plaintiff on a monthly allowance, whereas the continuing trust gave Plaintiff the authority to access any amounts needed for her health, education, support and maintenance. Further, and perhaps most alarmingly, the Newco trust undid the irrevocable nature of Nicola Bulgari's original divorce agreement with Anna Bulgari by providing that one third of whatever remained in Plaintiff's trust after her death would go to Nicola's heirs, including Defendant's children. The continuing trust, on the other hand, gave Plaintiff the sole power to give any or all of Trust #1 to any recipient other than her estate or creditors. (*Id.* ¶ 27).

Plaintiff was stunned by these developments. She had been kept in the dark about the Trusts, not just while her mother was alive, but for months following her mother's death. In contrast, her sister was not only told about them, she was given control over them. And immediately upon learning about the Trusts, Plaintiff was told she had to agree to put her share in still yet another trust, which would have substantially restricted Plaintiff's rights to the trust's assets. But Plaintiff would not be steamrolled. Rather than simply acquiesce to a new trust she knew nothing about, she began requesting information to which she was entitled as a beneficiary to understand Trust #1. (*Id.* ¶ 25).

In response, Defendant stonewalled Plaintiff, refusing to provide Trust #1's Morgan Stanley account statements unless Plaintiff agreed to the Newco trust. For six months, Defendant

also repeatedly declined to produce account statements and other trust information that Plaintiff, as a beneficiary, was legally entitled to receive, until after Plaintiff agreed to decant her share into the Newco trust. (*Id.* ¶¶ 28-29, 33-35, 38-40, 54).

In August 2020, having still not received the information about Trust #1 that she had been demanding, Plaintiff refused to agree to decant into the Newco trust proposed by Defendant. (*Id.* ¶ 39). Only then did Defendant propose doing what she had been obligated to do since her mother passed away ten months earlier—separate Trust #1 into three new trusts that did not alter the terms of the Trust #1 agreement. (*Id.*). Still, Defendant delayed making any distributions from Trust #1 to Plaintiff's continuing trust. (*Id.*).

On September 11, 2020, Plaintiff again demanded Trust #1's brokerage account statements. (*Id.* ¶ 40). But Defendant stonewalled her again, saying (through her lawyer) that she was on holiday in Italy. (*Id.*). By October 2020, having still not received access to the Morgan Stanley account statements, Plaintiff determined that unless she was going to engage in costly and time-consuming litigation that she could not afford at that time, she had no option but to agree to Defendant's wrongful demand that Plaintiff accept a distribution from Trust #1 before she received historical information about Trust #1. Plaintiff then agreed to accept a distribution from Trust #1 into a new trust on the condition that Defendant would produce information about Trust #1's history of investments and holdings thereafter. (*Id.* ¶ 41). Even having coerced this agreement from Plaintiff, however, Defendant still sat on any distribution, refusing to fund Plaintiff's new trust until Plaintiff's counsel threatened legal action. (*Id.* ¶¶ 46-47).

Finally, on November 2, 2020, Defendant began making the distributions from Trust #1 that she should have made over one year earlier. (*Id.* ¶ 47). And a month later, on December 3, 2020, she belatedly began producing Trust #1's Morgan Stanley account statements, while at the

NY-2452017

same time asking Plaintiff to release Defendant from any liability for her role as trustee of either trust. (*Id.* ¶ 48). Defendant ultimately made productions of account statements from 2005 through February 2021 and certain tax returns for Trust #1. (*Id.* ¶¶ 54, 77).

The statements and returns, however, were not accompanied by any analysis of the statements, analysis of Trust #1's prior investments, or explanation of how Trust #1's assets had been managed and distributed. (*Id.* ¶¶ 37-38, 55, 67, 77). Consequently, Plaintiff was compelled to perform her own analysis at her own expense. (*Id.* ¶ 55). Plaintiff quickly discovered that the statements and returns were riddled with irregularities and inconsistencies. (*Id.* ¶¶ 58, 78). For months, Plaintiff asked Defendant to investigate, identifying the many issues Plaintiff's own examiners had identified, but Defendant took no action. (*Id.* ¶¶ 56-61). Plaintiff also asked for permission to speak directly to Morgan Stanley, but Defendant declined. (*Id.*)

Eventually, Plaintiff reached out to Morgan Stanley directly, which yielded action, but by Morgan Stanley, not Defendant. (*Id.* ¶¶ 62-63). The bank undertook an investigation, but due to confidentiality obligations to its client, Trust #1, it could only share the results of its findings with Defendant. (*Id.* ¶ 63). Through Defendant, Plaintiff eventually learned that Morgan Stanley had apparently acknowledged the many irregularities in the account statements and had produced an entirely new, corrected set of account statements to Defendant. (*Id.* ¶¶ 64-66).

In the beginning of 2022, Defendant then sent Plaintiff what Defendant represented to be updated account statements from Morgan Stanley. (*Id.*). But once again, she provided those statements with no analysis, much less an assessment of how, if at all, the new account statements addressed many of the irregularities Plaintiff had previously identified. So once again, Plaintiff paid analysts to review the materials at her own expense. (*Id.* ¶ 67).

That review demonstrated that the new account statements did not address all of the irregularities that Plaintiff had previously identified. (*Id.* ¶ 68). And it raised a whole new set of questions as well. (*Id.*). So Plaintiff sent another detailed list of issues raised by the new account statements to Defendant. (*Id.* ¶¶ 69-71). Plaintiff also raised the issues with the tax returns again— issues Defendant had entirely ignored to that point. (*Id.* ¶¶ 79-82). And once again, Defendant failed to address fully the issues Plaintiff had identified. (*Id.* ¶¶ 72, 82-83).

In total, nearly one year passed from the first time Plaintiff identified irregularities in the account statements and tax filings to Defendant until Defendant's last incomplete and inadequate response to Plaintiff's inquiries. (*Id.* ¶¶ 56-83). It was clear throughout this process that Defendant had conducted no investigation or review of the account statements, electing instead to send Morgan Stanley the information that she received from Plaintiff and to then respond back with a curated version of whatever she received from Morgan Stanley. (*Id.* ¶ 76). It was likewise clear that Defendant had done nothing to investigate the issues Plaintiff identified with the tax statements, instead simply forwarding incomplete documents she received from a tax preparation firm. (*Id.* ¶ 83). Faced with Defendant's continued intransigence, and having incurred substantial costs to analyze the imperfect information she had been able to obtain, Plaintiff was left with no choice but to bring this lawsuit.

## B.    Procedural History

It took more than one year and the threat of judicial action for Defendant to do what she should have done immediately following her mother's death—distribute assets held by Trust #1 to a new trust for Plaintiff. (*Id.* ¶¶ 21-47). When Defendant finally acted, however, she did not simply transfer Plaintiff her one third share of Trust #1, which was worth roughly $43 million at the time. Instead, on November 2, 2020, Defendant transferred to Plaintiff's trust assets worth less than half what she was owed—roughly $20 million. (*Id.* ¶ 47). She then offered to distribute the remainder

of the assets to Plaintiff save a reserve ($1.1 million of which would have been Plaintiff's share) for future trust expenses *if* Plaintiff agreed to release Defendant from any liability arising from her role as trustee of either Trust #1 or Trust #2. (*Id.* ¶ 49).

Plaintiff refused and insisted on the remainder of her share of Trust #1. On December 28, 2020, Defendant released an additional $15 million to Plaintiff's trust, leaving roughly $25 million in Trust #1, roughly $8.3 million of which should have been transferred to Plaintiff. (*Id.* ¶¶ 46-50). In February 2022, Defendant acknowledged that she was holding roughly 20% of the money from Trust #1 that should have been distributed to Plaintiff's trust, but she provided no plan to distribute the remaining assets. (*Id.* ¶ 52).

Faced with the prospect that Defendant would hold Trust #1's remaining assets hostage until she received a release, Plaintiff on March 11, 2021, filed a petition in the New York County Surrogate's Court seeking an order compelling Defendant to distribute $8.3 million in funds that she was improperly withholding from Trust #1. (Dkt. 24-1; Declaration of David Boies ("Boies Decl."), dated September 29, 2022, ¶ 2)).[1] Plaintiff's suspicions were confirmed when, on March 12, 2021, Defendant again requested a release from Plaintiff. (Compl. ¶ 53).

On August 26, 2021, the Surrogate's Court Clerk requested changes to Plaintiff's petition. (Boies Decl. ¶ 3). On November 3, 2021, Plaintiff resubmitted the petition. (*Id.*). On December 17, 2021, the clerk finally accepted the petition and issued a citation—six months after it was first submitted. (*Id.* ¶ 4). In her January 27, 2022 answer to the petition, Defendant admitted that because only $3 million from Plaintiff's share of Trust #1 was needed as a reserve, she was wrongfully withholding $5 million. (Dkt. 24-3 at 4; Boies Decl. ¶ 5).

---

[1] The Court may consider evidence outside the pleadings in resolving this motion to dismiss for lack of subject matter jurisdiction. *Morrison v. Nat'l Australia Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008).

After receiving this stunning admission, Plaintiff elected not to expend time or resources completing the Surrogate's jurisdiction over her petition by serving the citation on her sister Natalia Bulgari, who was living in Italy at the time. (Boies Decl. ¶ 5). Instead, it appeared that Defendant might effectively moot the need for the petition if she distributed the $5 million she had admitted to improperly withholding. After months of back and forth, Defendant did just that, transferring $5 million of assets to Plaintiff's new trust on June 15, 2022—two and half years after Anna Bulgari's death. (*Id.* ¶ 6). Given market declines since December 2021, it is not clear what, if any, assets even remain in Trust #1 for the Surrogate to address in the petition. (*Id.* ¶ 7).

On June 16, 2022, Plaintiff filed the present action, alleging that Defendant breached her fiduciary duties and was negligent. (Dkt. 1). In her Complaint, Plaintiff seeks damages from Defendant personally. She does not seek anything from either Trust #1 or Trust #2. (Compl. ¶25). On June 20, 2022, Plaintiff served the Complaint on Defendant. (Dkt. 6).

On July 8, 2022, Defendant filed a letter with the Court stating that there was "a parallel proceeding currently pending in New York Surrogate's Court." (Dkt. 9 at 1). She further identified that purported proceeding as the "First and Final Account of Proceedings of Veronica Bulgari, No. 2021-3336 (N.Y. Surr. Ct.)." (*Id.*). But there was no such proceeding for an accounting pending or even filed in Surrogate's Court at that time—nor is there one pending now.

On July 29, 2022, Defendant sent Plaintiff hard copies of accountings for Trust #1 and Trust #2 that she had purportedly submitted to the Surrogate's Court on July 28, 2022. (Boies Decl. ¶ 8). But the accountings were not filed on that date, as a proceeding in Surrogate's Court is not initiated until the Surrogate accepts a petition for filing and issues a citation, a process that often takes months, particularly if the Surrogate's Court Clerk requires changes to the petition. (*Id.* ¶¶ 2-4). *See also* Surr. Ct. Act, §§ 48, 52; *In re Scanlon's Est.,* 2 Misc.2d 65, 69, 150 N.Y.S.2d 511, 517

(Sur. 1956) (every proceeding in a Surrogate's Court is commenced by the filing of a petition, and jurisdiction is then acquired over a party by the proper service of a citation). Defendant's petitions, if and when they are accepted, will initiate separate proceedings from Plaintiff's Surrogate's Court proceeding to compel a distribution. (*Id.* ¶ 8). !

Plaintiff on July 29, 2022, adjusted her position, saying in a letter to the Court that she had "completed" the accounting and "submitted" it to Surrogate's Court "this week"—not that she had in fact sent it to Surrogate's Court just the day before. (Dkt. 15 at 1-2). Defendant by no means, however, corrected her July 8 claim that there was an accounting already pending in Surrogate's Court. To the contrary, her July 29 letter ignored her July 8 letter entirely. (*Id.*).

On September 12, 2022, the Surrogate's Court Clerk advised Defendant's counsel of corrections that court required to the accounting petitions before they would be accepted for filing and a citation would issue. (Boies Decl. ¶ 10). As of the date of this brief, Defendant has not completed the corrections requested by the Surrogate's Court, and the Surrogate's Court has not issued a citation for either an accounting for Trust #1 or Trust #2. (*Id.*). In short, there are no pending accounting proceedings concerning the Trusts as of the date of this filing. (*Id.*).

## ARGUMENT

## I.   THE COURT SHOULD RETAIN JURISDICTION PURSUANT TO *COLORADO RIVER*

"The abstention doctrine comprises a few extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction." *Niagara Mohawk Power Corp.*, 673 F.3d at 100 (quotation omitted). "Abstention is generally disfavored, and federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976)). As the Supreme Court explained in *Colorado River*, abstention applies only "in exceptional circumstances where the order to the parties to repair to

state court would clearly serve a countervailing interest." *Colorado River*, 424 U.S. at 813.

This case is nowhere close. There is no prior parallel proceeding involving the same parties and the same issues in another court. And even if there were, the applicable six-factor test to be applied to parallel proceedings weighs against abstention.

### A.      There is No Parallel Proceeding In Surrogate's Court

The threshold determination under *Colorado River* is "whether the state and federal proceedings are indeed parallel, i.e. whether substantially the same parties are litigating the same issues in a state forum." *Kshel Realty Corp. v. City of New York*, 2003 WL 21146650, *5 (S.D.N.Y. May 16, 2003) (quotation omitted). That is not the case here.

The only matter pending in another court that could potentially be parallel to this case is Plaintiff's petition in Surrogate's Court to compel a distribution from Trust #1. The parties in that case, however, are not the same as the parties here. The persons interested in the Surrogate's Court distribution proceeding are Plaintiff Ilaria Bulgari, Defendant Veronica Bulgari, and Natalia Bulgari. (Dkt. 24-1 ¶ 15). This case concerns only Plaintiff Ilaria Bulgari's claims against Defendant Veronica Bulgari in her individual capacity; no one else is named. Further, the Surrogate's Court petition concerns a petition under SCPA § 2102(4) to compel payment of Plaintiff's interest in Trust #1. (*Id.* ¶ 14). This case, on the other hand, does not seek to compel any distribution from Trust #1, but rather seeks to hold Defendant personally liable for her breaches and negligence. This is therefore not a case where the abstention doctrine applies because there is no "substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." *Shields v. Murdoch,* 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012). To the contrary, the inactive Surrogate's Court petition for a distribution will not dispose of *any* of the claims raised in this case.

Under analogous circumstances, Judge Keenan declined in *Yien-Koo King v. Wang* to abstain from exercising jurisdiction in deference to a prior-pending Surrogate's Court action. 2018

WL 1478044, at *2 (S.D.N.Y. Mar. 26, 2018). There, the plaintiff alleged RICO and tort claims arising out of her nephew's exploitation of his status as fiduciary of her father's estate to orchestrate a scheme to steal artwork from the estate. *Id.* When the complaint was filed, a prior Surrogate's Court proceeding was already pending to determine the correct will to admit to probate, pursuant to which the nephew had been appointed as temporary fiduciary of the estate. *Id.* at *2, 9. The court reasoned that where "the nature of the claims in question differs, cases are not parallel despite the fact that both actions arise out of a similar set of circumstances." *Id.* at *9 (quotation omitted). The same is equally true here, where this action asserts breach and tort claims not presented in the Surrogate's Court petition for a distribution.[2]

Further, Defendant's reliance on *Phillips v. Citibank* is misplaced. There, unlike here, there was a prior pending accounting proceeding in Surrogate's Court. 252 F. Supp. 3d 289, 294 (S.D.N.Y. 2017). There, unlike here, plaintiffs had raised claims for breach of fiduciary duty in that prior accounting. *Id.* at 295-296. There, unlike here, plaintiffs tried to seek an accounting in their later-filed federal court action. *Id.* at 296. And there, unlike here, plaintiffs tried to raise the same breach claims in their later-filed federal lawsuit that they had already put at issue in the Surrogate's Court accounting. *Id.* at 295-296. In short, while *Phillips* presented the type of situation where the abstention doctrine could apply, it is utterly distinguishable from the situation presented in this case, where there is no pending accounting proceeding in which the same claims as those presented here have already been raised.

---

[2] *See also Gardner v. Weisman,* 2007 WL 30068, at *3 (S.D.N.Y. Jan. 3, 2007) ("[T]he proceeding before this Court is not parallel to the Surrogate's Court action because different issues are involved … Unlike the claims before the Surrogate's Court, the Petition here alleges breach of contract and breach of fiduciary duty.").

### B.   The *Woodford* Factors Weigh Against Abstention

Even if Defendant had met the threshold requirement of establishing a parallel proceeding here (which she has not), all of the factors that courts in the Second Circuit must consider in determining whether an exception to federal jurisdiction is applicable weigh *against* abstention.

As the Second Circuit explained in *Woodford v. Community Action Agency of Greene County, Inc.*, "[i]n determining whether this exception is applicable, the court should consider":

> (1) whether the controversy involves a *res* over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

239 F.3d 517, 522 (2d Cir. 2001). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. *Only the clearest of justifications will warrant dismissal.*" *Id.* (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 15–16 (1983) (quoting *Colorado River*, 424 U.S. at 818-19) (emphasis in *Moses Cone*)). Further, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." *Moses Cone*, 460 U.S. at 16. "Thus, the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it." *Woodford*, 239 F.3d at 522. In this case, five factors all unequivocally favor this Court's exercise of jurisdiction, while the one remaining factor is neutral and, thus, also weighs in favor of retaining jurisdiction.

First, this case does not concern a *res* over which the Surrogate's Court has exercised jurisdiction. The question presented is not whether the Surrogate's Court has the power to exercise jurisdiction over the claims presented in this case (Br. at 10), but whether it has done so. *Colorado River*, 424 U.S. at 813–14 ("[i]t was never a doctrine of equity that a federal court should exercise

its judicial discretion to dismiss a suit merely because a State court could entertain it"). Here, the Surrogate's Court has not yet assumed jurisdiction over Plaintiff's petition for a distribution because Plaintiff has not served the citation on all interested persons. Further, even if jurisdiction in Surrogate's Court were complete, this case, where Plaintiff seeks damages from Defendant in her personal capacity, does not concern the *res* at issue in the Surrogate's Court proceeding. *Compare Kennedy v. Trs. of Testamentary Tr. of Will of Kennedy*, 406 Fed.Appx. 507, 510 (2d Cir. 2010) (affirming District Court's ruling abstaining from asserting jurisdiction because plaintiff was ask[ing] the Court "to dispose of property that [was] in the custody of state probate court").

The second factor also favors the exercise of jurisdiction "[b]ecause both forums are within the state of New York . . . [and] are equally convenient." *Tanzanian Royalty Expl. Corp. v. Crede CG III, Ltd.*, 2019 WL 1368570, at *16 (S.D.N.Y. Mar. 26, 2019) (quotation omitted). If anyone is creating "inconvenience," it is Defendant, who seeks to compel Plaintiff to resolve her dispute in a Surrogate's Court accounting that is not yet even filed.

Third, because the Surrogate's Court petition to compel a distribution does not involve the issues raised in this case, there is no risk of inconsistent judgments. There is simply no other case pending where there is a claim of breach or negligence, the outcome of which could be different than the outcome here.[3] Nor will Defendant's accounting—if it is ever accepted for filing and served—necessarily adjudicate the issues raised here. The accounting will resolve whether the Trusts' assets were properly administered, not whether Defendant is liable for the misconduct at issue here. Defendant is also simply wrong to claim that this case will turn on "decades" of family

---

[3] Relying on *Phillips*, Defendant contends the third factor is "the paramount consideration." (Br. at 10). But since deciding *Phillips*, the Second Circuit has clarified that while the "avoidance of piecemeal litigation is indeed an important value," it is error to find that "this factor outweigh[s] the other *Colorado River* factors." *Niagara Mohawk Power Corp.*, 673 F.3d at 101–102. Rather, this factor favors abstention where the risk is one "not preventable by principles of res judicata and collateral estoppel." *Id.*

and trust history, the "bulk" of which pre-date Defendant's role as trustee. (Br. at 11). This case is focused on the two-plus years following Anna Bulgari's death that the trusts were administered solely by Defendant, not the years when Anna Bulgari was alive.[4]

There can be no credible dispute that the fourth factor weighs in favor of this Court's retention of jurisdiction. Defendant's efforts to muddy the waters notwithstanding, this case was first-filed because the accountings, the only other matters where Plaintiff could theoretically raise the claims she raised here, *have not yet even begun*. Further, despite Defendant's efforts to slow-roll discovery, far more has happened here than has happened in any Surrogate's Court proceeding. Document discovery is well under way, with both parties making and responding to initial demands. (Boies Decl. ¶ 11). Both parties have also propounded first sets of interrogatories. (*Id.*). Both parties have served many subpoenas on third parties for documents and depositions. (*Id.*). And while the precise dates of party depositions in this case are still being negotiated and litigated, they will take place in the next 60 to 90 days. In contrast, nothing has happened in the not-yet-filed accounting proceedings, and nothing has happened in the (unrelated) petition to compel other than the filing of the petition and Defendant's answer. (*Id.* ¶¶ 2-10).

Defendant's reliance on *Phillips* to contend that the fourth factor favors abstention because the claims "are inherently intertwined with issues that the Surrogate's Court is simply better-positioned to decide" is, yet again, misplaced. (Br. at 11). In *Phillips*, the Second Circuit considered *Beach v. Rome Trust Co*., a case where a plaintiff had instituted a federal diversity action against a trustee for breach of trust and mismanagement. *Phillips, Nizer, Benjamin, Krim and Ballon v. Rosenstiel*, 490 F.2d 509, 516-17 (2d Cir. 1973) (analyzing *Beach v. Rome Tr. Co.*,

---

[4] While this case will require a review of the brokerage statements, it will not require the review of every investment decision that will be conducted in a Surrogate's Court accounting. Rather, it will require analysis only of the obvious inconsistencies and irregularities noted in the Complaint and a determination as to whether Defendant breached her fiduciary duties and was negligent in failing to investigate those issues.

269 F.2d 367, 370 (2d Cir. 1959)). Even though the Surrogate's Court was in the process of administering a related estate, the Court explained "that the jurisdiction of the Surrogate over testamentary trustees would not prevent claims such as [breach of trust and mismanagement] for money damages from being heard in the district court at least when no previously instituted proceeding for an accounting was pending." *Beach*, at 373. Similarly here, even if the Surrogate's Court has jurisdiction over the trust property as Defendant (incorrectly) argues, Plaintiff's claims for breach of fiduciary duties and negligence are not prevented from being heard by this Court. Thus, Plaintiff should be permitted to proceed with her claims here.

The sixth factor—whether state procedures are adequate to protect the plaintiff's federal rights—likewise weighs against abstention. Plaintiff does not have the same right to a trial before a jury in Surrogate's Court. Rather, the Surrogate's Court does not permit a trial by jury where, as here, negligence claims are brought alongside breach of fiduciary duty claims because beneficiaries are only "entitled to a jury trial [when] seeking relief only sounding in law." *In re Estate of Blumenkrantz*, 22 Misc.3d 1133(A), 881 N.Y.S.2d 362 (Sur. 2009).

Lastly, the fifth factor is neutral at best, and thus weighs against abstention. This factor requires the Court to "look at what law—state, federal, or foreign—provides the rule of decision in the case." *Niagara Mohawk Power Corp.,* 673 F.3d at 102. While federal law does not control this case, there are no novel or particularly complex state law issues presented. *Id.* ("the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex") (quotation omitted); *see also Gerschel v. Bank of Am., N.A.,* 2022 WL 504229, at *4 (S.D.N.Y. Feb. 18, 2022) ("as all diversity suits raise issues of state law, their presence does not weigh heavily in favor of surrender of jurisdiction") (quotation omitted).

Taken together, the *Woodford* factors all weigh against abstention. *Colorado River,* 424 U.S. at 819 ("Only the clearest of justifications will warrant dismissal.").

## II.    DEFENDANT'S *FORUM NON CONVENIENS* ARGUMENT FAILS

Defendant's *forum non conveniens* argument fails for largely the same reasons as her abstention argument.

The determination of whether dismissal is appropriate on *forum non conveniens* grounds turns on (1) "the degree of the deference properly accorded the plaintiff's choice of forum;" (2) "whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute;" and (3) the balance between "the private and public interests implicated in the choice of forum." *Norex Petrol. Ltd. v. Access Indus., Inc.,* 416 F.3d 146, 153 (2d Cir. 2005). The party seeking dismissal has the burden of proof. *Wiwa v. Royal Dutch Petrol. Co*., 226 F.3d 88, 100 (2d Cir. 2000).

Here, Plaintiff's choice of forum is entitled to deference. *Iragorri v. United Techs. Corp.,* 274 F.3d 65, 71-72 (2d Cir. 2001). Defendant's only argument to the contrary is that Plaintiff is engaged in "gamesmanship." (Br. at 13). But Defendant's claim (*id*. at 2) that Plaintiff knew about Defendant's accounting is incorrect. (Boies Decl. ¶ 8). And the only one playing games is Defendant, who, after first incorrectly telling this Court an accounting was pending, then rushed to get one started (thus far unsuccessfully) to create an abstention issue in this case.

Under the second prong, Defendant contends that the Surrogate's Court is an adequate forum because that court's jurisdiction has "already [been] invoked," that court is "more experienced in adjudicating [these] issues," and "Plaintiff's rights are fully protected." (Br. at 13). As explained above, however, Plaintiff has turned to the Surrogate's Court to resolve a different dispute concerning a distribution from the trust. Further, the Surrogate's Court has no more expertise in resolving fiduciary duty or negligence claims than this Court has. And even if it did,

the claims presented are not novel issues of state law. *See Beach*, 269 F.2d at 374 (reasoning, in the course of rejecting argument that Surrogate's Court commonly handles cases concerning family and trust history, "[o]f course they do; but so do the federal courts. No controlling or obscure question of state law is presented on this complaint."). Lastly, Plaintiff's rights are not fully protected in Surrogate's Court, which does not offer Plaintiff the same right to a jury as she enjoys in this Court.

Finally, the balance of public and private interests weighs against dismissal. Courts consider private interest factors such as (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Glob. Gaming Philippines, LLC v. Razon,* 2022 WL 836716, at *9 (S.D.N.Y. Mar. 21, 2022). Here, the private interests favor proceeding in this Court because the Court will move the case more quickly and expeditiously than Surrogate's Court, where it takes months to even get a case started, as demonstrated by the parties' experiences to date.

"The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having controversies decided at home; (3) the interest in having a trial in a forum that is familiar with the law governing the action; (4) the avoidance of unnecessary problems in conflict of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* (citing *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 480 (2d Cir. 2002)). Here, the balance of the public factors likewise weighs against dismissal. First, because both courts are located in New York and the case will be decided by New York law, Defendant cannot genuinely contend that there are local interests, conflicts of law, or unfairness to the citizens of an unrelated forum with requiring dismissal of this case. *Iragorri,* 274

F.3d at 74-75 ("The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable."). Nor has Defendant identified administrative difficulties warranting dismissal.

For all of these reasons, the Court should defer to Plaintiff's choice of forum and deny Defendant's motion to dismiss on *forum non conveiens* grounds.

## III.    THE PROBATE EXCEPTION IS NOT APPLICABLE TO THIS ACTION

Defendant's probate exception argument misunderstands the doctrine at issue, which does not apply to Plaintiff's breach of fiduciary duty claim against Defendant personally.

"The 'probate exception' is [a] historical aspect of federal jurisdiction that holds 'probate matters' are excepted from the scope of federal diversity jurisdiction." *Lefkowitz v. Bank of New York*, 528 F.3d 102, 105 (2d Cir. 2007) (quoting *Marshall v. Marshall,* 126 S.Ct. 1735, 1746 (2006)). "As the Supreme Court recently clarified, the probate exception 'reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court.'" *Id.* (quoting *Marshall*, 126 S.Ct. at 1748). "The probate exception does not, however, 'bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.'" *Id.* Specifically, the probate exception does not apply to "claims of breach of fiduciary duty . . . [in which] Plaintiff seeks damages from Defendants personally rather than assets or distributions from either estate." *Lefkowitz,* 528 F.2d at 107-108.

Put simply, Plaintiff's claims do not require this Court to administer the trusts or dispose of trust property in the custody of the Surrogate's Court. Plaintiff, instead, seeks damages from Defendant personally for "widely recognized tort[s,] such as breach of fiduciary duty." *Id.* at 108 (citation omitted). Thus, the probate exception is inapplicable to this case.

This case does not, as Defendant incorrectly claims, require this Court to assert control of a *res* in the custody of the state probate court. (Br. at 14). As a threshold matter, the Surrogate's Court does not yet have control over any *res*, as Plaintiff has not served the citation on all parties in the petition to compel distribution. (Boies Decl. ¶ 5).[5] In any event, Plaintiff does not ask this Court to make any distribution from the Trusts or to take action with respect to the Trusts. Rather, she seeks compensation from Defendant personally for the harm Defendant has caused her.

Defendant suggests the remedy for this Court's determination that she breached her fiduciary duties in failing to investigate the irregularities with the Morgan Stanley statements would be to compel Morgan Stanley to restore funds to Trust #1. But Plaintiff is seeking not a payment from Morgan Stanley to Trust #1, but rather compensation for the substantial expense she incurred taking on the investigation of the Morgan Stanley statements that Defendant should have conducted. (*See* Compl. ¶¶ 55-83). Likewise, if the Court agrees that Plaintiff was damaged by Defendant's efforts to coerce Plaintiff into accepting the Newco trust, by delaying the distribution of assets from the Trust #1, or for failing to preserve trust records she was obligated to maintain, the remedy will not be to order a further distribution from the Trusts, but to order Defendant to pay Plaintiff personally for the harm she has caused. Nor does Plaintiff's request that the Court bar Defendant from reimbursing her expenses in this litigation from Trust #1 require the Court to take control of a *res* already under the jurisdiction of the Surrogate's Court. This type of negative equitable remedy prevents action with respect to property; it does not compel the affirmative invasion or distribution of that property.

In contrast, *McKie v. Estate of Dickinson* and *Genovese v. Genovese*—cited by Defendant (Br. at 16-17)—concern situations where courts could not adjudicate fiduciary duty claims without

---

[5] In Surrogate's Court, jurisdiction is acquired by the proper service of a citation, or an order to show cause or other authorized mandate. Surr. Ct. Act, § 52; *Matter of Kupofsky's Will*, 202 Misc. 756, 108 N.Y.S.2d 571 (Sur. 1951).

compelling affirmative actions with respect to a *res* already under Surrogate's Court jurisdiction. In *McKie,* plaintiff, who was a decedent's driver and "de facto personal assistant," brought fiduciary duty claims alleging that defendants sought to deprive him of property, including a truck, real estate, and funds in decedent's bank account. 2021 WL 3292516, at *1 (E.D.N.Y. Aug. 2, 2021). The court dismissed the case because plaintiff sought the award of assets from an estate that was already under the Surrogate's review. *Id*. Similarly, in *Genovese* a plaintiff asked a federal court to, among other things, remove a trustee, compel the trustee to perform his duties, reduce the trustee's compensation from the trust and disgorge past compensation, and void all actions the trustee had taken. 2016 WL 4945318, at *4 (W.D. Pa. Sept. 16, 2016). In dismissing the complaint, the court held that plaintiff's relief would require the court to exercise *in rem* jurisdiction by compelling the trustee to perform various actions, which went to the heart of the administration of the property already under control of a state court. *Id*. In this case, on the other hand, Plaintiff does not ask the Court to take any affirmative action with respect to the Trusts.

In short, even if the issues involved in Plaintiff's claims "undoubtedly intertwine[d] with the litigation proceeding in the probate courts" (which for the reasons explained at length above they do not), "in addressing the claims, [this Court] will not be asserting control of any *res* in the custody of a state court." *Lefkowitz*, 528 F.3d at 108 (quoting *Marshall*, 126 S.Ct. at 1748)). Accordingly, the probate exception to this Court's jurisdiction does not apply.

## IV.   PLAINTIFF SETS FORTH DAMAGES WITH THE REQUISITE PARTICULARITY

Finally, Defendant's argument that Plaintiff fails to allege damages with sufficient particularity is utterly meritless. (Br. at 17-20).

Plaintiff seeks monetary and punitive damages in an amount to be determined at trial, but in excess of $75,000. (Compl. ¶¶ 96, 104, "Demand for Relief".) Where the jurisdictional "sum

NY-2452017

21

claimed [by plaintiff] is made in good faith, dismissal for lack of subject matter jurisdiction is unwarranted unless it 'appears to a legal certainty that the claim is really for less than [$75,000].'" *CKR L. LLP v. Anderson Invs. Int'l, LLC*, 544 F. Supp. 3d 474, 478 (S.D.N.Y. 2021) (quoting *Doctor's Associates, Inc. v. Hamilton*, 150 F.3d 157, 160 (2d Cir. 1998)). "The legal impossibility of recovery must be so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim." *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 93 F.3d 1064, 1070 (2d Cir. 1996). Defendant does not address her high burden here (Br. at 17-20), much less come anywhere close to meeting it.

Instead, Defendant claims only that Plaintiff fails "to quantify and allege damages beyond mere recitations to the threshold amount for federal diversity jurisdiction." (Br. 17). One has to wonder if Defendant read Plaintiff's Complaint, or if she just skipped to the prayer for relief. For if she had read the Complaint, Defendant surely would have noted that Plaintiff claimed she incurred substantial expense hiring lawyers and forensic examiners to conduct investigations that Defendant should have conducted. (Compl. ¶¶ 55-83). Defendant likewise would have seen Plaintiff's allegations that Defendant wrongfully delayed distributing tens of millions of dollars from Trust #1 for more than one year. (*Id.* ¶¶ 21-50). And that Defendant failed to provide information about Trust #1 or to preserve records concerning Trust #1. These are all "non-conclusory allegations stating a plausible claim that [D]efendant's conduct caused specific economic harm in a quantifiable amount." (Br. at 17 (quoting *Kopperl v. Bain*, 2010 WL 3490980, at *4 (D. Conn. Aug. 30, 2010)).

For example, the expenses Plaintiff incurred in conducting investigations that Defendant should have conducted in accordance with her fiduciary duties are readily quantifiable from the fees Plaintiff was charged for this work. Defendant mistakenly suggests that these damages are not

recoverable because they are her "attorney's fees and the costs of the accountants her lawyers hired to prepare this litigation." (Br. at 19). But the Complaint makes clear she is seeking these costs not for pursuing this litigation, but for hiring specialists to review account statements and tax filings that Defendant did not examine herself. (Compl. ¶¶ 55, 67-68). The work Plaintiff's professionals conducted—which identified irregularities that Morgan Stanley later acknowledged and corrected (*Id.* ¶¶ 64-66)—far exceeds the $75,000 threshold for federal jurisdiction. (Dkt. 24-6 at 6).

Defendant's delay in distributing money from Trust #1, in clear violation of her fiduciary duties (Compl. ¶¶ 21-54), likewise caused Plaintiff quantifiable harm. First, Plaintiff was denied access to funds she otherwise would have been able to access under the terms of the Trust #1 agreement. Being denied property is a clear basis from which a quantifiable injury can be determined. Defendant likewise incurred expenses administering Trust #1 for more than a year that she would not have incurred had she made timely distributions following her mother's death, as she was required to do by her fiduciary obligations to the Trusts. Unnecessary expenses are also specific economic harm in a quantifiable amount.

In short, as Plaintiff claimed in her initial disclosures, she has suffered at least $2 million in damages as result of Defendant's misconduct. (Dkt. 24-6). And her quantification of damages is ongoing—in part because Defendant's breaches and negligence have denied Plaintiff information she needs to fully quantify the extent of her damages—and will depend on information to be obtained in discovery. (*Id.*). Defendant suggests that the ongoing nature of Plaintiff's damages calculation somehow undermines the adequacy of her pleading. (Br. at 18). But Plaintiff is not required to plead all of her damages in the Complaint. *CKR L.*, 544 F. Supp. 3d at 478. It is sufficient if she has a good faith basis that the claim exceeds $75,000. To require otherwise would

effectively bar Plaintiff the benefit of damages discovery, which would be particularly unjust in a case like this one, where Defendant has systematically deprived Plaintiff of information.[6]

Lastly, the Court should reject Defendant's claim that she has no personal liability for her administration of the trusts. (Br. at 20). Section 10(D) of the Trust #1 agreement provides that the "Trustee shall have no personal liability with respect to any obligations or liabilities of the Trust or any transactions of the Trust." (Compl. Ex. A). But Plaintiff does not seek to hold Defendant liable for any liabilities or obligations of the trusts. Instead, Plaintiff seeks to hold Defendant personally liable for the torts she committed as outlined in the Complaint. Accordingly, the express terms of the trust agreement do not excuse Defendant from liability for Plaintiff's claims here.

Even if the trust agreement did purport to absolve Defendant of personal liability for her breaches of fiduciary duties and negligence (which it does not), that provision would be void under New York law. EPTL § 11-1.7 (prohibiting the "exoneration" of a "fiduciary from liability for failure to exercise reasonable care, diligence and prudence"); *see also In re Shore,* 19 Misc. 3d 663, 665, 854 N.Y.S.2d 293, 295 (Sur. 2008) (EPTL § 11-1.7 applies to trusts). Defendant cannot look to the Trusts to compensate her for personal damages she owes to beneficiaries.

## V.    DEFENDANT'S MOTION IN THE ALTERNATIVE FOR A STAY SHOULD BE DENIED.

If all else fails, Defendant asks this Court to stay this case—likely for years—while Defendant pursues an accounting that she has not yet even started. (Br. at 20). As Defendant's own

---

[6] Defendant's cases do not hold otherwise. (Br. at 17-18). In *International Business Machines*, the defendant sought damages as a result of her employer's alleged failure to pay wages. The Court dismissed the counterclaims because defendant, unlike Plaintiff here, failed to plead particular facts regarding how she was damaged. *Int'l Bus. Machines Corp. v. Dale*, 2011 WL 4012399, at *2 (S.D.N.Y. Sept. 9, 2011). In *Sotheby's*, the Court dismissed certain of the defendant's counterclaims because she had only asserted, in a conclusory fashion, that she suffered "general and consequential damages" without any allegations from which the Court could quantify her damages. *Sotheby's, Inc. v. Stone*, 388 F. Supp. 3d 265, 276 (S.D.N.Y. 2019). Here, in contrast, Plaintiff has pled facts from which it is clear Plaintiff suffered a quantifiable harm.

authority makes clear, "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which [s]he prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am. Co.,* 299 U.S. 248, 255 (1936). Defendant has made no case of hardship or inequity. To the contrary, she claims only that a stay would conserve judicial resources. (Br. at 21). But there is no reason to conclude on the current record that judicial resources will be duplicated. First, there is no accounting proceeding pending. And even if one is eventually pending in Surrogate's Court, there will be no risk of judicial waste unless Plaintiff pursues the same claims in Surrogate's Court. Unless and until that happens (and Plaintiff has no plans to bring such a turn of events into effect), there is no reason to consider whether a stay is appropriate to conserve judicial resources.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Defendant's motion to dismiss.

Dated: September 29, 2022                          Respectfully Submitted,

                                                   By:      /s/  David Boies
                                                            David Boies
                                                            Boies Schiller Flexner LLP
                                                            333 Main Street
                                                            Armonk, New York 10504
                                                            Tel.: (914) 749-8200
                                                            Email: dboies@bsfllp.com

                                                            Peter Skinner
                                                            Morrison & Foerster LLP
                                                            250 West 55th Street
                                                            New York, NY 10019
                                                            Tel.: (212) 336-4142
                                                            Email: pskinner@mofo.com

                                                            *Counsel for Plaintiff Ilaria Bulgari*

NY-2452017