**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ILARIA BULGARI

                 Plaintiff,

                 v.

VERONICA BULGARI, in her capacity as Trustee of the
Anna Bulgari Family Trust #1 and Trustee of the Anna
Bulgari Family Trust #2,

                 Defendant.

Case No.: 1:22-cv-05072-LGS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS**


**KATTEN MUCHIN ROSENMAN LLP**
50 Rockefeller Plaza
New York, New York 10020-1605
Telephone: 212.940.8800
Facsimile:  212.940.8774

**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.3827
Facsimile:  212. 351.5254

*Attorneys for Defendant Veronica Bulgari*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ...........................................................................................................2

      I.      The Court Should Preserve the Corpus of the Trusts By Refusing to Allow Plaintiff to Litigate a Parallel Proceeding in this Court ....................................2

            A.      The Surrogate's Court Action Was Not Abandoned and It Is Progressing Expeditiously ...........................................................2

            B.      The Surrogate's Court Action Will Resolve All Issues Herein ..................5

            C.      The Colorado River Factors Counsel in Favor of Abstention ...................6

      II.      The Probate Exception to Diversity Jurisdiction Warrants Dismissal....................7

      III.      Plaintiff Has Not Adequately Pleaded Damages ......................................9

CONCLUSION.........................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*,
  762 F.2d 205 (2d Cir. 1985).............................................................................................7

*Durst v. Siegler*,
  No. 04-6981, 2005 WL 3358599 (S.D.N.Y. Dec. 7, 2005) ........................................7

*Garcia v. Tamir*,
  No. 99 Civ. 298, 1999 WL 587902 (S.D.N.Y. Aug. 4, 1999) ....................................2

*Genovese v. Genovese*,
  No. 1:15-CV-00064, 2016 WL 4945318 (W.D. Pa. Sept. 16, 2016)......................8, 9

*In re Scanlon Est.*,
  2 Misc. 2d 65 (N.Y. Sur. Ct. 1956)...........................................................................3

*Kopperl v. Bain*,
  No. 3:09-CV-1754 CSH, 2010 WL 3490980 (D. Conn. Aug. 30, 2010) ...............10

*Lama Holding Co. v. Smith Barney Inc.*,
  88 N.Y.2d 413, 668 N.E.2d 1370 (1996)................................................................10

*Lefkowitz v. The Bank of New York*,
  528 F.3d 102 (2d Cir. 2007)..................................................................................5, 8

*Lefkowitz v. The Bank of New York*,
  676 F. Supp. 2d 229 (S.D.N.Y. 2009)......................................................................6

*Marshall v. Marshall*,
  547 U.S. 293 (2006).................................................................................................7

*McKie v. Estate of Dickinson*,
  No. 20-CV-2973, 2021 WL 3292516 (E.D.N.Y. Aug. 2, 2021)...............................9

*Mercer v. Bank of New York Mellon, N.A.*,
  609 F. App'x 677 (2d Cir. 2015) .............................................................................8

*Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*,
  490 F.2d 509 (2d Cir. 1973)..................................................................................4, 7

*Yien-Koo King v. Wang*,
  No. 14 Civ. 7694, 2018 WL 1478044 (S.D.N.Y. Mar. 26, 2018) ...........................5

*Zaro Licensing, Inc. v. Cinmar, Inc.*,
  779 F. Supp. 276, 285 (S.D.N.Y. 1991).................................................................9

**Statutes**

Surr. Ct. Proc. Act § 2801......................................................................................4, 7

**Rules**

Fed. R. Civ. P. 12(b)(1) & (6)...................................................................................10

Defendant Veronica Bulgari by her attorneys, Katten Muchin Rosenman LLP and Gibson, Dunn & Crutcher LLP, respectfully submits this reply brief in further support of her motion to dismiss the complaint filed by Plaintiff Ilaria Bulgari on June 16, 2022 (the "Complaint") or otherwise stay this case pending resolution of a parallel case in Surrogate's Court.

## PRELIMINARY STATEMENT

Plaintiff's opposition papers make plain that this action is not about legal or equitable claims, but rather the unfortunate and meaningless bitterness of one sibling toward another. Plaintiff does not allege that defendant stole her money. It is undisputed that defendant never took any compensation for her service as trustee. There is no dispute that the $120 million corpus of the Trust was, under defendant's supervision, equally distributed to the three sisters, and that only a modest sum remains in the Trust for administrative expenses, which is being depleted through parallel litigation in federal and state court. There is no dispute that the original corpus of the Trusts grew at a dizzying rate thanks in substantial part to the acumen of the advisors Defendant retained to invest Trust money. Moreover, despite Plaintiff's dire predictions as to the speed of the Surrogate's Court Action, that Court has now issued citations over the judicial accountings and has set a return date of November 17, 2022 for any objections or motions. Plaintiff will undoubtedly object to the settlement of the Trusts and the release of Defendant from liability as trustee, rehashing the same arguments she presents here. The issuance of the citation moots the majority of Plaintiff's arguments against a stay.

This litigation achieves nothing other than running up legal bills and harassing Plaintiff's family, which seems to be her aim. Plaintiff's claims, as specious as they are, belong in Surrogate's Court - the forum in which Plaintiff first initiated her action and that has already asserted jurisdiction over the Trusts and the parties.

## ARGUMENT

**I.    The Court Should Preserve the Corpus of the Trusts By Refusing to Allow Plaintiff to Litigate a Parallel Proceeding in this Court**

The Surrogate's Court Action and the instant litigation are parallel because they are "comprised of the same essential issues." *Garcia v. Tamir*, No. 99 Civ. 298, 1999 WL 587902, at *3 (S.D.N.Y. Aug. 4, 1999). Plaintiff's Petition before New York County Surrogate's Court for full distribution of the Trusts' assets and her refusal to voluntarily settle the Trusts forced Defendant to prepare and file a full judicial accounting. The resolution of Plaintiff's Petition in Surrogate's Court and the resulting accounting will resolve all issues with respect to the Trusts, including whether there were any financial irregularities, whether records were properly kept, whether the Trusts were administered properly, and whether Defendant should be released from all liability. Surrogate's Court is the appropriate and least costly forum in which to hear Plaintiff's complaints, and the one she initially invoked. Plaintiff should be held to that decision.

Instead, Plaintiff argues that this Court should assert jurisdiction because: (1) Plaintiff's petition in Surrogate's Court has been abandoned; (2) the judicial accounting filed in response to Plaintiff's petition was not really filed; and, in the alternative, (3) the claims she has raised below are unrelated to the relief she seeks here. Plaintiff's arguments are meritless.

### A.    The Surrogate's Court Action Was Not Abandoned and It Is Progressing Expeditiously

The action Plaintiff filed in Surrogate's Court challenging Defendant's administration of the Trusts and calling for a full distribution has not been withdrawn, has progressed, and will resolve all issues that Plaintiff has brought in this case. As the Court is aware, in March 2021, Plaintiff initiated her action in Surrogate's Court requesting an immediate distribution of the assets of the Trusts, which in response necessitated a full judicial accounting. Plaintiff then filed an amended petition in November 2021; a citation issued shortly thereafter, and Defendant filed her

2

answer on March 10, 2022.  Plaintiff has not withdrawn this action and is still seeking the same relief.  Reply Declaration of Ronni Davidowitz, Esq. ¶ 2.

Plaintiff denies that she knew anything about the preparation of the judicial accounting in response to her Petition, but that is demonstrably false.  *See* Boies Decl., Dkt. No. 32 at ¶ 8 ("Plaintiff had not been advised that the preparation of such accountings and the filings of such accounting petitions was imminent.").  Not only did undersigned counsel advise Plaintiff's attorneys that a judicial accounting would be filed, Defendant made clear that a judicial accounting was underway as early as January 2022 in Defendant's answer to her Surrogate's Court Petition:

> As a consequence of Petitioner's ongoing conduct . . .  a reserve of $1 million is inadequate to protect the Trust and fund its remaining activities which include the ongoing preparation of the judicial-style formal accounts, subsequent proceedings for judicial settlement of the accounts, her share of an estimated $475,000 taxes due on the Trust for 2021, and substantial legal expenses that have been incurred and will continue to be incurred.

Answer to Petition, Surrogate's Court Action, ¶ 4.  Plaintiff states in her opposition to Defendant's motion to dismiss that she "was left with no choice but to bring this lawsuit," (Opp. at 7) but there was a choice – she could have waited to review the accounting that she knew was coming, and continued her action in the Surrogate's Court proceeding that she initiated.  Instead, she switched counsel who then decided to switch forums.  Plaintiff's current counsel may disapprove of prior counsel's decision to file her Petition in Surrogate's Court, but changing attorneys does not provide a litigant the right to change forums.

Plaintiff's claim that the Surrogate's Court Action and Defendant's judicial accountings were never filed and therefore are not parallel to this case is false.  Boies Decl. at ¶ 9.  First, "[e]very proceeding in Surrogate's Court is commenced by the filing of a petition" – not the issuance of a citation.  *In re Scanlon Est.*, 2 Misc. 2d 65, 69 (N.Y. Sur. Ct. 1956).  Plaintiff's citation to "Surr. Ct. Act. §§ 48, 52" (Opp. at 9) is highly misleading as that statute has not existed

since 1966 when it was repealed.  Surr. Ct. Proc. Act § 2801.  Regardless, a citation was issued for Plaintiff's Initial Petition and now for the judicial accounting necessitated by the Petition.  *See* Dkt. No. 24-2 (File No. 2021-3336); Davidowitz Decl., Ex. A (File No. 2021-3336 / A); *Id.* at Ex. B (File No. 2021-3336 / B).

Moreover, despite Plaintiff's assertions to the contrary, the Surrogate's Court Action is proceeding expeditiously.  Defendant filed the full judicial accounting on July 28, 2022, and a little more than a month later the accounting clerks had reviewed the 3,000 plus page filing.  *Id.* ¶ 5. That rapid review was no doubt due to the experience and "well-developed competence" of Surrogate's Court that the Second Circuit has recognized favors federal abstention.  *See Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509, 516 (2d Cir. 1973).  The accounting clerk overseeing the judicial accounting requested additional material in September pertaining chiefly to ensuring that the minor beneficiaries' interests were properly represented.  Davidowitz Decl. ¶ 5.  Then, on October 11, 2022, the Surrogate issued citations for the judicial accounting of the two Trusts, establishing jurisdiction over the relevant parties who were not already under the jurisdiction of that court.  *See* Davidowitz Decl., Exhibits A and B.  The parties must now submit objections, if any, and appear in Surrogate's Court on November 17, 2022.  *Id.*

Notably, Plaintiff has not proffered that she will not simply raise the same issues in the Surrogate's Court Action that she has here, because she will and had already begun to with her original petition.  *See* Petition, Surrogate's Court Action ¶¶ 4, 9, 12-13 (repeating the claims in this federal litigation that Defendant held the assets of the trust "hostage", that Defendant tried to force Plaintiff to release her from liability, and complaining that Defendant harmed Plaintiff by not distributing the assets of the trusts).  On November 17, 2022, Plaintiff will undoubtedly object to the accounting, seek discovery, engage in motion practice, and, if she continues her irrational

depletion of the remaining assets of the Trusts, demand a trial in Surrogate's Court where she will attempt to recover damages and attorney's fees from Defendant.[1]  Maintaining parallel actions will only achieve Plaintiff's goal of harassing her family and depleting the remaining assets of the Trusts.

**B.      The Surrogate's Court Action Will Resolve All Issues Herein**

Plaintiff argues that while the proceedings in Surrogate's Court may resolve all issues as to administration of the Trusts, the cases are not parallel because this federal action seeks to "hold Defendant personally liable for her breaches and negligence."  Opp. at 11.  However, all of the claims in the instant action concern Defendant's administration of the Trusts – an issue squarely before Surrogate's Court where Plaintiff will raise the same claims.  Specifically, Plaintiff argues that unlike the Surrogate's Court Action, this case will address Defendant's failure to make distributions; refusal to provide information about the Trusts; failure to preserve records; and overall "refusing to perform duties she was required to take as a trustee."  Opp. at 2.  Each and every one of these issues concern whether Defendant properly administered the Trusts – an issue that must be decided to settle the Trusts in Surrogate's Court and release Defendant, the trustee, from liability.  Courts have long rejected litigants' efforts to "mask in claims for federal relief [] complaints about the maladministration of [an] estate[]."  *Lefkowitz v. The Bank of New York*, 528 F.3d 102, 107 (2d Cir. 2007).

Plaintiff is truly grasping at straws by relying on *Yien-Koo King v. Wang*, No. 14 Civ. 7694, 2018 WL 1478044 (S.D.N.Y. Mar. 26, 2018) to support her position that abstention is not warranted.  Opp. at 11-12.  *Yien-Koo King* involved a RICO enterprise in which the participants allegedly stole 160 paintings, moved a dying father out of the reach of his children, and engaged

---

[1] Unlike federal court, in Surrogate's Court a party may equitably petition for the recovery of attorney's fees.

in art sales to strawmen.  Here, Plaintiff has not alleged that Defendant inappropriately took one dollar from the Trusts.  The only issue in this case is whether the Trusts were properly distributed and administered, which is the subject of the Surrogate's Court Action.

### C.   The Colorado River Factors Counsel in Favor of Abstention

Plaintiff argues that even if the Surrogate's Court Action is a parallel proceeding, "all of the factors that courts in the Second Circuit must consider in determining whether an exception to federal jurisdiction is applicable weigh *against* abstention."  Opp. 13.  Plaintiff's arguments are absurd.

Among the reasons Plaintiff provides in support of her argument that this Court should retain jurisdiction is her incredible assertion that "the Surrogate's Court has not yet assumed jurisdiction over Plaintiff's petition for a distribution . . . ."  Opp. 14.  This makes no sense. Plaintiff invoked the jurisdiction of Surrogate's Court by filing her Petition in a case in which the parties have appeared.  Plaintiff then amended her complaint, the Surrogate set a schedule for a response, Defendant submitted an answer, a judicial accounting was filed, the accounting clerks reviewed the 3,000 plus pages of financial records and analysis, and citations have issued for the judicial accountings with a return date of November 17, 2022.  It is hard to imagine how the Surrogate could further "assume jurisdiction."

Plaintiff also contends that it would not be inconvenient to litigate at the same time in both courts because they are in the same state.  Opp. at 2, 14, 18.  This factor, however, is not a geography test determined by the distance between two courts, but an assessment of the inefficiency and costliness to the parties of maintaining two actions.   "[T]here is plainly inconvenience in having to litigate actively in both state and federal courts at the same time." *Lefkowitz v. The Bank of New York*, 676 F. Supp. 2d 229, 275 (S.D.N.Y. 2009).  Parallel litigation would also be an extreme waste of judicial time and resources.  Plaintiff then goes on to claim that

the proceeding in Surrogate's Court will not "*necessarily* adjudicate the issues raised here."  Opp. at 14.  That is flatly wrong.  The Surrogate's Court Action will determine if the Trusts were administered properly, whether there were any financial irregularities, and whether Defendant should be released from all liability. As a result, there is not only a danger of inconsistent rulings, but diametrically opposite rulings.

Plaintiff saves her most absurd argument for last:  alleging that the fact that this case will turn on New York State trust law favors this Court retaining jurisdiction.  That is not the standard. This case "relate[s] principally to state law issues (i.e. trusts and estate laws), which the Surrogate's Court is better equipped to adjudicate."  *Durst v. Siegler*, No. 04-6981, 2005 WL 3358599, at *9 (S.D.N.Y. Dec. 7, 2005); *see also Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509, 516 (2d Cir. 1973) (noting that "states have an especially strong interest and a well-developed competence for dealing with [trusts]") (internal quotations omitted); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985) (holding that actions that solely present issues of state law "tips the scale toward" abstention).  Indeed, in briefing this very motion, the parties cite to numerous state trusts and estate cases; multiple provisions of the Surrogate's Court Procedure Act; multiple sections of New York Estates, Powers, and Trusts Law; and Plaintiff has cited two repealed sections of the Surrogate's Court Act.  Since Surrogate's Court is best positioned to adjudicate issues of state trusts and estate law, this Court should dismiss this action.

## II.    The Probate Exception to Diversity Jurisdiction Warrants Dismissal

Not only should the Court use its discretion in refraining from exercising diversity jurisdiction over this litigation, but the probate exception to diversity jurisdiction demands dismissal.  *See Marshall v. Marshall*, 547 U.S. 293, 296 (2006) ("[W]hen one court is exercising

*in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*.").  Plaintiff's argument that an *in personam* federal action that seeks damages from a trustee falls outside the probate exception has been routinely rejected by courts.

As the Second Circuit has held, a plaintiff cannot avoid the probate exception by simply repackaging her *in rem* or *quasi in rem* claims under the guise of an *in personam* cause of action. *Lefkowitz*, 528 F.3d at 107 (holding that a Plaintiff cannot "mask in claims for federal relief her complaints about the maladministration of [an] estate[]."). Rather, the key inquiry is whether resolution of the *in personam* claims would require the court to interfere with the control of a *res* in the custody of the state probate court. *Mercer v. Bank of New York Mellon, N.A.*, 609 F. App'x 677, 679 (2d Cir. 2015) ("Although Plaintiffs have styled their claims in this case as 'in personam' claims against Defendants for breach of fiduciary duty, breach of contract, and breach of the duty of loyalty, we must examine the substance of the relief that Plaintiffs are seeking, and not the labels they have used."). Plaintiff does not even address *Mercer* in her opposition.

Counsel's statement that "Plaintiff does not ask this Court to . . . take action with respect to the Trusts" is simply false. Opp. at 20. Most directly, the Complaint demands a declaratory judgment that Defendant "is not entitled to reimbursement" from the Trusts for defending against the Complaint, which specifically requires the Court to determine what expenses should or should not be paid by the Trusts. Compl. at 25. Moreover, any decision made by this Court as to whether the Trusts were properly administered will undoubtedly "interfer[e] with the state court's jurisdiction over the trust" that will be making the same determinations including whether to release Defendant from liability. *Genovese v. Genovese,* No. 1:15-CV-00064, 2016 WL 4945318, at *5 (W.D. Pa. Sept. 16, 2016).

To that end, *Genovese*, *supra*, is directly on point.  In *Genovese*, the plaintiff filed a complaint against her grandfather, who was the trustee of a trust created by plaintiff's late father for her and her brother's benefit, alleging that the grandfather breached his fiduciary duties by splitting it into sub-trusts and coercing plaintiff to sign a waiver of her rights to challenge the trustee's actions – mirroring the same allegations Plaintiff brings here.  As a result, the plaintiff in *Genovese* sought to hold her grandfather personally liable for damages caused by breach of his fiduciary duties.  The Court dismissed the action, noting that the trusts were subject to a judicial accounting and holding that it could not "adjudicate the[] claims without interfering with the state court's jurisdiction over the trust."  2016 WL 4945318, at \*5; *see also McKie v. Estate of Dickinson*, No. 20-CV-2973, 2021 WL 3292516, at \*9 (E.D.N.Y. Aug. 2, 2021) (dismissing federal fiduciary duty claims because they would "undermine official actions taken by the Surrogate's Court . . . [and were] based on plaintiff's theory that defendants, in substance, mishandled estate assets by not distributing the assets to plaintiff.").  Plaintiff's claim that she is not "ask[ing] the Court to take any affirmative action with respect to the Trusts" (Opp. at 21) evidences a fundamental misapprehension of what determinations Surrogate's Court will be making and ignores the relief sought in her own Complaint.

## III.    Plaintiff Has Not Adequately Pleaded Damages

Despite now having had multiple opportunities to plead damages with some semblance of specificity, Plaintiff continues to wrongly assume that she can simply "in good faith" continue to recite the jurisdictional amount to attempt to satisfy her burden.  Opp. at 22.  This fails to meet the pleading standard required to invoke this Court's diversity jurisdiction.  *Zaro Licensing, Inc. v. Cinmar*, Inc., 779 F. Supp. 276, 285 (S.D.N.Y. 1991) (dismissing counterclaim where party "fail[ed] to plead how or what damages were sustained by them as a specific result of" the alleged fraudulent conduct).

In her opposition, Plaintiff states seven different times that her damages are "quantifiable," and yet still never quantifies them.  For example, Plaintiff requests damages for the cost she incurred in hiring forensic accountants, which is easily calculable, and yet she has never provided even a rough estimate of these costs in her complaint, initial disclosures, or opposition motion. Plaintiff also seems to want lost opportunity costs for Defendant's alleged failure to make disbursements.  Opp. at 2.  Putting aside that Plaintiff has neither quantified nor explained the factual basis for her alleged "harm" (likely because she cannot as Defendant's administration of the Trusts has made her a very rich woman), it ignores that this is not a proper basis for recovery in the first place.  *See Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421, 668 N.E.2d 1370, 1373 (1996) ("Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained . . . there can be no recovery of profits which would have been realized in the absence of fraud.").

Put simply, Plaintiff has not cited any authority supporting the proposition that she can merely allude to unquantified damages and satisfy her pleading burden.  Rather, she is required to make "factual, non-conclusory allegations stating a plausible claim that defendant's conduct caused specific economic harm in a quantifiable amount."  *Kopperl v. Bain*, No. 3:09-CV-1754 CSH, 2010 WL 3490980, at *4 (D. Conn. Aug. 30, 2010).  She has failed to do so and the complaint should be dismissed.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that the Court dismiss the Complaint with prejudice under Fed. R. Civ. P. 12(b)(1) & (6) or, in the alternative, stay the proceedings pending resolution of the parallel proceedings ongoing in New York County Surrogate's Court.

**KATTEN MUCHIN ROSENMAN LLP**

Dated:    October 13, 2022
              New York, New York

By:   */s/ Michael M. Rosensaft*
              Michael M. Rosensaft
              Jake A. Nussbaum

              50 Rockefeller Plaza
              New York, NY 10020-1605
              T: (212) 940-8800
              F: (212) 940-8776
              michael.rosensaft@katten.com
              jake.nussbaum@katten.com


**GIBSON, DUNN & CRUTCHER LLP**


By: */s/ Mitchell A. Karlan*
              Mitchell A. Karlan
              Jennifer K. Bracht

              200 Park Avenue
              New York, NY 10166-0193
              T: (212) 351-3827
              F:  (212) 351-5254
              mkarlan@gibsondunn.com
              jbracht@gibsondunn.com

              *Attorneys for Defendant Veronica
              Bulgari*