UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                              :

ILARIA BULGARI,                       :

                         :

                Plaintiff,   :       22 Civ. 5072

                         :

        -against-         :     **OPINION AND ORDER**

                         :

VERONICA BULGARI,            :

                         :

             Defendant.  :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Ilaria Bulgari brings this action against Defendant Veronica Bulgari alleging

breach of fiduciary duty and negligence.  Defendant moves to dismiss the Complaint under

Federal Rules of Civil Procedure 12(b)(1) and (6), or to otherwise stay this case pending

resolution of an action before the New York County Surrogate's Court.  For the reasons below,

the motion is denied.

I.      **BACKGROUND**

      The following facts are taken from the Complaint and documents it incorporates by

reference.  *See Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021).  For purposes of resolving the

jurisdictional issues, this opinion also relies on exhibits attached to the parties' memoranda of law.

*See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986); *accord Rai v. Rai*, No. 21

Civ. 11145, 2023 WL 2456831, at *2 (S.D.N.Y. Mar. 10, 2023).  Facts taken from the Complaint

are assumed to be true for purposes of this motion and are construed in the light most favorable to

Plaintiff as the non-moving party.  *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53

(2d Cir. 2022).

### A.  History of the Trusts

On June 1, 2005, Nicola Bulgari formed an irrevocable trust ("Trust #1") for the benefit of his wife, Anna Bulgari, and their three daughters Plaintiff Ilaria, Defendant Veronica and non-party Natalia Bulgari.  On October 6, 2005, Nicola formed a second trust ("Trust #2") also for the benefit of his wife and three daughters.  Anna was the sole trustee of both trusts until May 28, 2015, when she appointed Defendant as a co-trustee of Trust #1.  Anna passed away on October 22, 2019.  Defendant became the sole trustee of both trusts.

On February 10, 2020, Plaintiff learned for the first time that Trust #1 and Trust #2 existed, that Defendant was trustee of both trusts and that Plaintiff and her sisters were each entitled to one third of Trust #1 and Trust #2 upon Anna's passing.  Pursuant to the terms of the Trust #1 agreement, three new trusts were to be created, one for each of Anna's three daughters, to be governed by the terms of the Trust #1 agreement and to be funded in equal parts by the principal and income remaining in Trust #1 at the time of her death.

### B.  Management of Trust #1

On February 14, 2020, Plaintiff was told to decant one third of the principal and income of Trust #1 into a new trust, referred to as the "Newco" trust.  Plaintiff was told the new structure served tax purposes and that she would be provided with decanting documents shortly.

On March 13, 2020, Plaintiff asked Defendant for documents related to Trust #1.  Defendant failed to produce the requested documents, responding that Trust #1 would be divided into three new trusts and that she was not sure what documents Plaintiff wanted.  Plaintiff continued to request copies of Trust #1's account statements.

On April 10, 2020, Plaintiff received the proposed Newco agreement.  The agreement differed substantively from the would-be continuing trust.  For example, the Newco trust

provided that one third of whatever remained in Plaintiff's trust after her death would go to Nicola's heirs.  The continuing trust, on the other hand, gave Plaintiff the sole power to give any or all of Trust #1 to any recipient other than her estate or creditors.

For the next six months, Defendant declined to produce monthly account statements and other trust information that Plaintiff requested.  Defendant "made clear that these documents would not be circulated at any time before the trust is divided into three parts."  On July 21, 2020, defense counsel produced summary data for Trust #1's investments from October 22, 2019, through July 20, 2020.  On August 11, 2020, Plaintiff's attorney reiterated his demand for the monthly account statements, not just the summary data.  Defense counsel did not produce the statements.

By the end of August 2020, the documents still had not been produced.  Plaintiff decided not to accept the decanting of her share of Trust #1 into the Newco trust.  In response, Defendant proposed the separation of Trust #1 into three new trusts that did not alter the terms of the Trust #1 agreement.  On September 11, 2020, Plaintiff's lawyer again asked for the statements.  On September 15, 2020, defense counsel responded that Defendant was on holiday and would respond after she returned.

In October 2020, Plaintiff determined that, unless she planned to engage in costly and time-consuming litigation, she had no option but to agree to Defendant's demand.  Plaintiff accepted a distribution of Trust #1 into a new trust on the condition that Defendant produce information about the trust's history of investments and holdings.  On October 8, October 12 and October 15, 2020, trustees were appointed for the three new trusts created under the Trust #1 agreement for the benefit of Defendant, Plaintiff and Natalia, respectively, with each trust to be

funded by the principal and income of Trust #1.  On October 21, 2020, Defendant merged Trust #2 into Trust #1, leaving only Trust #1 from which distributions could be made.

As of October 29, 2020, Defendant had made no distributions from Trust #1 to the continuing trust for Plaintiff's benefit (the "Ilaria Trust").  On November 2, 2020, Plaintiff's attorney advised defense counsel that Plaintiff would take legal action if Defendant did not make a substantial distribution within forty-eight hours.  On November 7 and 8, 2020, Defendant distributed cash and securities of approximately $20 million to the Ilaria Trust.

On December 3, 2020, Defendant began producing Trust #1's Morgan Stanley account statements.  Defense counsel also sent Plaintiff's counsel a proposed agreement for both Trust #1 and Trust #2 that would have, among other things, released Defendant from any liability arising from her role as trustee of either trust.  On December 16, 2020, Plaintiff turned down the proposed agreement and demanded that Defendant distribute the remainder of the funds in Trust #1, except for a $4.3 million reserve.

Defendant produced Morgan Stanley account statements from 2005 through February 2021 and certain tax returns for Trust #1.  Defendant, however, did not provide any analysis of those statements, analysis of Trust #1's prior investments or a description of how Trust #1's assets had been managed and distributed.  Plaintiff, at her own expense, retained lawyers and forensic analysts to review and analyze the statements.  That review revealed irregularities in the statements.  For several months, Plaintiff asked Defendant to investigate the issues Plaintiff's examiners had identified.  Defendant took no action.  Plaintiff also asked for permission to speak directly to Morgan Stanley.  Defendant declined.

On November 18, 2021, Plaintiff, through counsel, sent Morgan Stanley the same list of irregularities.  The bank agreed to investigate, but due to confidentiality obligations to its client,

it could only share the results with Trust #1's trustee, Defendant.  According to defense counsel, the issues stemmed from prior incomplete account statements.  Morgan Stanley reproduced the statements from 2005 through May 2013.  Defense counsel forwarded the statements to Plaintiff's counsel without an assessment of the new statements or an explanation of whether the statements addressed the irregularities previously identified.  Plaintiff again paid counsel and forensic analysts to review the materials at her own expense.  That review raised additional questions about the statements.  On April 20, 2022, defense counsel forwarded information received, purportedly, from Morgan Stanley with respect to the irregularities.  Defendant at no point conducted any investigation or review of the Morgan Stanley account documents.

During this time, Defendant also produced certain tax returns for Trust #1.  As with the Morgan Stanley account statements, Plaintiff retained lawyers and forensic analysts at her own expense to review those returns.  Their review identified a number of issues.  On April 27, 2021, and on November 5 and 18, 2021, Plaintiff sought a full explanation and investigation of the tax returns.  Defendant did not respond.  On March 21, 2022, Plaintiff raised the tax return issues again.  This time, Defendant responded that Trust #1 had previously held investment accounts but had not maintained those account records, that attempts to obtain the records had been unsuccessful and that she had no records reflecting transactions concerning those investments other than what was in the Morgan Stanley statements.  On March 24, 2022, Defendant provided certain 1099 gain/loss reports for the years 2009 through 2020, but she did not provide all of the schedules Plaintiff requested, explain what analysis she had done of the schedules she had received or explain what efforts she had taken to locate the schedules she did not produce.  Defendant did not conduct any investigation with respect to Trust #1's capital gains and loss

schedules other than forwarding the incomplete documents she had received from a tax preparation firm.

### C. Management of Trust #2

Trust #2 was funded, at least in part, with shares of a company that owned, at least in part, one parcel of real estate.  According to Defendant, that property was transferred from Trust #2 to 1935 Holding LLC.  The property title, however, reflects that the property is in fact registered in the name of Verda Company, N.V., a company that was purportedly dissolved. Defendant did not take the steps necessary to preserve the record of either Verda's or 1935 Holding LLC's ownership interest in the property.

### D. State Proceedings

On March 11, 2021, Plaintiff filed a petition in the New York County Surrogate's Court seeking a full distribution of Trust #1 to the three daughters, except a reserve to pay outstanding debts and administrative fees (the "Surrogate's Court Action").  On January 27, 2022, Defendant filed an answer explaining that the bulk of the assets in Trust #1 had already been distributed, but that a $3 million reserve was needed to pay future taxes, accounting and legal fees, and other administrative costs.  On June 15, 2022, Defendant transferred $5 million of assets to Plaintiff's new trust.

In response to the Surrogate's Court Action, Defendant filed petitions and formal judicial accountings in Surrogate's Court on July 28, 2022, for Trust #1 and Trust #2.  The judicial accountings span more than 3,000 pages.  On October 11, 2022, the Surrogate's Court issued citations for each of the judicial accounting proceedings, notifying interested parties that the proceedings had begun.  The proceedings will examine all of the financial transactions of Trust

#1 and Trust #2, the entirety of Defendant's conduct as trustee and the proper distribution of assets.

## II.    LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists.  *Id.*  In reviewing a Rule 12(b)(1) motion to dismiss, the court "must accept as true all material factual allegations in the complaint, but [may] not [ ] draw inferences from the complaint favorable to plaintiff[ ]." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).  Further, in resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may consider "evidentiary matter . . . presented by affidavit or otherwise." *Kamen*, 791 F.2d at 1011.

On a motion to dismiss under Rule 12(b)(6), a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted).  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ] [plaintiff's] claims across the line from conceivable

to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Estate of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). To survive dismissal, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).

New York law governs this dispute because the parties' submissions assume that it does. *See Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017) (where the parties' briefs assume that a particular state law controls, "such implied consent is . . . sufficient to establish the applicable choice of law" (internal quotation marks omitted)).

## III.   DISCUSSION

Defendant moves to dismiss the Complaint under alternative theories: (1) *Colorado River* abstention, *see Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), (2) forum non conveniens, (3) the probate exception to federal jurisdiction or (4) failure to plead damages adequately. In the alternative, Defendant requests that the case be stayed pending resolution of the Surrogate's Court Action. Plaintiff objects to dismissal and any stay of the case.

### A.  Colorado River Abstention

"[A] federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in comprehensive disposition of litigation and abstention would conserve judicial resources." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colorado River*, 424 U.S. at 817) (internal quotation marks omitted); *accord Tuebor Reit Sub LLC v. Paul*, No. 19 Civ. 8540, 2020 WL 4897137, at *5 (S.D.N.Y. Aug. 19, 2020). "Suits are parallel when substantially the same parties

are contemporaneously litigating substantially the same issue in another forum." *Niagara Mohawk*, 673 F.3d at 100 (internal quotation marks omitted); *accord Smulley v. Mut. of Omaha Bank*, 634 F. App'x 335, 337 (2d Cir. 2016) (summary order). "Merely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit." *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362 (2d Cir. 1985); *accord Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289, 296 (S.D.N.Y. 2017). It does not require an "exact identity of parties . . . when the interests of the parties in each case are congruent." *Phillips*, 252 F. Supp. 3d at 298.

Even where federal and state proceedings are parallel, however, *Colorado River* abstention is warranted only in "exceptional circumstances." *Colorado River*, 424 U.S. at 813. "The mere fact of concurrent state and federal proceedings 'does not, without more, warrant staying exercise of federal jurisdiction.'" *All. of Am. Insurers v. Cuomo*, 854 F.2d 591, 602 (2d Cir. 1988); *accord Franck v. N.Y. Health Care Inc.*, No. 21 Civ. 4955, 2023 WL 2474559, at *10 (S.D.N.Y. Mar. 11, 2023). Federal courts "have a virtually unflagging obligation to exercise their jurisdiction." *Niagara Mohawk*, 673 F.3d at 100. Abstention "is the exception, not the rule." *Id.* (quoting *Colorado River*, 424 U.S. at 813).

When there is a parallel state proceeding, federal district courts consider the following six factors to determine whether *Colorado River* abstention is appropriate: (1) assumption of jurisdiction over a *res*; (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) the order in which the actions were filed; (5) the law that provides the rule of decision and (6) protection of the plaintiff's federal rights. *Niagara Mohawk*, 673 F.3d at 100-01; *accord Tuebor Reit Sub LLC*, 2020 WL 4897137, at *5. None of these factors alone "is necessarily determinative." *Mochary v. Bergstein*, 42 F.4th 80, 85 (2d Cir. 2022) (citing *Colorado River*, 424

U.S. at 818-19).  "Rather, a carefully considered judgment accounting for both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Id.* (internal quotation marks omitted).  "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."  *Id.* (alteration in original) (internal quotation marks omitted).  "Only the clearest of justifications will warrant dismissal."  *Id.* (internal quotation marks omitted).  "When a Court chooses to abstain pursuant to *Colorado River*, it may elect to stay actions for damages or dismiss actions seeking equitable or otherwise discretionary relief."  *Tuebor Reit Sub LLC*, 2020 WL 4897137, at *7 (internal quotation marks omitted).

     *Colorado River* abstention is inappropriate here because the state court action is not "parallel."  *See Niagara Mohawk*, 673 F.3d at 100-01.  "[P]arallelism is 'a necessary prerequisite to abstention under *Colorado River*'" and requires a "a threshold determination" by the Court before reaching the abstention factors.  *Mochary*, 42 F.4th at 85-86 (2d Cir. 2022).

     The federal and state actions are not parallel because the issues and relief sought are distinct.  The state action is a petition to compel a distribution of funds from Trust #1, which has only a tangential relation with the alleged misconduct in this case.  *See Mochary*, 42 F.4th at 86 ("Mere commonality in subject matter does not render actions parallel." (internal quotation marks omitted)).  Here, Plaintiff seeks damages from Defendant personally for breach of fiduciary duty and negligence; she does not seek to compel any distribution from Trust #1.  *See, e.g.*, *Gardner v. Weisman*, No. 6 Civ. 6003, 2007 WL 30068, at *3 (S.D.N.Y. Jan. 3, 2007) ("[T]he proceeding before this Court is not parallel to the Surrogate's Court action because different issues are involved . . . Unlike the claims before the Surrogate's Court, the Petition here

alleges breach of contract and breach of fiduciary duty."); *Kshel Realty Corp. v. City of New York*, No. 1 Civ. 9039, 2003 WL 21146650, at *5-6 (S.D.N.Y. May 16, 2003) (finding proceedings non-parallel where the federal action involved certain claims that were absent from the state action). Nor would the state action necessarily moot the federal proceeding. *See Mochary*, 42 F.4th at 86. While the judicial accountings filed in Surrogate's Court resolve whether the Trust assets were properly administered, there is no reason to believe that the state court will necessarily, or even likely, adjudicate Plaintiff's tort claims.

Defendant argues that the specific claims brought by a plaintiff are not determinative as to whether the actions are parallel, citing *Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289 (S.D.N.Y. 2017). In *Phillips*, even though the action was brought *in personam* against the trustee in the federal case, the district court abstained from exercising jurisdiction in deference to pending litigation in Surrogate's Court where the defendant had already initiated an accounting. *Id.* at 303-04. Defendant's argument is unpersuasive, as *Phillips* is distinguishable. There, unlike here, the plaintiffs raised claims for breach of fiduciary duty in the prior accounting action and then sought an accounting in their later-filed federal court action. *Id.* at 295-96. The plaintiffs also raised the same breach claims in their federal action that they had already put at issue in the Surrogate's Court accounting. *Id.* Here, by contrast, there is no overlap in the relief sought by Plaintiff in the two actions. While this case will require a review of the brokerage statements, it will not require the review of every investment decision that will be conducted in a Surrogate's Court accounting. This case will require analysis only of the obvious inconsistencies and irregularities noted in the Complaint and a determination as to whether Defendant breached her fiduciary duties and was negligent in failing to investigate those issues. As the Surrogate's Court Action differs materially from this matter, the actions are not parallel.

11

Even if the two cases were parallel, an evaluation of the *Colorado River* six-factor test does not weigh in favor of abstention. *See Niagara Mohawk*, 673 F.3d at 101 ("Where a *Colorado River* factor is facially neutral, that 'is a basis for retaining jurisdiction, not for yielding it.'"). The first factor weighs against abstention. The federal suit does not implicate the *res* at issue in the Surrogate's Court Action. *See Zeppelin Sys. USA, Inc. v. Pyrolyx USA Indiana, LLC*, No. 19 Civ. 11222, 2020 WL 1082774, at *6 (S.D.N.Y. Mar. 5, 2020) ("Even though the claims here remain inextricably linked with the issues of b[r]each-of-contract pending before the Indiana Court, the damages requested do not independently implicate a *res* and none of the causes of action before this court is a proceeding *in rem* . . . [N]o judgment of this Court on either [of plaintiff's] claims for damages or injunctive relief will affect the state court's ability to dispose of the *res*."); *Yien-Koo King v. Wang*, No. 14 Civ. 7694, 2018 WL 1478044, at *9 (S.D.N.Y. Mar. 26, 2018).

The second factor weighs against abstention. The federal court is just as convenient as the state court. *See Yien-Koo King*, 2018 WL 1478044, at *9 ("[T]he federal court is no more inconvenient than Surrogate's Court; both courts are located in Manhattan and are about four city blocks from each other."); *Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) ("[W]here the federal court is 'just as convenient' as the state court, that factor favors retention of the case in federal court."); *accord Franck*, 2023 WL 2474559, at *11.

The third factor -- avoidance of piecemeal litigation -- also weighs against abstention. As discussed above, the issues before the Surrogate's Court are not the same as Plaintiff's claims here. The accountings resolve whether the Trust's assets were properly administered, not whether Defendant is personally liable for the misconduct alleged.

The fourth factor -- the order in which the actions were filed -- weighs against abstention. Although Plaintiff commenced the Surrogate's Court Action in March 2021, over a year before she commenced this action, the adjudication of her tort claims is advanced in this action and was not raised in the state court action.  The parties in this case have engaged in substantial fact discovery, which is almost completed.  *See Ironshore Specialty Ins. Co. v. Maxon Indus. Inc.*, No. 20 Civ. 1290, 2020 WL 6263742, at *3 (S.D.N.Y. Oct. 22, 2020).

The fifth and six factors -- applicable law and the protection of plaintiff's federal rights -- are neutral, or slightly favor abstention.  Plaintiff's claims are exclusively common law claims under state law.  "[A]lthough the presence of federal issues strongly advises exercising federal jurisdiction, the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." *Village of Westfield*, 170 F.3d at 124; *accord Imbedded Artists Inc. v. Kinchen*, No. 20 Civ. 3535, 2022 WL 356429, at *5 (E.D.N.Y. Feb. 7, 2022); *see also Giardina v. Fontana*, 733 F.2d 1047, 1053 (2d Cir. 1984) ("[O]nly in some rare circumstances may the presence of state-law issues weigh in favor of surrender of federal jurisdiction" (cleaned up)); *accord Zeppelin Sys.*, 2020 WL 1082774, at *8.  New York law is the only substantive law to be applied in this action, but the issues presented are neither novel nor particularly complex.

Because the proceedings are not parallel, and because the case does not present the "clearest of justifications" to warrant dismissal, *see Mochary*, 42 F.4th at 86, Defendant's motion to dismiss on *Colorado River* abstention grounds is denied.

## B.  Forum Non Conveniens

"The grant or denial of a motion to dismiss for *forum non conveniens* is generally committed to the district court's discretion." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88,

99 (2d Cir. 2000); *accord Stewart v. Manhattan Yacht Club, Inc.*, No. 16 Civ. 9764, 2018 WL 3579849, at *2 (S.D.N.Y. July 25, 2018).  Whether dismissal is appropriate is based on a three-part test: "(1) the deference to be accorded the plaintiff's choice of forum; (2) the adequacy of the alternative forum proposed by the defendants; and (3) the balance between the private and public interests implicated in the choice of forum."  *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019); *see Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (en banc).  The movant -- here, Defendant -- carries the burden of proof.  *See Wiwa*, 226 F.3d at 100; *accord Little v. XL Ins. Co. SE*, No. 18 Civ. 11919, 2019 WL 6119118, at *5 (S.D.N.Y. Nov. 18, 2019).

The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having controversies decided at home; (3) the interest in having a trial in a forum that is familiar with the law governing the action; (4) the avoidance of unnecessary problems in conflict of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty."  *Glob. Gaming Philippines, LLC v. Razon*, No. 21 Civ. 2655, 2022 WL 836716, at *9 (S.D.N.Y. Mar. 21, 2022) (citing *Iragorri*, 274 F.3d at 73-74).

Dismissal based on forum non conveniens is denied.  Although Defendant argues that the Surrogate's Court is better suited to handle this action, Plaintiff's choice of forum is accorded deference.  Only if Defendant shows that her alternative forum is adequate and that the balance of public and private factors substantially weighs towards the alternative forum will Plaintiff's choice be disrupted.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981); *accord Hyundai*

*Merch. Marine Co. v. Mitsubishi Heavy Indus., Ltd.*, No. 14 Civ. 7965, 2015 WL 7758876, at \*2 (S.D.N.Y. Dec. 1, 2015).

Here, the balance of private and public interests is neutral. As to the private interest factors, little differentiates the two forums. Both courts are located in Manhattan, New York, and although Defendant argues that the Surrogate's Court is "experienced in adjudicating issues of state trust law," federal courts are too. *Beach v. Rome Tr. Co.*, 269 F.2d 367, 374 (2d Cir. 1959). Nor is dismissal of this case required by local interests, conflicts of law or unfairness to the citizens of an unrelated forum. In either court, Plaintiff's claims will be decided under New York law, in New York, and likely by a New York jury. Any interests that weigh in favor of dismissal do not outweigh the deference accorded Plaintiff's choice of forum. Accordingly, the motion to dismiss based on forum non conveniens is denied.

### C. Probate Exception to Federal Jurisdiction

"The 'probate exception' is an historical aspect of federal jurisdiction that holds 'probate matters' are excepted from the scope of federal diversity jurisdiction." *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 105 (2d Cir. 2007); *see Mercer v. Bank of New York Mellon, N.A.*, 609 F. App'x 677, 678 (2d Cir. 2015) (summary order) ("This general principle applies equally when, as in this case, the *res* in question is not property of an estate but property of a trust."). A federal court lacks subject matter jurisdiction under the probate exception only if a plaintiff seeks to: (1) administer an estate, probate a will, or accomplish any other purely probate matter; or (2) reach a *res* in the custody of a state court; the probate exception does not "bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Lefkowitz*, 528 F.3d at 105-06 (citing *Marshall v. Marshall*, 547 U.S 293, 312 (2006)). A court assessing whether a plaintiff attempts to reach a *res* controlled by a state court "must examine

the substance of the relief that [the plaintiff is] seeking, and not the labels they have used."
*Mercer*, 609 F. App'x at 679 (citing *Lefkowitz*, 528 F.3d at 107).

As explained above, Plaintiff seeks damages from Defendant personally for breach of
fiduciary duty and negligence, rather than assets or distributions from either trust.  Plaintiff also
seeks equitable relief in the form of a declaratory judgment that Defendant is not entitled to
reimbursement from Trust #1 of expenses she incurred defending this action.  Neither remedy
would require the Court to exercise control over the trusts in a way that would interfere with the
Surrogate's Court's control over them.  *See Marshall*, 547 U.S. at 296 ("[W]hen one court is
exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over
the same *res*.").  The Court can exercise "its jurisdiction to adjudicate rights in [property in the
custody of a state court] where the final judgment does not undertake to interfere with the state
court's possession save to the extent that the state court is bound by the judgment to recognize
the right adjudicated by the federal court."  *Lefkowitz*, 528 F.3d at 108 (alteration in original)
(internal quotation marks omitted).  The probate exception cannot be "used to dismiss 'widely
recognized tort[s]' such as breach of fiduciary duty or fraudulent misrepresentation merely
because the issues intertwine with claims proceeding in state court."  *Id.*  As Plaintiff does not
ask this Court to make any distribution from the trusts or to take an affirmative action with
respect to the trusts, the probate exception to federal jurisdiction does not apply.

Defendant argues that resolving Plaintiff's claims here would necessarily implicate the
*res* that is already under the jurisdiction of the Surrogate's Court.  In particular, Defendant
suggests the cure to certain alleged wrongdoings would be (1) a direct restoration of funds by
Morgan Stanley to the *res* and (2) for Defendant to produce various records or to register the
record title for the property associated with Trust #2, thus "dict[ating] administration of the trust

*res*." The argument is unavailing as it mischaracterizes the relief sought by Plaintiff.  Plaintiff

does not seek a payment from Morgan Stanley to Trust #1, but rather compensation, from

Defendant, for the expenses she incurred taking on the investigation of the Morgan Stanley

statements that Defendant should have conducted.  Likewise, if Defendant is found liable for

delaying the distribution of assets from Trust #1 or for failing to preserve trust records she was

obligated to maintain, the remedy would take the form of payment, from Defendant, for the harm

caused.  The damages that Plaintiff seeks do not implicate the *res* that is before the Surrogate's

Court. *See McKie v. Kornegay*, No. 21-1943, 2022 WL 4241355, at *2 (2d Cir. Sept. 15, 2022)

(summary order) (holding that the probate exception did not bar claims against trustees for

compensatory and punitive damages, but did bar claims that would require the federal court "to

assert control over property that remains under the control of the state courts" (internal quotation

marks omitted)).

Defendant also points to Plaintiff's request for equitable relief -- a declaration that

Defendant is not entitled to reimbursement from Trust #1 of the expenses incurred in this action

-- and argues that a declaratory judgment would "put[] the Court in the position of deciding what

expenses would be appropriate for the Trusts to pay -- an issue squarely before the Surrogate's

Court."  The argument is unpersuasive.  This type of remedy -- a declaration of what Defendant

may not do -- would not interfere with the Surrogate's Court's control over the *res*.  The

requested relief does not, for example, disgorge funds under the control of the Surrogate's Court,

*see Lefkowitz*, 528 F.3d at 107, compel distribution of the trusts' property, *see Woitovich v.

Schoenfeld*, No. 22 Civ. 1742, 2022 WL 17979571, at *4 (S.D.N.Y. Dec. 28, 2022), or undo

specific actions taken by Defendant as trustee, *see Mercer*, 609 F. App'x at 680.  *See Culwick v.

Wood*, 384 F. Supp. 3d 328, 341 (E.D.N.Y. 2019) ("The probate exception is extraordinarily

17

narrow . . . .").  And whether the Court would grant Plaintiff such equitable relief, which is secondary to her claim for damages, is too speculative to trigger the probate exception.

Defendant's remaining argument is that "the ultimate issue of whether Defendant could even be found personally liable for her actions would require applying New York trust law to the construction of the trust documents, which provide that '[e]very action taken by the Trustee shall be presumed to be a fair and reasonable exercise of the powers and duties vested in or imposed under the Trustee,' and '[t]he Trustee shall have no personal liability with respect to any obligations or liabilities of the trust or any transactions of the trust.'"  This argument is misplaced.  Plaintiff seeks to hold Defendant personally liable for breach of fiduciary duty and negligence, not for the obligations, liabilities or transactions of the trusts.  As such, this provision of the trust agreement would not excuse Defendant from liability for Plaintiff's claims.  *See Pelczar v. Pelczar*, 833 F. App'x 872, 875 (2d Cir. 2020) (summary order) (holding that the probate exception did not apply where "adjudication of the claim for damages . . . neither requires the federal court to directly administer the estate, nor to exercise jurisdiction over estate property under the Surrogate's Court's control").  The motion to dismiss based on the probate exception is denied.

### D.  DAMAGES

Defendant argues that the Complaint fails to plead damages with sufficient particularity for purposes of (1) federal diversity jurisdiction and (2) stating a claim.  For the reasons below, the argument fails.

### 1.  Amount-in-Controversy Requirement

A "plaintiff invoking federal jurisdiction must demonstrate a 'reasonable probability' that the amount-in-controversy requirement is satisfied."  *Pyskaty v. Wide World of Cars, LLC*, 856

F.3d 216, 223 (2d Cir. 2017); *accord Patel v. Singh*, No. 21 Civ. 759, 2023 WL 2262792, at *3

(E.D.N.Y. Feb. 28, 2023).  The Second Circuit recognizes "a rebuttable presumption that the face

of the complaint is a good faith representation of the actual amount in controversy."  *Pyskaty*,

856 F.3d at 223 (internal quotation marks omitted).  To challenge diversity jurisdiction at the

pleadings stage, a defendant must "demonstrate[] to a legal certainty that the plaintiff could not

recover the amount alleged or that the damages alleged were feigned to satisfy jurisdiction

minimums."  *Id.* (internal quotation marks omitted).  "If the right of recovery is uncertain, the

doubt should be resolved . . . in favor of the subjective good faith of the plaintiff."  *Peoples Club*

*of Nigeria Int'l, Inc. v. Peoples Club of Nigeria Int'l - New York Branch, Inc.*, 821 F. App'x 32,

34 (2d Cir. 2020) (summary order) (internal quotation marks omitted).  Where "both actual and

punitive damages are recoverable under a complaint, each must be considered to the extent

claimed in determining jurisdictional amount."  *Id.* at 35 (cleaned up).

    The amount-in-controversy requirement is satisfied.  The Complaint alleges, inter alia,

that Defendant caused Plaintiff to incur expenses hiring lawyers and forensic examiners to

conduct investigations that Defendant was obligated to conduct and that Defendant wrongfully

delayed distributing tens of millions of dollars from Trust #1 for more than a year.  These are

"non-conclusory allegations stating a plausible claim that defendant's conduct caused specific

economic harm in a quantifiable amount" to be determined at trial, but in excess of $75,000.  *See*

*Ott v. Fred Alger Mgmt., Inc.*, No. 11 Civ. 4418, 2012 WL 4767200, at *10 (S.D.N.Y. Sept. 27,

2012) (internal quotation marks omitted).  Defendant's arguments to the contrary are

unpersuasive and fail to establish "to a legal certainty" that Plaintiff could not "recover the

amount alleged or that the damages alleged were feigned to satisfy jurisdiction minimums."

*Pyskaty*, 856 F.3d at 223 (internal quotation marks omitted).  That Plaintiff's damages are not yet

fully computed and must be determined by a jury does not, as Defendant suggests, warrant

dismissal. *See, e.g.*, *Feitosa v. Keem*, No. 22 Civ. 377S, 2023 WL 2267055, at *3 (W.D.N.Y.

Feb. 28, 2023) (denying motion to dismiss where the complaint alleged "damages exceeding

$75,000" without ascribing a monetary value to the harm). Plaintiff has met her burden of

pleading an adequate amount in controversy. The motion to dismiss on this ground is denied.

### 2. 12(b)(6)

Both negligence and breach of fiduciary duty claims require a plaintiff to show injury as

a result of the defendant's alleged misconduct. *See Laub v. Faessel*, 745 N.Y.S.2d 534, 536 (1st

Dep't 2002) (breach of fiduciary duty); *accord Endico v. Endico*, No. 19 Civ. 7231, 2022 WL

3902730, at *9 (S.D.N.Y. Aug. 30, 2022) (applying New York law); *Caronia v. Philip Morris*

*USA, Inc.*, 715 F.3d 417, 428 (2d Cir. 2013) (construing New York law) (negligence). As

explained above, the Complaint alleges facts that plausibly show damages and that such injury

was caused by Defendant's negligence and breach of fiduciary duty.

Defendant's remaining argument -- that the alleged harm is not concrete where, for

example, Plaintiff cannot recover attorneys' fees and the costs of the accountants her lawyers

hired to prepare for this litigation -- fails. The argument mischaracterizes the relief specified in

the Complaint. The costs that Plaintiff seeks to recover were incurred to review the Morgan

Stanley account statements and tax filings from Trust #1, not in preparation for this litigation.

Accordingly, the motion to dismiss for failure to state a claim is denied.

### E. Stay of Proceedings

In the alternative, Defendant requests to stay this case pending the accounting in the

Surrogate's Court. "[T]he power to stay proceedings is incidental to the power inherent in every

court to control the disposition of the causes on its docket with economy of time and effort for

itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (internal quotation marks omitted). The determination whether to stay proceedings is "firmly within a district court's discretion." *Catskill Mts. Chapter of Trout Unlimited, Inc. v. United States EPA*, 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009) (internal quotation marks omitted). Courts generally consider: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Delgado v. NJ Transit Rail Operations, Inc.*, 329 F.R.D. 506, 508 (S.D.N.Y. 2019) (quoting *Catskill Mts.*, 630 F. Supp. 2d at 304). For the reasons previously explained, the interests and burdens here weigh against a stay of the action. Defendant's request is denied.

## IV.    CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **DENIED**. Defendant's request for an oral argument is **DENIED** as moot.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 23 and 35.

Dated: May 25, 2023
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE