UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ILARIA BULGARI, Plaintiff, -against- VERONICA BULGARI, Defendant. | : | 22 Civ. 5072 (LGS) **OPINION & ORDER** |

LORNA G. SCHOFIELD, District Judge:

Defendant and Counterclaim-Plaintiff Veronica Bulgari ("Veronica") brings (1) a counterclaim for breach of fiduciary duty against Plaintiff and Counterclaim-Defendant Ilaria Bulgari ("Ilaria") and (2) a third-party claim for aiding and abetting breach of fiduciary duty against third-party Defendant Jan Boyer (together, the "Counterclaims") in connection with the administration of Ilaria's successor trust (the "Ilaria Trust"). The parties cross-move for summary judgment on the Counterclaims, with Ilaria and Boyer filing a joint motion.

On April 22, 2026, Magistrate Judge Robert Lehrburger issued a Report and Recommendation (the "Report") recommending that both motions for summary judgment be denied, except that Veronica should be granted summary judgment on the issue of whether she ratified the appointment of Jonathan Leo as co-trustee of the Ilaria Trust. *Bulgari v. Bulgari*, No. 22 Civ. 5072, 2026 WL 1907706, at *1 (S.D.N.Y. Apr. 22, 2026). The parties timely objected to the Report. For the reasons below, Veronica no longer possesses a legally cognizable interest in the Ilaria Trust sufficient to support Article III standing. The Court therefore declines to adopt the portion of the Report concluding that Veronica retains standing and dismisses the Counterclaims as moot.

## I. BACKGROUND

Familiarity with the underlying facts and the procedural history is assumed. *See generally Bulgari v. Bulgari*, No. 22 Civ. 5072, 2024 WL 4345580 (S.D.N.Y. Sep. 30, 2024) (granting in part and denying in part Veronica's motion for summary judgment as to Ilaria's claims); *Bulgari v. Bulgari*, No. 22 Civ. 5072, 2025 WL 1558355 (S.D.N.Y. June 2, 2025) (granting in part and denying in part Ilaria and Boyer's motion to dismiss the Counterclaims). The following facts are drawn from the procedural record and the parties' submissions on their motions for summary judgment.

### A. Trusts and Counterclaims

Nicola Bulgari ("Nicola") and Anna Bulgari ("Anna") have three daughters: Veronica, Ilaria and Natalia. In 2005, Nicola settled two irrevocable trusts (the "Family Trusts") for the benefit of Anna and their daughters. Upon Anna's death in 2019, the Family Trusts' assets were distributed equally into separate successor trusts for the benefit of Veronica, Ilaria and Natalia, respectively.

One of these successor trusts is the Ilaria Trust. The original co-trustees of the Ilaria Trust were Ilaria and an independent co-trustee, Robert Sheehan. On August 2, 2021, Sheehan executed a document designating Leo as successor co-trustee of the Ilaria Trust. Sheehan subsequently resigned as co-trustee effective December 20, 2021. On January 18, 2022, Leo sent Ilaria a letter stating that he was accepting the co-trustee designation.

During her lifetime, Ilaria may exercise a limited power of appointment (the "Power of Appointment") to appoint any or all of the Ilaria Trust's income and principal to persons other than herself, her estate, her creditors or the creditors of her estate. If Ilaria dies without exercising her

Power of Appointment and without any living issue, the Ilaria Trust's assets will pass to certain of Anna's living descendants, which may include Veronica. Ilaria has no children.

Between January and April 2022, the value of the Ilaria Trust decreased from roughly $27.9 million to roughly $16.7 million. On May 10, 2022, Leo created the Ilaria Francesca Bulgari 2022 Trust (the "2022 Trust"). Leo is the grantor of the 2022 Trust. Leo and Ilaria are co-trustees. And Ilaria is the sole lifetime beneficiary. In May 2022 and May 2023, Leo -- with Ilaria's consent -- transferred a total of roughly $22 million in cash and securities from the Ilaria Trust to the 2022 Trust. As of May 31, 2023, roughly $5,250 remained in the Ilaria Trust. As of April 30, 2025, roughly $1,000 remained in the Ilaria Trust.

The Counterclaims, filed on December 6, 2024, allege the following: As co-trustee of the Ilaria Trust, Ilaria owes fiduciary duties to Veronica because Veronica is a remainder beneficiary of the Ilaria Trust. Ilaria breached those fiduciary duties by improperly installing Leo as co-trustee and mismanaging trust funds. Boyer, Ilaria's domestic partner, aided and abetted Ilaria's breaches of fiduciary duty.

**B. February 20, 2025, Appointment and Motion to Dismiss**

On February 20, 2025, Ilaria executed an instrument exercising her Power of Appointment to appoint "all of the current principal and income in [the Ilaria] Trust" to the American-Italian Cancer Foundation ("AICF"). The same day, Ilaria and Boyer moved to dismiss the Counterclaims. The motion to dismiss argued that the Court lacked subject matter jurisdiction over Veronica's fiduciary duty claims because "[Veronica's] asserted interest as a remainder beneficiary is far too remote and speculative to confer standing." The motion to dismiss further emphasized that Ilaria had designated AICF as the remainder beneficiary of the Ilaria Trust. The decision on the motion to dismiss rejected this argument, concluding that Veronica had standing to

assert the fiduciary duty claims because the Counterclaims "allege that Veronica is a contingent remainder beneficiary of the Ilaria Trust" and "New York courts have repeatedly held that contingent interests are legally protected -- even when subject to multiple conditions." *Bulgari*, 2025 WL 1558355, at *4. The decision dismissed Veronica's other counterclaim, leaving only the fiduciary duty claims against Ilaria and Boyer. *Id*. at *1, *9.

**C. Motions for Summary Judgment and May 6, 2026, Appointment**

Ilaria and Boyer's motion for summary judgment again argues that Veronica lacks standing to bring the Counterclaims because the February 20, 2025, appointment of the Ilaria Trust's assets to AICF "extinguish[ed] whatever remote, contingent interest Veronica may have had," and "[w]ith no present or future interest in the Ilaria Trust, Veronica has no standing to challenge Ilaria's and Jan Boyer's alleged actions with respect to that trust."

The Report rejects this argument, concluding that Veronica "continues to have standing" because the February 20, 2025, appointment to AICF applied only to the "few thousand dollars at most" remaining in the Ilaria Trust at the time and not to the vast majority of the trust assets, which had at that point been transferred to the 2022 Trust. *Bulgari*, 2026 WL 1907706, at *11. The Report reasons that "Veronica still has a stake in recovering the millions of dollars of Ilaria Trust funds that *preceded* Ilaria's exercise of her limited power of appointment," and that "[s]hould Veronica prevail on her claims and Ilaria be ordered to disgorge $27 million to the Ilaria Trust, there is nothing before the Court to establish . . . that Veronica would not continue to have an interest in those funds." *Id.*

After the Report was issued, on May 6, 2026, Ilaria executed another instrument exercising her Power of Appointment, this time appointing to AICF not only "all of the current principal and income in [the Ilaria] Trust" but also "any future principal and income in [the trust], including, for

the avoidance of doubt, any principal or income returned to [the trust] as a result of any legal action or proceeding." The same day, Ilaria filed objections to the Report ("Ilaria's Objections"). Ilaria's Objections argue that this new instrument unambiguously deprives Veronica of standing because the instrument "clarifies that in no event will Veronica ever have any cognizable interest in the Ilaria Trust," including in "any amounts disgorged and returned to the Trust."

## II. LEGAL STANDARD

### A. Report and Recommendation

In reviewing a magistrate judge's report and recommendation, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1). "[T]he remaining portions of the report as to which no objections were made are reviewed for clear error." *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 360 (2d Cir. 2025).[1]

### B. Standing and Mootness

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies" under Article III. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 397 (2024). "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case -- in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). To establish standing, a plaintiff "must show that she has suffered, or will suffer, an injury that is

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted and all alterations are adopted.

concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024).

"Plaintiffs must maintain their personal interest in the dispute at all stages of litigation." *TransUnion*, 594 U.S. at 431. Thus, "[a] challenge to standing may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Lugo v. City of Troy*, 114 F.4th 80, 87 (2d Cir. 2024). "Under the mootness doctrine, if an intervening circumstance deprives the plaintiff or petitioner of a personal stake in the outcome of a lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Rivera-Perez v. Stover*, 171 F.4th 196, 201 (2d Cir. 2026). Put differently, "[m]ootness is standing set in a time frame. The doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings." *Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 67 (2d Cir. 2023).

## III. DISCUSSION

The Counterclaims are dismissed as moot because the May 6, 2026, appointment of the Ilaria Trust's assets extinguished any remaining interest Veronica had in the trust.

"To satisfy Article III's standing requirement, a plaintiff must demonstrate . . . injury-in-fact, which means an actual or imminent and concrete and particularized harm to a legally protected interest." *Knight v. City of New York*, 164 F.4th 173, 177 (2d Cir. 2026). While federal law governs the requirements for Article III standing, state law determines the nature and extent of the plaintiff's asserted interest. *See Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 385 (2d Cir. 2021) ("[S]tate law . . . can supply the answers to certain antecedent questions relevant to whether th[e] federal requirements [for Article III standing] are satisfied."). As this Court previously held, New York law applies and recognizes that a contingent beneficiary's

interest in a trust is sufficient to support standing. *See Bulgari*, 2025 WL 1558355, at *3-4; *Marcus v. Quattrocchi*, No. 8 Civ. 9514, 2014 WL 521340, at *6 (S.D.N.Y. Feb. 4, 2014) ("[U]nder New York law . . . once a trust becomes irrevocable, the contingent beneficiaries of the trust acquire a cognizable interest in both the income and corpus of the trust and thus have standing to hold their trustees accountable for their actions."); *In re Svenningsen*, 959 N.Y.S.2d 237, 246 (2d Dep't 2013) ("[E]ven when a beneficial interest in a trust is subject to a condition precedent, that uncertainty is not enough to deny standing to the party who seeks to protect the trust property to which such interest relates."); *Benjamin v. Morgan Guar. Tr. Co. of N.Y.*, 557 N.Y.S.2d 360, 362 (1st Dep't 1990) (holding that "contingent remaindermen" had standing to challenge alleged breaches of fiduciary duty affecting trust assets). At the same time, under New York law, "the exercise of a non-general power of appointment by the life beneficiary deprives takers-in-default of standing" because "the exercise of a power of appointment cuts off the interest of" such contingent beneficiaries. *Marcus*, 2014 WL 521340, at *7.

Veronica no longer has standing to pursue the Counterclaims because her standing derived from her alleged status as a contingent remainder beneficiary of the Ilaria Trust. *See Bulgari*, 2025 WL 1558355, at *3-4. The May 6, 2026, appointment extinguished any remaining contingent interest Veronica may have had in the trust. Unlike the February 20, 2025, instrument, the May 6, 2026, instrument appoints to AICF not only all of the current principal and income in the Ilaria Trust, but also "any future principal and income," including "any principal or income returned to [the trust] as a result of any legal action or proceeding." Thus, even assuming the Report correctly concluded that Veronica retained standing after the February 20, 2025, appointment because she "still ha[d] a stake in recovering the millions of dollars of Ilaria Trust funds that *preceded* Ilaria's

exercise of her limited power of appointment," *Bulgari*, 2026 WL 1907706, at *11, the May 6, 2026, appointment "vitiated" that remaining stake, *see Marcus*, 2014 WL 521340, at *7.

In her response to Ilaria's Objections ("Veronica's Response"), Veronica first argues that her interest in the Ilaria Trust has not been definitively extinguished because "until [Ilaria]'s death, [Ilaria] is free to exercise her powers of appointment however she wants," meaning that Ilaria may exercise her Power of Appointment differently in the future. This argument is unavailing. Standing turns on whether there is a "live controversy" over "the plaintiff's particular legal rights," *Stafford*, 78 F.4th at 67, and as of the May 6, 2026, appointment, Veronica no longer possesses any interest in the Ilaria Trust. Whether Veronica might someday reacquire that interest is irrelevant to the Article III inquiry.

Veronica's Response next argues that Veronica nonetheless retains an interest in recovering assets transferred out of the Ilaria Trust before the February 20, 2025, appointment. Veronica's Response contends that the holding in *Marcus* that "the exercise of a power of appointment cuts off the interests of takers-in-default" applies only to "[a]ny challenge to the trustees' subsequent distribution of appointed assets." *See Marcus*, 2014 WL 521340, at *7 (emphasis omitted). This argument is also unavailing. As Ilaria's Objections note, *Marcus*'s reference to the "subsequent distribution of appointed assets" reflects the factual posture of that case rather than a temporal limitation on the effect of an appointment. To the contrary, the court in *Marcus* broadly held that the appointment "vitiated plaintiffs' interest in [the trust]." *Id.* Additionally, in *Will of Wadsworth*, the Fourth Department held that a contingent remainder beneficiary lacked standing to challenge a *pre-appointment* trust-property transaction after the trust's life beneficiary exercised his limited power of appointment to convey the relevant trust properties elsewhere. 527 N.Y.S.2d 918, 918 (4th Dep't 1988). Accordingly, the May 6, 2026, appointment of all present and future Ilaria Trust

assets -- including assets transferred before the appointment but later restored to the trust -- extinguished Veronica's remaining interest in recovering those assets. That the appointment expressly includes assets "returned to [the trust] as a result of any legal action or proceeding" eliminates the basis for the Report's conclusion that Veronica continues to have standing because she "still has a stake in recovering the millions of dollars of Ilaria Trust funds that *preceded* Ilaria's exercise of her limited power of appointment," and that "[s]hould Veronica prevail on her claims and Ilaria be ordered to disgorge $27 million to the Ilaria Trust, there is nothing before the Court to establish . . . that Veronica would not continue to have an interest in those funds." *See Bulgari*, 2026 WL 1907706, at *11.

Veronica's Response also argues that the May 6, 2026, appointment is an exercise of "obvious gamesmanship" conducted solely to extinguish Veronica's standing. Even if so, the motives underlying the May 6, 2026, appointment do not alter the standing analysis. The relevant inquiry is whether "an intervening circumstance deprive[d] the plaintiff or petitioner of a personal stake in the outcome of a lawsuit," *Rivera-Perez*, 171 F.4th at 201, regardless of why that intervening circumstance occurred.

## IV. CONCLUSION

For the reasons above, Veronica no longer has Article III standing to bring the Counterclaims. On de novo review and based on facts that arose after the Report was issued, the portion of the Report concluding that Veronica retains standing is not adopted. The parties' objections to the remainder of the Report are not addressed. The Counterclaims are dismissed as moot.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 556 and 560.

Dated: July 7, 2026
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE